**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| Concerned Pastors for Social Action, et al., <br>      Plaintiffs, | Case No. 16-10277 <br> Hon. David M. Lawson |
| v. | |
| Nick A. Khouri, et al., <br>      Defendants. <br> _____/ | |

## CITY DEFENDANTS' RESPONSE TO PLAINTIFFS' FIFTH MOTION TO ENFORCE SETTLEMENT AGREEMENT

### ORAL ARGUMENT REQUESTED

NOW COME the City Defendants and for their response to Plaintiffs' Fifth Motion to Enforce Settlement Agreement state as follows:

Plaintiffs' Fifth Motion to Enforce Settlement Agreement is more properly styled a motion to amend or reform the Settlement Agreement, because they seek to change the clear and unambiguous language of the Settlement Agreement to impose additional, uncontemplated requirements on the City. This Court should deny their motion as it seeks to impose terms and requirements on the City Defendants that were never included in the bargained for and mutually agreed upon Settlement Agreement.

It should be noted that the City Defendants have agreed in principle to the vast majority of the substantive provisions found in the order proposed by Plaintiffs. However, there remains one outstanding issue of contention within that order - the imposition on the City of Flint of notice to residents that the City asserts that restoration work is complete.

i

The City Defendants thus respectfully request that this Court deny the Plaintiffs' Fifth Motion to Enforce, as it seeks to impose additional new requirements on the City.

Wherefore, for the reasons stated herein and in the attached brief, the City Defendants respectfully request that this Court deny Plaintiffs' motion insofar as it requires the City to provide notification to residents that the City has determined that restoration has been completed at a particular address.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: December 14, 2022 | /s/ Joseph N. Kuptz<br>Joseph N. Kuptz (P-68623)<br>City of Flint Law Department<br>1101 S. Saginaw St., 3rd Floor<br>Flint, MI 48502<br>jkuptz@cityofflint.com<br>P-68623 |

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Concerned Pastors for Social Action, et al.,  Case No. 16-10277
    Plaintiffs,  Hon. David M. Lawson

v.

Nick A. Khouri, et al.,
    Defendants.
_____/

**BRIEF IN SUPPORT OF CITY DEFENDANTS' RESPONSE TO PLAINTIFFS' FIFTH MOTION TO ENFORCE SETTLEMENT AGREEMENT**

i

## Table of Contents

Statement of the Issue Presented ................................................................................ iii

Table of Authorities ..................................................................................................... iv

I.   Introduction ......................................................................................................... 1

II.  Procedural and Factual Background ............................................................ 1

III.  Argument ........................................................................................................ 6

   A.   Unresolved Issue .................................................................................... 6

   B.   Standard of Review ............................................................................... 6

   C.   The proposed notice of restoration completion requirement is not required by the settlement agreement and is unduly burdensome on the city   7

IV.  Conclusion ....................................................................................................... 9

## **STATEMENT OF THE ISSUE PRESENTED**

1. Should the Settlement Agreement previously agreed to in this case be read (or modified) to impose requirements on the City Defendants that were never contemplated in that bargained for and mutually agreed-upon document?

# TABLE OF AUTHORITIES

**Cases**

*Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) .......................................... 6

*City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 198, 702 N.W.2d 106, 113 (2005) ................................................................................................ 7

*Cogent Sols. Grp., LLC v. Hyalogic, LLC*, 712 F.3d 305, 309 (6th Cir. 2013) ................. 6

*Hidrofiltros, de Mexico, S.A. de C.V. v. Rexair, Inc.*, 355 F.3d 927, 930 (6th Cir. 2004).. 7

*Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 491, 703 N.W.2d 23, 43 (2005) .......................... 7

*Sault Ste. Marie Tribe of Chippewa Indians v. Granholm*, 475 F.3d 805, 811 (6th Cir. 2007) .............................................................................................................................. 6

*Universal Settlements Int'l, Inc. v. Nat'l Viatical, Inc.*, 568 F. App'x 398, 404 (6th Cir. 2014) .............................................................................................................................. 7

*Wyandotte Elec. Supply Co. v. Elec. Tech. Sys.*, 499 Mich. 127, 144, 881 N.W.2d 95, 103 (2016) ..................................................................................................................... 6

### I. INTRODUCTION

Plaintiffs' Fifth Motion to Enforce Settlement Agreement, Dkt 242 (the "Fifth Motion to Enforce"), is more properly styled a motion to amend or reform the Settlement Agreement, because they seek to change the clear and unambiguous language of the Settlement Agreement to impose additional, uncontemplated requirements on the City. This Court should deny their motion as it seeks to impose terms and requirements on the City Defendants that were never included in the bargained for and mutually agreed upon Settlement Agreement.

