# Exhibit C

Deposition Transcript of Michael J. Brown (excerpted)

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3

 4

 5   CONCERNED PASTORS FOR SOCIAL
     ACTION, et al.,
 6                                          Case No. 16-10277
              Plaintiffs,
 7   vs.                                    Hon. David M. Lawson

 8   NICK A. KHOURI, et al.

 9            Defendants.
     _____/
10

11

12               DEPOSITION OF MICHAEL J. BROWN

13

14      Taken by the Plaintiffs on the 10th day of January, 2023,

15      at the offices of Ripka, Boroski & Associates, 717 South

16      Grand Traverse, Suite 2, Flint, Michigan, commencing at

17      or about 1:28 p.m.

18

19   APPEARANCES:

20   For the Plaintiffs:     MS. ADELINE S. ROLNICK
                             MS. SARAH C. TALLMAN
21                           Natural Resources Defense Council
                             1152 15th Street NW, Suite 300
22                           Washington, D.C.  2005
                             (202) 513-6240
23                           arolnick@nrdc.org
                             stallman@nrdc.org
24

25
```

```
 1   APPEARANCES (Continued):

 2

 3   For the Plaintiffs:      MS. MELANIE D. CALERO
     (BY ZOOM)                Natural Resources Defense Council
 4                            40 West 20th Street
                              New York, New York  10011
 5                            (212) 727-4546
                              mcalero@nrdc.org
 6   and

 7                            MR. MICHAEL E. WALL
                              Natural Resources Defense Council
 8                            111 Sutter Street, 21st Floor
                              San Francisco, California  94104
 9                            (415) 875-6100
                              mwall@nrdc.org
10

11   For the Defendants:      MR. JOSEPH N. KUPTZ   (P68623)
                              Assistant City Attorney
12                            City of Flint, Department of Law
                              1101 South Saginaw Street, Floor 3
13                            Flint, Michigan  48502-1420
                              (810) 237-2085
14                            jkuptz@cityofflint.com

15

16

17   REPORTED BY:             Mr. David S. Ripka, CSR 2175
                              Certified Shorthand Reporter
18                            daveripka9@comcast.net
                              (800) 542-4531
19

20

21

22

23

24

25
```

Case 2:16-cv-10277-DML-SDD   ECF No. 2574, PageID.11656   Filed 01/20/23   Page 4 of 19
Concerned Pastors, et al. v. Khouri, et al.                                    Michael J. Brown

3

```
 1                       INDEX OF WITNESS
    ─────────────────────────────────────────────────────────
 2
          WITNESS                                       PAGE
 3  ─────────────────────────────────────────────────────────

 4  MICHAEL J. BROWN

 5        Examination by Ms. Rolnick                      4

 6        Examination by Mr. Kurtz                       53

 7        Examination by Ms. Rolnick                     60

 8

 9

10  ─────────────────────────────────────────────────────────

11                       INDEX OF EXHIBITS
    ─────────────────────────────────────────────────────────
12
     EXHIBIT              DESCRIPTION                  MARKED
13  ─────────────────────────────────────────────────────────

14   Exhibit  1    Affidavit of Michael J. Brown          4

15   Exhibit  2    City of Flint, Michigan Meeting        4
                       Agenda - Final
16                     Wednesday, April 14, 2021

17   Exhibit  3    Proposed Order Granting Plaintiff's    4
                       Fifth Motion to Enforce Settlement
18                     Agreement

19   Exhibit  4    Michigan Department of Environment,    7
                       Great Lakes, and Energy
20                     Flint Water Infrastructure Funding
                       As of September 30, 2020
21   Exhibit  5    Flint Water Service Center Organization 9
                       Chart FY 2022-2023
22
     Exhibit  6    Department of Public Works City of Flint 39
23                     Michigan Contract  Rowe Professional
                       Services Project Management Services
24                     SLE-SLR and Restoration Projects
                       Approved by City Council 4/11/22
25
```

```
 1  Q   Were you asked to evaluate something specific?
 2  A   As in...?
 3  Q   So, if you could turn to paragraph 7 and 8 of your
 4      affidavit.  And I'm going to read part of paragraph 7 out
 5      loud to you.
 6              You say, "... I am aware that Plaintiffs are
 7      asking the Court to require the City of Flint to provide
 8      notice to addresses within the City of Flint where water
 9      service line restoration has previously occurred, but
10      there is no contemporaneous record of restoration in the
11      City of Flint's tracking database."
12              Is that the potential extra work you were
13      evaluating --
14  A   Correct.
15  Q   -- in this affidavit?
16              So, in your own words, could you describe for
17      me what you understood that the city could be required to
18      do.
19  A   Well, what I was explain -- explained to me about the
20      Fifth Motion -- like I said, I'm not familiar with all
21      the aspects, but when it was explained to me that -- what
22      was needing to be done is that every single house was
23      going to have to get a door hanger put on it and ask
24      if -- if -- and I don't even know what all the door
25      hanger's going to have on it yet -- but to ask if people
```