It should be noted that the City Defendants have agreed in principle to the vast majority of the substantive provisions found in the order proposed by Plaintiffs. However, there remains one outstanding issue of contention within that order - the imposition on the City of Flint of notice to residents that the City asserts that restoration work is complete.

The City Defendants thus respectfully request that this Court deny the Plaintiffs' Fifth Motion to Enforce, insofar as it seeks to impose additional notice requirements on the City.

### II. PROCEDURAL AND FACTUAL BACKGROUND

The Court is familiar with the history of this case and the Settlement Agreement that resolved it (Dkt 147-1, executed March, 2017). This case arose out of the Flint Water Crisis – the City of Flint's use of the Flint River as a drinking water source from April 2014 through October 2015, initiated while the City was under the control of state-appointed Emergency Financial Managers, and done with the ongoing approval of multiple outside drinking water consultants and regulators. As the main focus of the Settlement Agreement

that resolved this case, the City agreed to excavate its residential service lines and replace any identified as lead or galvanized steel, with funding provided by the State of Michigan.

To date, the City's service line excavation and replacement efforts have gone through six completed "phases" and are currently in Phase VII, the final phase of the program.

Asserting that the City Defendants have failed to comply with the terms of the Settlement Agreement and subsequent orders, Plaintiffs filed their Fifth Motion to Enforce on November 1, 2022 and this Court set hearing on that motion for February 15, 2023 at 2:00PM.

Plaintiffs in their Fifth Motion to Enforce ignore or gloss over the substantial progress made by the City of Flint in identifying and replacing all lead and galvanized steel service lines in the City over the course of the seven phases of work. Since the FAST Start program began in February 2016, the City has, out of a total agreed-upon list of 31,578 addresses:

- completed 27,682 service line excavations and, where a lead or galvanized steel line was found, replacements;
- received 581 declinations from residents;
- completed outreach at 1,160 addresses without receiving consent (after completing at least 3 attempts to obtain consent); and
- cleared another 1,291 addresses for various reasons[1]

---

[1] Of the 1,408 addresses cleared for various reasons: 9 were excavated/replaced as part of the Dupont Street reconstruction; 25 are not located in the City of Flint; 4 are

Out of a total agreed-upon list of 31,578 addresses, this represents 97.26% completion. While there remain 864 addresses with open work orders in the City's database system where exploration must still be conducted, this completion rate represents very significant progress. Since Phase VII is currently ongoing with more service line excavations and replacements being conducted weekly, the completion percentage is ever increasing and steadily progressing closer to 100%.

Furthermore, in early Fall 2022, the City successfully secured an extension from the State of Michigan for the expenditure of the Water Infrastructure Improvements for the Nation Act ("WIIN") funds that were due to expire on December 31, 2022. This ensures that those funds remain available for ongoing service line replacement and restoration work through December 31, 2023.

Since over 97.26% of the replacement eligible homes in the City have been completed in the prior six phases of the program, the homes remaining in Phase VII are some of the most difficult to complete, for a variety of reasons. For example, some of these properties are tenant-occupied, are occupied by residents who are infrequently home or otherwise transient, are occupied by residents who are reluctant for one reason or another to allow access to their house (due to health or other legal issues), are located on major roads that require lane closures, etc.

Next, the impact of the COVID-19 pandemic on the City's excavation, replacement and restoration progress must be noted as it has impacted that work in a variety of ways.

---

Commercial parcels; 7 are on the City's demolition list; 1 has sewer service but no water; 1 is a vacant parcel; and 1,244 do not have active water accounts.

The Governor of the State of Michigan's issuance of Executive Order 2020-4 on March 10, 2020 declaring a state of emergency effectively shut down all service line work for a lengthy period of time. Even when work did resume, the process of obtaining consents from residents was abnormally slow because, quite understandably, those residents were hesitant to speak with unknown individuals coming to their door and to allow those workers to enter their home to complete work.