```
 1         are satisfied with whatever work was done for
 2         restoration, et cetera.
 3                 And that's just going to be a huge -- I don't
 4         have people barely able to get the jobs done we have to
 5         get done now.  That's why we have a contractor in doing
 6         the work.  And this is going to be a lot of extra work
 7         for whoever does it.  And then, where's the money going
 8         to come from?
 9    Q    When you say "every single house," what do you mean by
10         that?
11    A    Any house that was -- that was done, that there was a dig
12         done at.  So whether it -- whether it was replacement or
13         not, you still have to do a dig to take a look at the
14         piping.  That's what this SLR is all about is to find out
15         is the piping lead galvanized?  Does it need to be
16         replaced?  And get it replaced if they're of -- it needs
17         to be done.
18                 That's what I understood when I first came into
19         this job.  I was brought along slowly, and now I'm in
20         charge of overseeing a lot of it.
21    Q    So just to make sure I understand your understanding, the
22         city could be required to provide notice to every home
23         where it completed an excavation; is that -- am I stating
24         that accurately?
25    A    That's what I understood, yes.
```

| | | |
|---|---|---|
| 1 | Q | Okay.  And is that the understanding you had when you |
| 2 | | wrote this affidavit? |
| 3 | **A** | **The understanding I had when I wrote this affidavit, yes,** |
| 4 | | **that there was going to be this much larger job scope of** |
| 5 | | **work that needed to be done, and I don't feel that the** |
| 6 | | **city has the manpower to be able to do it, nor the** |
| 7 | | **resources.** |
| 8 | | MS. ROLNICK:  So I'm now handing the witness |
| 9 | | Exhibit 3. |
| 10 | Q | (BY MS. ROLNICK)  So if you could turn to paragraph 13 of |
| 11 | | this exhibit.  That's on page 12 and 13. |
| 12 | **A** | **I have 13 on page 11.** |
| 13 | Q | Or it starts on page 11. |
| 14 | **A** | **Is that what you mean?** |
| 15 | Q | Mm-hmm.  And if I could ask you to read out loud on page |
| 16 | | 13, which is paragraph 13(3), where it says, "Notice to |
| 17 | | residents." |
| 18 | **A** | **"If the city --"** |
| 19 | Q | I'm sorry.  Let me go back for a moment. |
| 20 | | Do you recognize this document? |
| 21 | **A** | **No.  I don't know if I've seen it or not.** |
| 22 | Q | Have you seen this document before? |
| 23 | **A** | **I just said I don't remember if I've seen this or not.** |
| 24 | | MS. ROLNICK:  Okay.  So I'll represent for the |
| 25 | | record that this is the proposed order that Plaintiff |

Case 2:16-cv-10277-DML-SDD ECF No. 257-4, PageID.11660 Filed 01/20/23 Page 8 of 19

Condensed Pastors, et al. v. Khouri, et al. Michael J. Brown

32

| | | |
|---|---|---|
| 1 | Q | But you were not evaluating the potential burden of |
| 2 | | sending people to inspect homes to see whether they |
| 3 | | required further restoration? |
| 4 | A | **Yes, I was.  They -- Somebody has to go out and -- and** |
| 5 | | **look or has to put out a door hanger, whether they're** |
| 6 | | **looking at that home at the time or not.  And, again,** |
| 7 | | **that's extra duties and extra time that has to be taken** |
| 8 | | **away and that I don't have to put my people on.** |
| 9 | Q | Could you point me to where in your affidavit it mentions |
| 10 | | the burden of the actual visual inspection process? |
| 11 | A | **No, I didn't know about the actual visual until just now.** |
| 12 | Q | So, you were only evaluating this affidavit, just to make |
| 13 | | sure I understand, the notice requirement and the |
| 14 | | potential consequences of the notice? |
| 15 | A | **Correct.** |
| 16 | Q | So, did you consider specific costs of this potential |
| 17 | | notice requirement? |
| 18 | A | **No.  I just looked at a time usage of my personnel, and I** |
| 19 | | **don't have spare personnel to put anywhere at this time.** |
| 20 | | **I'm shorthanded in my water service group and unable to** |
| 21 | | **get everything we'd like to get done there.  We have to** |
| 22 | | **put off work because of emergencies, such as main breaks** |
| 23 | | **and such that are coming in this time of year and** |
| 24 | | **throughout the year.** |
| 25 | Q | Did you look at the cost of printing the door hangers? |

| | | |
|---|---|---|
| 1 | A | No, I haven't looked at any costs to speak, just knowing |
| 2 | | that I don't have the personnel to send out. |
| 3 | Q | Okay.  So, the only thing you took into account in |
| 4 | | deciding -- coming to your opinion that this would impose |
| 5 | | an undue and heavy burden was the need to send people to |
| 6 | | hang the door hangers? |
| 7 | A | Right.  And to look -- I figure there would be something |
| 8 | | that they'd have to look at, keep records, drop the door |
| 9 | | hanger off, and then keep moving in regards to that. |
| 10 | Q | Did you consider anything else? |
| 11 | A | That they may have to evaluate what was done previously |
| 12 | | or have to spend time on a computer looking up to find |
| 13 | | what might have been done at an address. |
| 14 | Q | What do you mean by what might have done previously? |
| 15 | A | Our records, a lot of the records are incomplete, but we |
| 16 | | do have some.  And they'd have to look into our system, |
| 17 | | Cityworks, to take a look there.  There are fields there |
| 18 | | that would be populated and say -- or look through the |
| 19 | | notes to say what was done at that address for |
| 20 | | restoration, if it was put -- even put in. |
| 21 | Q | And why would, in your understanding, someone have to |
| 22 | | look at that as part of this notice -- potential notice |
| 23 | | requirement? |
| 24 | A | How would any one person know what addresses they have to |
| 25 | | look at? |