Additionally, that shutdown caused extensive ripple effects in nationwide supply chains for many goods, including the materials needed for full or partial service line replacements and restorations (copper pipe, fittings, curb boxes, asphalt, concrete, etc.). Just as the general population of Michigan has had difficulty locating specific items at the grocery store at certain times, the City's contractors have had the same issues in finding suppliers with the necessary materials in stock.

Last, the growing awareness of the dangers of lead and galvanized steel service lines has also contributed to the unavailability of parts and materials. For example, in the State of Michigan alone, Benton Harbor completed well over 4,000 service line replacements. Other municipalities in other states are also working on similar projects.

Despite these challenges in obtaining materials, the City of Flint and its contractors have had ongoing weekly meetings with the State of Michigan in order to discuss how to procure the needed supplies. In fact, as of the date of the filing of this response, it is believed that the City has adequate supplies of materials (copper pipe, fittings and curb boxes) to complete all remaining service line replacements.

With respect to restorations of previously excavated parcels, the City, through its project manager, has begun site visits to assess the status of completion where a contemporaneous record of restoration does not exist in the City's database. The City

has also begun exploring the option of using aerial imagery available through Genesee County to more quickly and accurately assess restoration status, even when inclement weather would otherwise prohibit direct site visits over the upcoming winter.

Even facing all of these difficulties outside of the control of the City and its contractors, the City has taken the Plaintiffs' concerns seriously and met with them on multiple occasions just since late Summer[2]. In fact, those discussions and negotiations have resulted in an agreement with Plaintiffs on the proposed order with the exception of one item – notice to residents of restoration completion where a contemporaneous record of completion does not exist in the City's tracking database.

All of these efforts show that, contrary to Plaintiffs' assertions, the City has not been "sitting back and doing nothing." The opposite is true – the City has been actively, intentionally and diligently moving forward with the task at hand. The City remains fully committed to excavation and, if appropriate, replacement of lead or galvanized steel service lines at every eligible and cooperative address in the City, along with subsequent restoration of the affected property.

Given these unprecedented and tremendous challenges, the City has still achieved 97.26% completion of service line excavations and replacements to date – with that number continuing weekly to increase towards 100%.

---

[2] August 30, 2022; October 11, 2022; November 27, 2022 (meeting with attorneys for Plaintiffs and several Plaintiffs themselves to discuss how to improve outreach and scheduling efforts); November 29, 2022; and December 5, 2022.

### III.   ARGUMENT

#### A.   UNRESOLVED ISSUE

The City has tentatively agreed to the vast majority of the substantive relief requested in Plaintiffs' proposed order. However, there remains one outstanding issue of contention - the proposed requirement that the City provide notification to all addresses where it believes that restoration work is completed (at least insofar as no contemporaneous record of restoration completion exists in the City's records).

#### B.   STANDARD OF REVIEW

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (internal citation omitted).  However, "[t]he court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Id.*  "A settlement agreement is a type of contract and is governed 'by reference to state substantive law governing contracts generally.'" *Cogent Sols. Grp., LLC v. Hyalogic, LLC*, 712 F.3d 305, 309 (6th Cir. 2013) (internal citations omitted).  Similarly, a consent decree is a binding contract.  *Sault Ste. Marie Tribe of Chippewa Indians v. Granholm*, 475 F.3d 805, 811 (6th Cir. 2007).  Because it is a contract, a consent decree formed in Michigan is subject to Michigan contract law.

Under Michigan contract law, the "goal in contract interpretation is to give effect to the intent of the parties, **to be determined first and foremost by the plain and unambiguous language of the contract itself**." *Wyandotte Elec. Supply Co. v. Elec. Tech. Sys.*, 499 Mich. 127, 144, 881 N.W.2d 95, 103 (2016) (emphasis added).  Clear and unambiguous language will be construed according to its "plain sense and meaning."

*City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 198, 702 N.W.2d 106, 113 (2005) (*citing New Amsterdam Cas. Co. v. Sokolowski*, 374 Mich. 340, 342; 132 N.W.2d 66 (1965). "[U]nambiguous contracts . . . are to be enforced as written unless a contractual provision violates law or public policy." *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 491, 703 N.W.2d 23, 43 (2005).