```
 1                      about 2:25 p.m.)
 2          MS. ROLNICK:  So let's resume.
 3   Q   (BY MS. ROLNICK)  And just as a reminder, and I'll try to
 4       do a better job of this too, please wait until I finish
 5       my question to begin your answer.  And I'll also make
 6       sure I'm doing the same.
 7                 So I want to return to the potential notice
 8       requirement we've been discussing.  So, I'm going to -- I
 9       know we had some back and forth a little bit ago about
10       what that would require.  But I want to ask you to assume
11       for a moment the city is already sending someone in
12       person to homes to -- when it lacks a restoration record
13       and that that person is doing a visual inspection to
14       decide whether the city will complete further restoration
15       of that home.
16                 So, in that circumstance, what additional work
17       would be required for the person doing the inspection to
18       leave a door hanger for the resident?
19   A   Okay.
20   Q   So let me walk this --
21   A   Try that again --
22   Q   I'll start --
23   A   -- because it's --
24   Q   -- from the beginning.
25                 So, I'm going to ask you first to assume for a
```

|    |   |   |
|----|---|---|
| 1  |   | moment that someone from the city or Rowe is already |
| 2  |   | going to a home, and they're going to that home to |
| 3  |   | complete a visual inspection to determine whether or not |
| 4  |   | the city will be performing future restoration at that |
| 5  |   | home. |
| 6  | A | **Okay.** |
| 7  | Q | And that person, if they decide they're not completing |
| 8  |   | future restoration, is going to be leaving a door hanger. |
| 9  |   | So, to leave the door hanger, would the person -- what |
| 10 |   | would the person doing the inspection have to do on top |
| 11 |   | of -- or what would they have to do to leave the door |
| 12 |   | hanger? |
| 13 | A | **Well, from what you just said --** |
| 14 | Q | Yeah. |
| 15 | A | **-- if that person's already there, they're there to take** |
| 16 |   | **a look at restoration that supposedly was completed.** |
| 17 |   | **They have to know what the restoration was to be done at** |
| 18 |   | **that house, take a look, see if that restoration has been** |
| 19 |   | **done.  And then if everything is done, you're saying that** |
| 20 |   | **they're going to leave a door hanger.  Then they'd have** |
| 21 |   | **to leave a door hanger.** |
| 22 | Q | So what -- assuming that, no matter what, someone is |
| 23 |   | going to be doing that visual inspection, what additional |
| 24 |   | burden would it impose for the person doing the |
| 25 |   | inspection to also leave a door hanger? |