Courts will not create ambiguity where the contract terms are clear. *City of Grosse Pointe Park*, 473 Mich., at 198. If the terms are unambiguous, contradictory inferences are essentially irrelevant. *Hidrofiltros, de Mexico, S.A. de C.V. v. Rexair, Inc.*, 355 F.3d 927, 930 (6th Cir. 2004) (*citing Pierson Sand & Gravel, Inc. v. Pierson Twp.*, 851 F. Supp. 850, 858 (W.D. Mich. 1994), aff'd, 89 F.3d 835 (6th Cir. 1996)). The Sixth Circuit has recognized that "courts have 'very limited authority to alter the terms of any consent judgment . . . . The only facts and circumstances that [the Sixth Circuit] has ruled warrant relief from a consent judgment are some showing of the existence of fraud or a mutual mistake of fact.'" *Universal Settlements Int'l, Inc. v. Nat'l Viatical, Inc.*, 568 F. App'x 398, 404 (6th Cir. 2014) (*citing Mallory v. Eyrich*, 922 F.2d 1273, 1280 (6th Cir. 1991)).

**C.  THE PROPOSED NOTICE OF RESTORATION COMPLETION REQUIREMENT IS NOT REQUIRED BY THE SETTLEMENT AGREEMENT AND IS UNDULY BURDENSOME ON THE CITY**

The Settlement Agreement, along with the subsequent orders enforcing the Settlement Agreement, require the City to complete certain restoration activities at all excavated addresses.

Because of certain data gaps concerning restoration activities in the City's record-keeping database, which are largely the result of decisions made from 2017 through 2019 regarding restoration activities, the exact status of restoration progress of previously

excavated addresses is uncertain. These addresses fall into three categories: (1) excavation and/or replacement completed, and restoration also completed with date of restoration completion noted contemporaneously in the City's tracking database; (2) excavation and/or replacement completed, and restoration also completed, but <u>no</u> date of restoration completion noted in the City's database; and (3) excavation and/or replacement completed, but <u>no</u> restoration completed.

The City, in the order proposed by Plaintiffs, has tentatively agreed to a set of "visual inspection criteria" for those addresses in category (2) above.

However, Plaintiffs also seek to impose the additional requirement that the City place a doorhanger at (or send written correspondence to) each of those addresses indicating that the City believes restoration work is complete and providing a telephone number and email address that the resident may use to contact the City if the resident has questions or concerns about the City's determination.

This requirement is never contemplated or required in the Settlement Agreement. The plain and unambiguous language of the Settlement Agreement imposes no such requirement on the City.

Furthermore, it would place an undue burden on the City and its project manager if it were required to respond to every potential inquiry that was received as a result of the notification. **Exhibit A** (Affidavit of Michael J. Brown). While Plaintiffs assert that the contacts made to the City pursuant to the notification would only need to be provided as a report to Plaintiffs, this is not realistic from the City's perspective. The City is highly proactive in responding to residents' concerns and would desire to follow-up on all such resident contacts. *Id.* The option of ignoring residents and simply providing their information to the Plaintiffs is not a viable option. *Id.*

The imposition of additional costs on the City is particularly important because pursuant to paragraphs 28 and 33 of the original Settlement Agreement, the City of Flint's obligation to do any work is limited by the funds available to it. As of November 14, 2022, the City has spent $85,510,631.34 on service line explorations, replacements and restorations. The expenditure of limited funds on work not required by the Settlement Agreement leaves less funds available for work that is required by the Settlement Agreement.

Finally, as noted on multiple occasions, the City remains absolutely committed to fulfilling its obligation to perform the required restoration work at all excavated addresses. However, the imposition of this requirement would be unduly burdensome and would impose previously unagreed to obligations on the City.

## IV.   CONCLUSION

Wherefore, for the reasons stated, the City Defendants respectfully request that this Court deny Plaintiffs' motion insofar as it requires the City to provide notification to residents that the City has determined that restoration has been completed at a particular address.

Respectfully submitted,

Dated: December 14, 2022

/s/ Joseph N. Kuptz
Joseph N. Kuptz (P-68623)
City of Flint Law Department
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
jkuptz@cityofflint.com
P-68623

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2022, I electronically filed the foregoing pleadings using the ECF system which will send notification of such filing to the counsels of record.

                                              Respectfully submitted,

Dated: December 14, 2022             /s/ Joseph N. Kuptz
Joseph N. Kuptz (P-68623)
City of Flint Law Department
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
jkuptz@cityofflint.com
P-68623