```
 1   A    The only thing would be a small amount of time probably
 2        to go and put the door hanger on the door.
 3   Q    So they'd get out of their car --
 4   A    Vehicle.
 5   Q    -- walk up to -- get out of their vehicle, walk up to the
 6        house and leave the door hanger?
 7   A    If that's what is required, yes.
 8                  (Discussion off the record)
 9   Q    (BY MS. ROLNICK)  Okay.  So I'd like to return for a
10        moment to the conversation we were having before
11        the break about the potential labor burden of leaving
12        these door hangers.
13                  So, in your understanding, who would be leaving
14        these door hangers?
15   A    It was my understanding that the city was supposed to
16        provide personnel to go and do the work and leave the
17        door hangers.
18   Q    And was that the understanding you had when you wrote --
19        when you came to the opinion represented in this
20        affidavit?
21   A    That somebody would have to be doing inspections, yes.
22   Q    And it was your understanding that an employee of the
23        city would have to do -- would be doing that?
24   A    That's why I wrote this is because I don't have
25        employees' time available to do extra work.
```

```
 1   Q     Mm-hmm.
 2   A     We are tied up.
 3   Q     Did you consider whether an employee of Rowe, the city's
 4         contractor, could leave the door hanger?
 5   A     I thought about it very briefly.  But, again, it's going
 6         to -- that's going to be a cost, and we don't know if we
 7         have enough money there to finish all the restorations
 8         yet or not because we don't have a full understanding of
 9         what all the costs will be.
10   Q     Did you talk to anyone at Rowe about whether someone from
11         Rowe would have the capacity to leave the door hangers?
12   A     No.
13   Q     Did you have a conversation with anyone at Rowe while you
14         were coming to the opinion represented in your affidavit?
15   A     No.
16   Q     Did you talk to anyone at Rowe in preparing for this
17         deposition?
18   A     No.
19              MS. ROLNICK:  So I'm going to --
20              Could you pass me the...
21              I'd like to mark this as Exhibit 6.
22                  (Exhibit Number 6 was marked for
23                   identification)
24              MS. ROLNICK:  I'm now handing this to the
25         witness.
```

```
 1         burden on the city?
 2   A    If the -- just the time that it's going to take to answer
 3         said questions would take time away from people that are
 4         doing other jobs currently.  And we don't -- as I said
 5         earlier, we don't have extra people.
 6   Q    Did you consider any records of past communications from
 7         residents in forming your opinion?
 8   A    No.
 9   Q    Did you consult any data?
10   A    For?
11   Q    For in forming your opinion that resident communications
12         as a result of this notice requirement would impose a
13         burden on the city?
14   A    No.
15   Q    Did you conduct -- What, if any, analysis did you
16         complete in coming to this opinion?
17   A    Just the taking time away from the personnel I currently
18         have.
19   Q    And how did you -- what, if any, analysis led you to
20         conclude that resident communications as a result of this
21         notice would occur?
22   A    Anytime that you put out information with phone numbers,
23         names, that certain people will call if they have
24         questions, and that would take time away from the people
25         that I have doing other jobs.
```

```
 1   Q   No problem -- in either coming to the opinion in this
 2       affidavit or preparing for this deposition?
 3   A   No.
 4   Q   Just to return for a moment, did you talk to anyone at
 5       Rowe about their capacity to handle resident calls or
 6       emails about restoration?
 7   A   No.
 8   Q   Earlier, you stated that you didn't consider costs in
 9       coming to the opinion in this affidavit.  What did you
10       mean by that?
11   A   I didn't look at other costs.  Like you asked me about
12       door hanger costs.  I didn't look at that.  All's I
13       looked at was the personnel time.
14   Q   Did you calculate that personnel time?
15   A   No.
16   Q   If we could return for a moment to paragraph 9 of your
17       affidavit, which is the -- and that's the paragraph
18       reading, "The imposition of this requirement would impose
19       an undue and heavy burden on the City."
20                Have we discussed everything you considered in
21       coming to that opinion?
22   A   As far as I can remember.
23   Q   Okay.  Was there any other basis for that opinion?
24   A   No.
25   Q   You've discussed concerns about potential personnel
```

```
 1        costs.  Did you have any other concerns about this
 2        potential notice requirement?
 3   A    Any other costs that I don't know of yet until we started
 4        it.
 5   Q    What might those costs be?
 6   A    Well, you've stated now the door hangers, the time to
 7        have someone reviewing the computer to find the
 8        information necessary.  There may be more than just that
 9        one person going up to a door.  I don't know all of it
10        yet, but I just know that I don't have personnel
11        available because of how tight we are currently.
12   Q    So just to make sure I understand where you're coming
13        from, when you were coming to the opinion in this
14        affidavit, your thinking was, "I don't have extra
15        personnel.  There's a proposal on the table that would
16        require my personnel to do something additional, and that
17        would impose an undue and heavy burden on my people" --
18   A    Correct.
19   Q    -- is that correct?
20             Did you consider anything else?
21   A    That's all I looked at when I was discussed with this --
22        or discussing this.  Sorry.  Not discussed.  Discussing.
23        Sorry.
24   Q    No problem.
25             So just to return for a moment to sort of the
```

```
 1              mechanics of this potential notice requirement we're
 2              discussing.  So, and I know we've had some back and forth
 3              about what it would actually require.  But just assume
 4              for a moment that the city has agreed to use specific
 5              criteria to evaluate whether homes need further
 6              restoration or not.
 7                       So, the city or someone from Rowe is going to a
 8              home to do a visual inspection.  The Rowe employee
 9              applies those criteria and decides no future restoration
10              is needed and leaves a door hanger.  Is it possible that
11              the person doing that inspection might make a mistake
12              about the specific criteria?
13    A         I guess.
14    Q         And if that person makes a mistake, is it possible that a
15              resident might call the city to alert the city to that
16              mistake?
17    A         Possible.
18    Q         Would it be useful for the city to hear from a resident
19              if a mistake had been made about a visual inspection?
20    A         Quite probable.
21    Q         So, yes, it would be useful?
22    A         Yes.  It's always useful to hear from residents.
23    Q         Would it be useful to hear from a resident if they just
24              had a question about the city's visual inspection?
25    A         Yes.
```

Case 2:16-cv-10277-DML-SDD ECF No. 257-4, PageID.11670 Filed 01/20/23 Page 18 of 19
Concealed History of Flint eSaD     Michael J. Brown

51

| | | |
|---|---|---|
| 1 | Q | Why would this be useful? |
| 2 | A | **To hear what they are seeing.  Because we still want --** |
| 3 | | **the city still wants to be servicing our residents.** |
| 4 | Q | So how might the city take sort of these resident |
| 5 | | questions about the visual inspection process into |
| 6 | | account? |
| 7 | A | **I wouldn't know until I heard the questions.** |
| 8 | Q | But the city sort of incorporates resident feedback into |
| 9 | | its decision making; is that fair to say? |
| 10 | A | **Yes.** |
| 11 | Q | In coming to the opinion in this affidavit and preparing |
| 12 | | for this deposition, did you read Plaintiffs' Fifth |
| 13 | | Motion to enforce the settlement agreement? |
| 14 | A | **No, not to my knowledge.  I started to here today.** |
| 15 | Q | And I just want to clarify for a moment the drafting of |
| 16 | | your affidavit.  So you said earlier that you did not |
| 17 | | write this, correct? |
| 18 | A | **Correct.** |
| 19 | Q | Did you tell your lawyer what to write in it? |
| 20 | A | **No, I asked them to -- to -- They discussed with me some** |
| 21 | | **of the parts of Exhibit 3.  And I stated that we didn't** |
| 22 | | **have -- I don't have people available to go do some of** |
| 23 | | **the things that they stated.  And we came up with this** |
| 24 | | **document.** |
| 25 | Q | And did you edit the document after your counsel drafted |

Case 2:16-cv-10277-DML-SDD ECF No. 257-4, PageID.11671 Filed 01/20/23 Page 19 of 19
Condensed Transcript of Michael J. Brown

52

```
 1       it?
 2   A   No, I read it.  It looked good to me, and I signed it.
 3           MS. ROLNICK:  Let's take another five-minute
 4       break.  And I think we're getting close to done.  I'm
 5       just going to consult with my colleagues, but I expect
 6       we'll be out of here in the next 30 minutes or so.
 7                    (Discussion off the record.  Recess taken
 8                    at 2:49 p.m.  Deposition resumed at or
 9                    about 3:00 p.m.)
10           MS. ROLNICK:  Okay.  Thank you very much for
11       your time, Mr. Brown.  I still have a few more questions,
12       and then we'll get you out of here.
13   Q   (BY MS. ROLNICK)  So just to clarify one thing we were
14       discussing earlier and make sure I understand, when you
15       were coming to the opinion in your affidavit, you
16       understood that the city would be -- could be required to
17       provide notice to every home where it had completed an
18       excavation; is that correct?
19   A   Yes.
20   Q   Do you have an estimate of how much of the city's time it
21       would take to respond to resident calls and
22       communications or calls and emails as a result of this
23       potential notice requirement?
24   A   No.
25           MS. ROLNICK:  Joe, do you have any questions?
```