## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CONCERNED PASTORS FOR SOCIAL
ACTION, et al.,

                Plaintiffs,

v.

NICK A. KHOURI, et al.,

                Defendants.

_____/

Case No. 16-10277

Hon. David M. Lawson

## PLAINTIFFS' MOTION FOR CONTEMPT

Plaintiffs Concerned Pastors for Social Action, Melissa Mays, American Civil Liberties Union of Michigan, and Natural Resources Defense Council respectfully move the Court to find the City of Flint and its mayor, Sheldon Neeley, in contempt of court for the City's violations of the Court's order to (1) determine, by May 1, 2023, which Flint homes still require property restoration, (2) provide timely, accurate, and complete monthly restoration reporting, and (3) conduct mail and in-person outreach to residents to obtain their permission to conduct service line excavations and replacements.

Plaintiffs respectfully request that the Court award sanctions to compel the City and the Mayor to promptly cure the City's violations. The proposed sanctions include a prospective daily fine of $500.00, paid jointly by the City and its mayor

in his official capacity to the Court, until the City complies with the requirements that it identify the full scope of remaining required restoration, and complete and report the remaining required outreach. Plaintiffs also respectfully request an order allowing them to seek attorneys' fees and costs for future enforcement of the Settlement Agreement (Agreement) against City Defendants.

Almost immediately after the Court entered its order in February granting Plaintiffs' Fifth Motion to Enforce the Settlement Agreement, ECF No. 258, the City began violating that order. The City missed its May 1, 2023 deadline to determine the remaining scope of restoration work by a wide margin after failing to timely complete court-ordered records review and visual inspections. Moreover, the City's persistent reporting violations are preventing Plaintiffs from evaluating the City's progress towards completing all required property repairs. The City has also still not provided documentation demonstrating that it has completed required outreach to ensure residents at every eligible Flint home have a meaningful opportunity to participate in the pipe replacement program.

Plaintiffs have undertaken significant efforts to prompt the City to expeditiously remedy its noncompliance before resorting to motion practice. They notified the City about its outreach and restoration violations in February, March,

and April 2023. Pls.' Contempt App'x (PCA) 130-35, 138-42, 208-10.[1] On May 3, 2023, Plaintiffs sent the City another Notice of Violation concerning these violations, as well as the City's failure to meet the May 1, 2023 deadline. PCA 114-16. Plaintiffs' counsel met and conferred with counsel for the City to discuss the disputes and the status of the City's violations on May 12 and again on May 18, Calero Decl. ¶¶ 5-6, but were unable to reach a full resolution.

During the May 12 conference, the City's counsel represented to Plaintiffs that the City had cured the outreach violation. *See id.* ¶ 5. However, the City has not yet provided documentation of such compliance. *See* Second Declaration of Nicole Vandal (2d Vandal Decl.) ¶¶ 2-4, 10. Given the history of the City's noncompliance and its repeated failures to follow through on its promises, Plaintiffs include a discussion of this issue in their brief to preserve their ability to promptly seek relief on this issue. If the City provides documentation to Plaintiffs demonstrating full compliance with the Agreement's outreach requirements, Plaintiffs will promptly inform the Court and appropriately narrow the scope of their requested relief.

On May 22, 2023, Plaintiffs' counsel communicated with opposing counsel in accordance with Local Rule 7.1(a) explaining the nature of the relief sought in

---

[1] Plaintiffs have compiled the exhibits to the Declaration of Melanie Calero (Calero Decl.) in a consecutively paginated appendix for the Court's convenience.

this motion and inviting further discussion of the disputed issues. Counsel for the City stated that the City would oppose the relief requested in the motion. Counsel for State Parties stated their position as follows: "State Parties take no position on any attempt by [Plaintiffs] to enforce the settlement agreement/order, but we do not consent to any motion seeking fines against the City." Counsel for State Parties also stated that they do not intend to file a response to this motion.

Dated:        May 26, 2023                    Respectfully submitted,

/s/ Melanie D. Calero                         /s/ Bonsitu Kitaba (with consent)____
Melanie D. Calero                             Bonsitu Kitaba (P78822)
Natural Resources Defense Council             Daniel S. Korobkin (P72842)
40 West 20th Street                           American Civil Liberties Union Fund
New York, NY 10011                            of Michigan
(212) 727-4546                                2966 Woodward Avenue
mcalero@nrdc.org                              Detroit, MI 48201
                                              (313) 578-6823
Adeline Rolnick                               bkitaba@aclumich.org
Sarah C. Tallman                              dkorobkin@aclumich.org
Natural Resources Defense Council
1152 15th Street NW, Suite 300                *Counsel for Plaintiff American Civil*
Washington, DC 20005                          *Liberties Union of Michigan*
(202) 513-6240
arolnick@nrdc.org
stallman@nrdc.org

*Counsel for Plaintiffs Concerned*
*Pastors for Social Action, Melissa*
*Mays, and Natural Resources Defense*
*Council, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CONCERNED PASTORS FOR SOCIAL
ACTION, et al.,

          Plaintiffs,

   v.

NICK A. KHOURI, et al.,

          Defendants.

_____/

Case No. 16-10277

Hon. David M. Lawson

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR CONTEMPT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

CONCISE STATEMENT OF THE ISSUE PRESENTED ..................................... vii

CONTROLLING AUTHORITY ................................................................. viii

INTRODUCTION ...................................................................................1

STATEMENT OF FACTS ........................................................................3

I.     The Agreement's outreach, restoration, and reporting requirements ..............3

II.    Flint's mayor exercises significant authority over the City's
       implementation of the Agreement ...................................................4

III.   The City's persistent violations and Plaintiffs' efforts to resolve
       disputes ...............................................................................5

IV.    The Court's grant of Plaintiffs' fifth Motion to Enforce ...............................7

V.     The City's ongoing violations of the Court's most recent order ....................9

STANDARD OF REVIEW ......................................................................12

ARGUMENT ......................................................................................13

I.     The City should be held in contempt for its violations of clear
       outreach, restoration, and reporting requirements .........................................13

II.    The City cannot show that it took all reasonable efforts
       to comply with the Court's orders ...................................................14

III.   The Mayor's failure to ensure the City's compliance warrants a
       contempt finding ....................................................................17

IV.   Sanctions are necessary to ensure compliance with the Agreement .............19

     A.   A daily fine until the City remedies its violations will
          coerce compliance .................................................................20

     B.   Allowing Plaintiffs to recover future enforcement fees
          will also coerce compliance ..............................................22

CONCLUSION .........................................................................25

CERTIFICATE OF SERVICE ..............................................27

# TABLE OF AUTHORITIES

## Cases

*Adcor Indus., Inc. v. Bevcorp, LLC*,
   411 F. Supp. 2d 778 (N.D. Ohio 2005) ........................................................18

*Aspira of N.Y., Inc. v. Bd. of Educ. of N.Y.*,
   423 F. Supp. 647 (S.D.N.Y. 1976) ..............................................................16

*Balla v. Idaho*,
   677 F.3d 910 (9th Cir. 2012) .......................................................................23

*Bridgeport Guardians v. Delmonte*,
   371 F. Supp. 2d 115 (D. Conn. 2005) ........................................................17

*Cabrera v. Municipality of Bayamon*,
   622 F.2d 4 (1st Cir. 1980) ...........................................................................19

*CFE Racing Prods., Inc. v. BMF Wheels, Inc.*,
   No. 11-13744, 2016 WL 1637560 (E.D. Mich. Apr. 26, 2016) ..................25

*Elec. Workers Pension Tr. Fund of Loc. Union # 58 v. Gary's Elec. Serv. Co.*,
   340 F.3d 373 (6th Cir. 2003) ...............................................................passim

*Gascho v. Glob. Fitness Holdings, LLC*,
   875 F.3d 795 (6th Cir. 2017) .......................................................13, 18, 19

*Glover v. Johnson*,
   934 F.2d 703 (6th Cir. 1991) .........................................................13, 14, 16

*Graves v. City of Lansing*,
   385 N.W.2d 785 (Mich. Ct. App. 1986) .....................................................18

*Hicks ex rel. Feiock v. Feiock*,
   485 U.S. 624 (1988) ....................................................................................19

*In re Jaques*,
   761 F.2d 302 (6th Cir. 1985) .......................................................................13

*Kelly v. Wengler*,
    822 F.3d 1085 (9th Cir. 2016) .......................................................25

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*,
    539 F.3d 1039 (9th Cir. 2008) .......................................................20

*Lucky's Detroit, LLC v. Double L Inc.*,
    No. 09-14622, 2012 WL 3248193 (E.D. Mich. Aug. 8, 2012) .............20, 22

*Liberte Cap. Grp., LLC v. Capwill*,
    462 F.3d 543 (6th Cir. 2006) ........................................................23

*Maness v. Meyers*,
    419 U.S. 449 (1975).....................................................................12

*NLRB v. Cincinnati Bronze, Inc.*,
    829 F.2d 585 (6th Cir. 1987) ........................................................12

*N.Y. State Nat'l Org. for Women v. Terry*,
    886 F.2d 1339 (2d Cir. 1989) .......................................................22

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) ....................................................................23

*Planet Aid v. City of St. Johns*,
    No. 1:14-CV-149, 2014 WL 11309765 (W.D. Mich. May 20, 2014) .........17

*Rolex Watch U.S.A., Inc. v. Crowley*,
    74 F.3d 716 (6th Cir. 1996) .........................................................13

*Rufo v. Inmates of Suffolk Cnty. Jail*,
    502 U.S. 367 (1992) ....................................................................23

*SEC v. First Fin. Grp. of Tex., Inc.*,
    659 F.2d 660 (5th Cir. 1981) ........................................................21

*Shakman v. Democratic Org. of Cook Cnty.*,
    533 F.2d 344 (7th Cir. 1976) ........................................................17

*Thompson v. U.S. Dep't of Hous. & Urb. Dev.*,
    404 F.3d 821 (4th Cir. 2005) ..................................................25

*United States v. Bayshore Assocs., Inc.*,
    934 F.2d 1391 (6th Cir. 1991) ..............................................22

*United States v. Conces*,
    507 F.3d 1028 (6th Cir. 2007) ...........................................13, 14

*United States v. Tennessee*,
    780 F.3d 332, 337 (6th Cir. 2015) ..........................................23

*United States v. United Mine Workers of Am.*,
    330 U.S. 258 (1947) ..........................................................13, 19

*United States v. Wayne County*,
    369 F.3d 508 (6th Cir. 2004) .................................................24

*Wilson v. United States*,
    221 U.S. 361 (1911) ..............................................................17

## Federal Rules

Federal Rule of Civil Procedure 60(b).......................................22

Federal Rule of Civil Procedure 65(d)(2)..................................17

## Statutes

Flint, Mich., Code of Ordinances art. XVI § 2-111............................5, 19

Mich. Comp. Laws § 117.1.....................................................18

Mich. Comp. Laws § 117.3(a)..................................................18

Mich. Comp. Laws § 141.1549.................................................18

## Other

Flint, Mich., Charter § 1-101 ..................................................18

Flint, Mich., Charter § 3-305 ................................................................4

Flint, Mich., Charter § 4-101 ...........................................................4, 18

Flint, Mich., Charter § 4-103 ................................................................4

Flint, Mich., Charter § 4-201 ...........................................................4, 19

## CONCISE STATEMENT OF THE ISSUE PRESENTED

The court-ordered Settlement Agreement requires the City of Flint to, among other things, conduct outreach to residents at all eligible homes to obtain permission to conduct service line excavations and replacements; restore property damage caused by the City's service line work; maintain records of where it has completed property restoration; and provide reports documenting the City's compliance with the Agreement. The City is violating the Court's orders to (1) determine by May 1, 2023, which addresses still require property repairs; (2) provide accurate and complete monthly restoration reporting; and (3) complete the remaining required outreach, and neither the City nor its mayor have taken all reasonable steps to comply. Should the Court find the City of Flint and its mayor in civil contempt and order appropriate sanctions to coerce compliance?

# CONTROLLING AUTHORITY

*Elec. Workers Pension Tr. Fund of Loc. Union # 58 v. Gary's Elec. Serv. Co.*,

    340 F.3d 373 (6th Cir. 2003)

Federal Rule of Civil Procedure 65(d)(2)

## INTRODUCTION

The City of Flint's continuing violations of this Court's orders to finish the lead pipe replacement program warrant sanctions and a contempt finding against the City and its mayor. Just three months ago, the Court granted Plaintiffs' *fifth* motion to enforce the Settlement Agreement (Agreement). The Court ordered the City to remedy its failures to track its repairs to residents' properties and timely finish the pipe replacement program. Within weeks, the City began violating that order, and its violations remain ongoing. These latest violations continue a pattern of disregard for this Court's orders over years. Absent relief to coerce the City to finally finish the job the Court ordered it to do, its delays may go on indefinitely.

Inexplicably, the City still has not completed the essential first step of conducting outreach to residents at all eligible homes to provide them a meaningful opportunity to participate in the program. The City also missed its May 1, 2023 deadline to fill gaps in its restoration records—gaps created by its own prior violations. Indeed, it failed to conduct required visual inspections at more than 21,000 addresses by this deadline to confirm whether those homes still require property restoration. Even now, the City does know how many properties need repairs. Further, the City continues to violate clear reporting requirements, prolonging its yearslong failure to report on its restoration work.

These continuing violations are causing new harms to the Flint community.

1

Thousands of residents have waited—some for years—for promised repairs to their torn-up lawns or broken sidewalks and driveways. Residents should not have to worry that replacing the lead pipes at their homes will leave their properties in an indefinite state of disarray. But this is the reality the City's conduct has created. Moreover, the City's ongoing failure to identify where property repairs are still needed is preventing the parties from negotiating a new deadline to finish all restoration work, as the City agreed to do.

The City's latest violations warrant a more serious remedy: coercive sanctions to ensure prompt compliance. Plaintiffs do not seek this relief lightly and have sought to resolve these issues in earnest for months. But the City's serial missed deadlines over years and failures to comply with terms the Court ordered just months ago indicate that the City will not expeditiously identify the remaining scope of restoration work or finish outreach absent sanctions. Plaintiffs therefore respectfully request that the Court (1) find the City and the Mayor in contempt; (2) order a daily fine of $500.00, paid jointly by the City and its mayor in his official capacity to the Court, until the City cures its violations of the Court's February 2023 Order requiring it to finish all required outreach and fully identify which addresses still require restoration; and (3) permit Plaintiffs to seek to recover attorneys' fees and costs for future enforcement of the Agreement against the City.

## STATEMENT OF FACTS

### I.     The Agreement's outreach, restoration, and reporting requirements

The Agreement requires the City to "implement a plan to replace *all* lead

and galvanized service lines at Flint residences" to reduce lead contamination in

the City's tap water. Order Granting Pls.' 4th Mot. Enforce (Order Granting 4th

Mot.) 6, ECF No. 228, PageID.11034. First, the City must conduct outreach to

residents to seek their consent to excavate their service lines. Order Am.

Settlement Agmt. (2019 Order) ¶¶ 14-15, ECF No. 208, PageID.10354-55. This

outreach must include a mailing and at least two in-person contacts, at least one of

which must occur after 5 p.m. or on a weekend. *Id*. The City must complete

outreach to all homes that had an active water account when the parties entered

into the Agreement or thereafter, even if the account is now inactive. Settlement

Agmt. (Agmt.) ¶ 11, ECF No. 147-1, PageID.7365-66.

The Agreement also requires the City to repair property damage from its

service line work. To find the lead pipes it must replace, the City digs large holes

or trenches in residents' lawns, which may damage sidewalks, curbs, and

driveways. PCA 21-22; *see, e.g.*, Declaration of Cornelio Perez (Perez Decl.) ¶ 3;

Declaration of Kaori Diener (Diener Decl.) ¶ 2; Declaration of Sidney Hemphill

(Hemphill Decl.) ¶¶ 3-4, ECF No. 257-3, PageID.11650-51. The City must repair

this damage by filling the excavation trench, ensuring that the lawn is debris-free

and has a uniform and consistent plant cover, and repairing any broken asphalt or concrete. Order Mod. Settlement Agmt. (2022 Order) ¶ 2, ECF No. 237, PageID.11071; Order Granting Pls.' 5th Mot. Enforce (Order Granting 5th Mot.) 23-24, ECF No. 258, PageID.11694-95.

The City must also "maintain records sufficient to comply with" the Agreement's reporting requirements, Agmt. ¶ 36, PageID.7381, which include submitting monthly status reports about restoration and outreach work. 2019 Order ¶ 6, PageID.10348-49; Order Granting 5th Mot. 24-25, PageID.11695-96.

## II.    Flint's mayor exercises significant authority over the City's implementation of the Agreement

Flint's mayor is the City's "Chief Executive Officer." PCA 28 (Flint City Charter § 4-101). He has an overall "obligation of leadership" and is charged with "tak[ing] care that the laws be enforced." *Id.* (Flint City Charter § 4-103). He must submit a yearly budget to City Council for approval and may veto any changes the Council requests. PCA 29-31 (Flint City Charter §§ 7-101(A)(4), 7-102). He also may review and veto every resolution passed by City Council, PCA 26-27 (Flint City Charter § 3-305), including resolutions approving stipulations modifying the Agreement and agreements with the City's contractors, *see* Pls.' 5th Mot. Enforce 7-8, ECF No. 242, PageID.11104-05. Mayor Neeley also appoints, and may fire at will, certain City officials who play a role in implementing the Agreement, including the City Administrator, PCA 28 (Flint City Charter § 4-201), and

4

Director of Public Works, PCA 33 (Flint Code of Ordinances art. XVI § 2-111).

Beyond his legal duties, the Mayor serves as the City's spokesperson regarding the City's implementation of the program. *See, e.g.*, PCA 35, 39-40, 44-45, 49-50, 52, 55-56. This includes providing updates at public meetings about the status of the City's pipe replacement work. Declaration of Eileen Hayes (Hayes Decl.) ¶¶ 16-19. He has publicly committed to "continue the work until the job [required by the Agreement] is done." *See* PCA 35. And he has taken accountability for the City's violations, acknowledging: "[D]eadlines were missed. I admit to that. . . . Some could be [attr]ibuted to me." PCA 45.

## III.    The City's persistent violations and Plaintiffs' efforts to resolve disputes

Over the last six years, the City has repeatedly violated the Agreement's clear terms. Among other violations, the City has failed to:

- track addresses of abandoned homes otherwise eligible for pipe replacements, PCA 59;

- create a portal for residents to submit consent forms online, PCA 71, 77;

- timely install filters to prevent lead contamination following pipe replacements, Pls.' Mot. Enforce Paras. 38 & 117, at 11-13, ECF No. 173, PageID.8504-06;

- fix its tap water monitoring protocols, Order Granting 4th Mot. 11, PageID.11039;

- meet deadlines to finish all pipe excavations and replacements, Order Granting 5th Mot. 1-2, PageID.11672-73;

- track its work to repair residents' properties, *id.*; and

- produce accurate and timely reports of its work, *e.g.*, Order Granting in Part Pls.' 3d Mot. Enforce 2, ECF No. 209, PageID.10358; PCA 111-12.

The City's violations of its outreach obligations have been especially prolonged. By the Agreement's initial outreach deadline in September 2018, the City had sent *zero* of the required mailings. Order Am. Settlement Agmt. (2018 Order) ¶ 15.d, ECF No. 174, PageID.8712-13; PCA 204-05. The Court has since extended and re-extended the deadline—by more than four years in total. 2019 Order ¶¶ 14-15, PageID.10354-55 (setting 2019 deadline); 2022 Order ¶ 1, PageID.11071 (setting September 2022 deadline). The City is still not done. *See infra* pp. 9-10.

Plaintiffs have spent significant time trying to conserve judicial resources by attempting to resolve disputes without motion practice. Among other things, this has involved negotiating several detailed stipulations modifying the Agreement. *E.g.*, Stip. & Notice (2022 Stip.), ECF No. 236; Stip & Notice, ECF No. 216.

In five instances, Plaintiffs have been forced to seek judicial relief to enforce the Agreement. *See* Order Granting 5th Mot. 1, PageID.11672. Plaintiffs' prior motions have not sought sanctions or contempt. Instead, Plaintiffs requested injunctive relief to compel the City to promptly fulfill its obligations. *E.g.*, Pls.' 5th Mot. Enforce 17-25, PageID.11114-22. In exercising its remedial discretion, the Court has imposed increasingly stringent measures to compel compliance over time. *See* Order Granting 5th Mot. 11, PageID.11682.

## IV.   The Court's grant of Plaintiffs' fifth Motion to Enforce

The parties' most recent dispute concerned the City's third missed deadline to finish all required outreach, excavations, and replacements, and its violation of restoration requirements. Pls.' 5th Mot. Enforce 6, 9-12, PageID.11103, 11106-09. The operative deadline and requirements were set by April 2022 modifications to the Agreement, to which the parties stipulated only after a year of negotiations following the City's failure to meet a prior deadline to finish pipe replacements. *See* 2022 Stip. 1, ECF No. 236, PageID.11060; 2022 Order ¶ 1, PageID.11071.

The April 2022 modifications set September 30, 2022, as the City's deadline to complete outreach, excavations, and replacements for all eligible homes (a list of 31,578 addresses). 2022 Order ¶ 1, PageID.11071. The City explicitly agreed that hundreds of homes without current active water accounts were eligible to join the program. PCA 80, 83-84. While negotiating the 2022 modifications, Plaintiffs shared spreadsheets reflecting their understanding, based on the City's reporting, of the remaining required work, *see, e.g.*, PCA 2-3, including a February 2022 list of addresses still requiring outreach, *see* PCA 14, 17-18; Declaration of Adeline Rolnick (Rolnick Decl.) ¶¶ 12-21, ECF No. 242-2, PageID.11131-37. The City still missed the outreach deadline. Pls.' 5th Mot. Enforce 9, PageID.11106.

The parties also agreed in April 2022 to negotiate a new restoration deadline after the City executed its last contract for the remaining restoration work. 2022

7

Order ¶ 6, PageID.11074-75. But when that time came, the City conceded that it

lacked complete records of where it had already finished property repairs, and

therefore did not know how many or which addresses still required repairs. Order

Granting 5th Mot. 3-4, PageID.11674-75. These recordkeeping failures prevented

the parties from negotiating a new restoration deadline. Indeed, the City's

recordkeeping gaps were so widespread that the City planned to inspect thousands

of homes in person to confirm whether restoration had already been completed. *Id.*;

PCA 103. The City also consistently failed to provide required monthly lists

documenting its restoration work. Pls.' 5th Mot. Enforce 10, PageID.11107.

Following unsuccessful dispute resolution, Plaintiffs filed their Fifth Motion

to Enforce the Agreement in November 2022. The City did not dispute the

violations at issue, and stipulated in January 2023 to almost all of Plaintiffs'

requested relief. Stip. Regarding Pls.' 5th Mot. Enforce (2023 Stip.), ECF No. 256.

On February 24, 2023, the Court granted Plaintiffs' motion. The Court

ordered the City to complete all outreach by March 1, 2023. Order Granting 5th

Mot. 19, PageID.11690. The Court also ordered the City to fill its recordkeeping

gaps and determine the scope of remaining restoration work by May 1, 2023. *Id.* at

16, PageID.11687. For all excavated addresses where the City lacks records of

restoration, the City must conduct in-person inspections of the properties according

to specific criteria. *Id.* at 23-24, PageID.11694-95. These include confirming that

the sidewalk, curb, driveway, and lawn are complete and uniform, that no debris is left behind on the property, and that the water shut-off valve is level with the lawn's surface to prevent a tripping hazard. *Id*. The Court ordered the parties to negotiate a modified deadline for the City to complete all restoration after the City identifies how much restoration work remains. *Id*. at 16, PageID.11687.

To facilitate tracking of the City's progress towards remedying its recordkeeping gaps and completing required property repairs, the Court ordered the City to provide monthly reports. Each month, the City must provide an Excel spreadsheet listing all excavated addresses, noting the status of restoration work at each address in specific categories, as determined through existing records or an inspection. *Id*. at 24-25, PageID.11695-96. The City may label an address's status as unknown pending records review or an inspection. *See id*.

## V.    The City's ongoing violations of the Court's most recent order

The City is already violating the Court's February 2023 Order. First, the City missed yet another deadline to complete outreach, failing to do so by March 1. PCA 171-72. As of April 14—six weeks after its deadline—the City conceded that hundreds of homes still needed outreach. *See id*. The City missed this deadline in part because it failed to ensure that the contractor it hired in 2022 had the technological capacity to record the times of outreach attempts. *See* Calero Decl. ¶ 3; PCA 115. Causing further delays, the City incorrectly instructed its contractors

*not* to complete outreach at homes without current active water accounts, even though it had agreed that outreach to those homes was required. *See* PCA 115, 171. Weeks after the outreach deadline had passed, and well after Plaintiffs notified the City of its outreach violation, the City doubled the number of crews performing outreach. PCA 130-31, 171.

The City's outreach continues to increase participation in the program: in April and May, the City obtained consent to check service lines at over 200 homes. PCA 212, 215, 217, 219, 221. While the City stated earlier this month that it has cured its outreach violation, its reporting has not shown compliance. Calero Decl. ¶ 5; 2d Vandal Decl. ¶¶ 2-4, 10.

Second, the City missed its May 1 deadline to determine the remaining scope of restoration work. Order Granting 5th Mot. 16, PageID.11687; PCA 114-15. As of May 1, the City had completed only roughly 5,000 inspections, out of the total 26,000 the City plans to conduct. Calero Decl. ¶ 19. Even now, it still has thousands of inspections to complete. *Id*. ¶ 18. Meanwhile, thousands of residents have been waiting for repairs to their properties, with no end in sight. *See, e.g.*, Diener Decl. ¶¶ 2-4; Hemphill Decl. ¶¶ 3-7; Calero Decl. ¶¶ 15-16; PCA 118-19.

Third, the City continues to violate restoration reporting requirements to which it agreed. PCA 115-16, 126, 138-39. Although the City represented that it has been performing restoration in 2023, it has not shared complete reporting of

10

that work as required. *See* Calero Decl. ¶¶ 6, 10-11, 15; PCA 132, 190-91. The data the City has provided does not meet the Agreement's clear formatting requirements, frustrating Plaintiffs' efforts to monitor the City's compliance. *See* Calero Decl. ¶¶ 10-11, 15; PCA 126; Order Granting 5th Mot. 24-25, PageID.11695-96. These deficiencies have persisted despite Plaintiffs' multiple requests for proper reporting since February. *E.g.*, PCA 126, 130, 138-39, 167-68.

These violations reflect the City's mismanagement of its restoration work. Although the City agreed in principle to the visual inspection process in October 2022, and stipulated to clear terms in January 2023, it waited until March 2023 to start compliant inspections, less than two months before the May 1 deadline. *See* Pls.' 5th Mot. Enforce 3-4, PageID.11087-88; 2023 Stip. ¶ 16.b, PageID.11625-27; PCA 140, 168. The City doubled the number of crews inspecting properties only on the day of the deadline to finish that work. PCA 127, 168. Even after May 1, the City was still analyzing its own records to figure out how many visual inspections were required. *See* PCA 144; Calero Decl. ¶ 6 (City concluded in May that roughly 11,000 additional inspections were required).

That the City still does not know which addresses require property repairs is a consequence of its delegation, with limited oversight, of this work to its project management firm, ROWE Professional Services (ROWE). The City has no staff dedicated to the restoration work—instead, it hired ROWE in April 2022 to

maintain and review restoration records, complete site visits to verify restoration status, and prepare required restoration reporting. Calero Decl. ¶ 4; PCA 159, 162-63. Yet, the City has not kept ROWE informed of the Court's requirements. For example, the City did not confirm whether ROWE had the technical capability to export restoration data in the correct format (Excel) until March 2023, months after the City initially agreed to provide this reporting. PCA 167-68. Further, ROWE representatives told Plaintiffs that they were unaware of the format requirement— and other details of the new reporting requirements—until *Plaintiffs* explained these requirements while discussing the City's violations. *See id*.; Calero Decl. ¶ 4.

*     *     *

On May 3, 2023, Plaintiffs sent the City a Notice of Violation describing the City's noncompliance. The parties have conferred and have been unable to resolve their dispute over the City's violations. Calero Decl. ¶ 7.

**STANDARD OF REVIEW**

A court's use of its contempt powers enforces the message that all court orders "must be complied with promptly." *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590 (6th Cir. 1987) (quoting *Maness v. Meyers*, 419 U.S. 449, 458 (1975)). The movant "must produce clear and convincing evidence that" the litigant "'violated a definite and specific order of the court requiring him to perform . . . a particular act or acts.'" *Elec. Workers Pension Tr. Fund of Loc.*

12

*Union # 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (quoting *Cincinnati Bronze*, 829 F.2d at 591) (alteration omitted). A violation of a known court order alone is enough: the defendant's willfulness in violating the order is "irrelevant." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quoting *In re Jaques*, 761 F.2d 302, 306 (6th Cir. 1985)).

Once the movant establishes that the contemnor violated a clear court order, the contemnor must show "categorically and in detail why he or she is unable to comply." *Id.* (citations omitted). A "good faith effort" to comply is insufficient. *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991). Instead, the contemnor must show that it "took all reasonable steps within [its] power to comply." *United States v. Conces*, 507 F.3d 1028, 1043 (6th Cir. 2007) (quoting *Glover*, 934 F.2d at 708).

A court may impose both coercive and compensatory sanctions as a civil contempt remedy. *Elec. Workers Pension Tr.*, 340 F.3d at 379 (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). Contempt sanctions are "serious" and must be used "with caution," as measures of "last resort, not first resort." *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 799 (6th Cir. 2017).

### ARGUMENT

**I.     The City should be held in contempt for its violations of clear outreach, restoration, and reporting requirements**

The City is violating multiple clear provisions of the Court's February 2023 Order. First, the City failed to fully identify where restoration work remains by

May 1, as the Court mandated. Order Granting 5th Mot. 16, PageID.11687; *supra* p. 10. It still has not finished fixing its recordkeeping gaps and has thousands more visual inspections to complete.[2] *Supra* p. 10. The City is also violating the Court's clear requirement to provide monthly cumulative updates on its restoration work. Order Granting 5th Mot. 24-25, PageID.11695-96; *see supra* pp. 10-11.

The City is also violating clear outreach requirements. The February 2023 Order required the City to complete outreach to all remaining eligible homes by March 1, 2023. Order Granting 5th Mot. 19, PageID.11690. The City did not do so, and still has not cured its violation. *See supra* pp. 9-10.

These clear violations extend the City's yearslong pattern of noncompliance and meet Plaintiffs' burden on contempt. *See Elec. Workers Pension Tr. Fund*, 340 F.3d at 379.

**II. The City cannot show that it took all reasonable efforts to comply with the Court's orders**

The City cannot show "'categorically and in detail'" its "inability to comply." *Conces*, 507 F.3d at 1043 (quoting *Glover*, 934 F.2d at 708). Instead of taking "all reasonable steps within [its] power to comply," *id.* (quoting *Glover*, 934 F.2d at 708), the City has continued "mismanag[ing]" the pipe replacement

---

[2] Even after the City finishes its inspections, additional efforts may be required to ensure the accuracy of its determination of which homes need further repairs. *See* Hayes Decl. ¶¶ 6-11; Calero Decl. ¶¶ 14-16.

program, Order Granting 5th Mot. 2, PageID.11673.

The City agreed to complete outreach to all eligible homes—a specific list of 31,578 addresses. *Supra* p. 7. Plaintiffs have routinely communicated to the City where they understand the City to have remaining outreach obligations. *See supra* p. 7. Yet the City instructed its contractors *not* to perform outreach at hundreds of eligible homes, and only corrected its error after missing the March 1 deadline. PCA 171-72; *supra* pp. 7, 9. The City also failed to exercise basic diligence in fall 2022 to ensure its contractors had the software tools needed to document compliance with the Court's requirement—in place since 2018—to record the times of outreach attempts. *See* 2018 Order ¶ 15.b, PageID.8711; *supra* p. 9. And the City failed to take the reasonable step of increasing its outreach staffing until after Plaintiffs noticed a dispute over the City's outreach delays. *See supra* p. 10.

The City has also neglected basic steps to timely ascertain the breadth of its recordkeeping lapses and ensure that it would remedy them by the court-ordered deadline. Last fall, the City agreed in principle to a process and deadline for conducting visual inspections and suggested that about 6,000 inspections were needed to figure out how much restoration work remains. Pls.' App'x 232, ECF No. 242-4, PageID.11469; Rolnick Decl. ¶ 4. Yet, the City only began performing compliant inspections less than two months before the May 1 deadline. *Supra* p. 11. And, after the May 1 deadline, the City determined that it will in fact need to

inspect *26,000* total properties. Calero Decl. ¶¶ 6, 19; PCA 144. At that point, the City was still continuing to locate—for the first time—records within its custody to inform where inspections were needed. *Supra* p. 11. The City has known this records review was needed for years. Pls.' 5th Mot. Enforce 10, PageID.11107.

The City has "neglected to marshal [its] own resources . . . and demand the results needed from subordinate persons . . . to effectuate" the Court's orders. *Glover*, 934 F.2d at 708 (quoting *Aspira of N.Y., Inc. v. Bd. of Educ. of N.Y.*, 423 F. Supp. 647, 654 (S.D.N.Y. 1976)). The City has devoted no City staff to fixing its recordkeeping lapses. *See supra* pp. 11-12. And it has failed to ensure the project manager it hired to handle that task and prepare required reporting conducts compliant work: The City did not instruct relevant ROWE staff about the court-ordered reporting requirements until *after* the City violated those requirements and Plaintiffs initiated dispute resolution. *See supra* p. 12. Neither the City nor ROWE set up their reporting software to export restoration data in Excel format until March 2023—despite the City's agreement to provide reports in Excel months earlier. *Supra* p. 12. Instead of working closely with ROWE to ensure compliance, the City has taken a hands-off approach. It has not kept itself apprised of even basic facts about its inspections, asserting that only a specific ROWE employee has that information. Calero Decl. ¶ 2; *see also* PCA 132-33.

In sum, the City cannot meet its burden and should be held in contempt.

## III. The Mayor's failure to ensure the City's compliance warrants a contempt finding

As Flint's chief executive, Mayor Neeley should be found in contempt for failing to ensure the City's compliance with the Agreement. *See* Fed. R. Civ. P. 65(d)(2)(B) (with notice, an order binds "the parties' officers"). "A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs." *Wilson v. United States*, 221 U.S. 361, 376 (1911). Thus, a defendant's officer who "fail[s] to take action or attempt compliance" is "'no less than the corporation itself . . . guilty of disobedience and may be punished for contempt.'" *Elec. Workers Pension Tr. Fund*, 340 F.3d at 383 (quoting *Wilson,* 221 U.S. at 376). This is so even where the officer is "not . . . a named defendant in the order, or even mentioned at all." *Id*. at 382.

This rule applies equally to private and municipal corporations, and courts have routinely relied on Rule 65(d) to bind non-party city officers and employees to injunctions and hold them in contempt. *See, e.g.*, *Shakman v. Democratic Org. of Cook Cnty.*, 533 F.2d 344, 352 (7th Cir. 1976) (holding non-party city employee in contempt); *Planet Aid v. City of St. Johns*, No. 1:14-CV-149, 2014 WL 11309765, at *5 (W.D. Mich. May 20, 2014) (noting injunction would extend to city's officers), *aff'd*, 782 F.3d 318 (6th Cir. 2015); *Bridgeport Guardians v. Delmonte*, 371 F. Supp. 2d 115, 121 & n.5 (D. Conn. 2005) (requiring police department and non-party "responsible city officials" to pay contempt fines).

17

Mayor Neeley, an officer of the City "responsible for" the City's affairs, "was subject to the court's order just as" the City was itself. *Elec. Workers Pension Tr. Fund*, 340 F.3d at 382.[3] Mayor Neeley is the chief executive officer of Flint, a "body corporate." *See* Mich. Comp. Laws §§ 117.1, 117.3(a); PCA 25, 28 (Flint City Charter §§ 1-101, 4-101); *see also Graves v. City of Lansing*, 385 N.W.2d 785, 788 (Mich. Ct. App. 1986) (holding that a Michigan mayor was an officer of their city). In this role, he is "responsible for" the City's conduct in implementing the Agreement. *See Gascho*, 875 F.3d at 803. He has legal responsibility and authority over nearly every aspect of Flint's operations. *See supra* pp. 4-5. And he has publicly taken ownership for completing the pipe replacement program. *Id.*

Mayor Neeley had notice of the City's obligations under the Court's orders and the parties' disputes regarding those obligations. *See* Hayes Decl. ¶¶ 16-19; *supra* p. 5; *see also Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 800 (N.D. Ohio 2005) (holding that a contempt finding may be based on "evidence of knowledge of a court order (or constructive knowledge)").

Because Mayor Neeley nonetheless "failed to take appropriate action to

---

[3] The Mayor is not a named defendant because, when Plaintiffs filed this case, Michigan's governor had placed Flint under emergency management and stripped its mayor of authority to manage Flint's water system. *See* Mich. Comp. Laws § 141.1549; Op. & Order Granting Pls.' Mot. Prelim. Inj. 14-16, ECF No. 96, PageID.6304-06 (finding, "for all practical purposes, th[at] state defendants have been the municipal government during the receivership"). The Mayor's authority has since been restored.

ensure" compliance with this Court's orders, he should be held in contempt. *Gascho*, 875 F.3d at 803. The Mayor could have exercised his authority to review the City's contracts with its contractors to ensure they were sufficient to meet the City's obligations. *See supra* p. 4. He could also have used his supervisory authority over the Director of Public Works, the City Administrator, and other city leaders to ensure they understood the City's obligations and were taking necessary steps to ensure compliance. *See* PCA 28 (Flint City Charter § 4-201), 33 (Flint Code of Ordinances art. XVI § 2-111). But he did none of those things.

In these circumstances, "impos[ing] judicial sanctions" on the Mayor to coerce compliance is "fully appropriate." *Elec. Workers Pension Tr. Fund*, 340 F.3d at 383; *cf. Cabrera v. Municipality of Bayamon*, 622 F.2d 4, 7 (1st Cir. 1980) (affirming contempt finding against defendant mayor who failed to "take necessary steps" to overcome known challenges to compliance with court order).

## IV. Sanctions are necessary to ensure compliance with the Agreement

Plaintiffs seek sanctions "to coerce the defendant into compliance with the court's order." *Elec. Workers Pension Tr. Fund*, 340 F.3d at 379 (quoting *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947)). When a court imposes contempt sanctions, "it is not only vindicating its legal authority to enter the initial court order, but it also is seeking to give effect to the law's purpose of modifying the contemnor's behavior." *Hicks ex rel. Feiock v. Feiock*, 485 U.S.

19

624, 635 (1988). Plaintiffs seek two sanctions: a prospective daily fine until the City complies, and an order allowing Plaintiffs to seek attorneys' fees should future enforcement against City Defendants prove necessary.

### A. A daily fine until the City remedies its violations will coerce compliance

A coercive daily fine payable until Flint finishes required outreach and fully identifies where restoration work remains is appropriate and necessary to ensure the City's compliance. *See Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1041-43 (9th Cir. 2008).

The City's violation is not a mere technicality. Thousands of residents have been waiting for years for their properties to be repaired. *See supra* p. 10. Each of these residents has been denied the justice owed to them under the Agreement. Because of the City's violations, there is still no guarantee as to when the City will complete this work. The City is now two-and-a-half years past its initial deadline to finish the pipe replacement program. *See* Agmt. ¶ 20, PageID.7371. Yet the parties' negotiations of a new deadline have been stalled for months—first because of the City's recordkeeping violations, and now because the City failed to comply with court-ordered remedies for those violations. *See supra* pp. 7-9. A daily fine will encourage the City to come into compliance "as expeditiously as possible" so that residents are not left waiting even longer. *See Lucky's Detroit, LLC v. Double L Inc.*, No. 09-14622, 2012 WL 3248193, at *5 (E.D. Mich. Aug. 8, 2012).

The City's "persistent refusal to comply with the [Court]'s orders throughout this litigation" reinforces the need for a coercive sanction. *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 670 (5th Cir. 1981). The City's approach towards restoration and outreach over the course of this Agreement shows a lack of seriousness and diligence towards the requirements and deadlines ordered by this Court. The violations at issue now are just the latest examples of a pattern of protracted noncompliance. *E.g.*, Pls.' Mot. Enforce Settlement Agmt. 4-14, ECF No. 155, PageID.7699-709; Pls.' Mot. Enforce Paras. 38 & 117 of Settlement Agmt. 14-15, PageID.8507-08; Order Granting 4th Mot. 11-14, PageID.11039-42.

Despite the City's clear violations of the Court's orders, Plaintiffs' Fifth Motion to Enforce did not seek sanctions. Instead, based on "well-founded" concerns "that the City will not accurately determine whether restoration has been completed in every case," Plaintiffs requested non-coercive measures designed "to remedy the City's repeated failure to meet Court-ordered deadlines." Order Granting 5th Mot. 11, PageID.11682.

These measures—most of which the City agreed to—have unfortunately not secured compliance. Instead, the City seems to be treating the Court's clear terms as mere suggestions, not obligations. Indeed, it does not appear that the City took basic steps to even try to fully comply. If the City thought it would have difficulty meeting these obligations, it should have raised those concerns before the parties

filed the January 2023 stipulation. If the City later concluded that new circumstances would justify relief from the Court's imposition of the May 1 deadline, it could have moved for that relief under Federal Rule of Civil Procedure 60(b). What it could not do, without committing contempt, was throw up its hands and violate yet another order of this Court.

Plaintiffs therefore respectfully request that the Court order the City and Mayor Neeley, in his official capacity, to jointly pay a fine of $500.00 per day until the City fully completes required outreach and identifies the remaining scope of restoration work.[4] This sanction will have a "deterrent effect" appropriate in light of the "magnitude of the harm caused" by the City's noncompliance, *see Lucky's Detroit*, 2012 WL 3248193, at *5, and the City's resources, *see N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989). The City has a $64 million budget, with over $38 million appropriated for the water system. PCA 178-79, 181. A $500 daily fine, payable to the Court, and which the City can avoid by complying, will send a signal that continued violation is not free.

**B.**     **Allowing Plaintiffs to recover future enforcement fees will also coerce compliance**

The City's conduct warrants an additional sanction to deter future violations:

---

[4] As a civil contempt sanction to incentivize compliance, the fine should be paid to the Court. *See United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991) (citations omitted).

the Court should expressly authorize Plaintiffs to seek attorneys' fees for work
necessary to enforce the Agreement against City Defendants going forward. The
court has "inherent authority to fashion the remedy for contumacious conduct,"
*Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 557 (6th Cir. 2006).

Prevailing plaintiffs in Safe Drinking Water Act citizen suits are generally
eligible to recover attorneys' fees for work to enforce consent orders like the
Agreement. *See* 42 U.S.C. § 300j-8(d); *cf. Pennsylvania v. Del. Valley Citizens'
Council for Clean Air,* 478 U.S. 546, 558-60 (1986). This rule recognizes that
"injunctions do not always work effectively, without lawyers to see that the
enjoined parties do what they were told to do." *Balla v. Idaho*, 677 F.3d 910, 918
(9th Cir. 2012). This has proved true here: Plaintiffs have spent at least hundreds of
hours monitoring the City's implementation and negotiating and pursuing judicial
relief through five enforcement motions to resolve the City's many violations. All
of these hours were "necessary to enforce" the Agreement. *See United States v.
Tennessee*, 780 F.3d 332, 337, 339 (6th Cir. 2015).

The Agreement, however, prevents Plaintiffs from recovering any future
fees "incurred in this Case and incurred in enforcing this Agreement." Agmt. ¶ 24,
PageID.7423. That provision has incentivized the City's pattern of noncompliance
and has become inequitable. *Cf. Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S.
367, 383 (1992).

When the parties agreed to, and the Court approved, a restriction on future attorneys' fees in March 2017, the City committed to completing the pipe replacement program within three years. *See* Agmt. ¶ 20, PageID.7371. Plaintiffs had every reason to assume the City would comply with this Court's order—and no reason to assume the City would disregard and violate the Court's order again and again. Yet, the City has repeatedly "not done what it has promised to do," ignoring this Court's deadlines and requiring the parties to continually negotiate modifications, only to violate the new terms once ordered. Order Granting 5th Mot. 10, PageID.11681. Now, years after the Agreement should have been fully implemented, it is still not clear when that work will be done. Because of the City's violations, the City, Plaintiffs, and Flint residents are still in the dark as to how much restoration work remains and when the City will complete it.

Allowing Plaintiffs to seek and recover fees for any time needed to enforce the Agreement in the future will serve both the coercive and compensatory purposes of contempt sanctions. *Elec. Workers*, 340 F.3d at 379. It will incentivize the City to comply, while compensating Plaintiffs for costs attributable to the City's future noncompliance. This modification is thus "tailored to resolve the problems created by" a "significant change in factual circumstances," *United States v. Wayne County*, 369 F.3d 508, 513 (6th Cir. 2004) (cleaned up)—the City's prolonged, repeated noncompliance with its restoration and outreach

24

obligations, *see Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 830-31 (4th Cir. 2005); *Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016). Viewing the City's conduct "in the context of the entire case," this sanction is appropriate and necessary. *See CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, No. 11-13744, 2016 WL 1637560, at *9 (E.D. Mich. Apr. 26, 2016).

*     *     *

Six years after the City entered into the Agreement—and after five motions to enforce it—the City is still not honoring its commitments to the community, Plaintiffs, and the Court. It is clear that the City will not be incentivized to urgently comply without imposing "more stringent . . . measures." Order Granting 5th Mot. 11, PageID.11682. Plaintiffs thus respectfully request that the Court hold the City and its mayor in contempt; order the City and the Mayor to pay a daily $500 fine until the City cures its violations; and permit Plaintiffs to seek to recover fees and costs for any future enforcement against the City.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for contempt should be granted.

Dated:        May 26, 2023                    Respectfully submitted,

/s/ Melanie D. Calero                          /s/ Bonsitu Kitaba (with consent)
Melanie D. Calero                              Bonsitu Kitaba (P78822)
Natural Resources Defense Council              Daniel S. Korobkin (P72842)
40 West 20th Street                            American Civil Liberties Union Fund
New York, NY 10011                             of Michigan
(212) 727-4546                                 2966 Woodward Avenue

mcalero@nrdc.org

Adeline Rolnick
Sarah C. Tallman
Natural Resources Defense Council
1152 15th Street, NW, Suite 300
Washington, DC 20005
(202) 513-6240
arolnick@nrdc.org
stallman@nrdc.org

*Counsel for Plaintiffs Concerned
Pastors for Social Action, Melissa
Mays, and Natural Resources Defense
Council, Inc.*

Detroit, MI 48201
(313) 578-6823
bkitaba@aclumich.org
dkorobkin@aclumich.org

*Counsel for Plaintiff American Civil
Liberties Union of Michigan*

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2023, I electronically filed Plaintiffs'

Motion for Contempt and accompanying Brief and exhibits with the Clerk of the

Court using the ECF system. Counsel for the City agreed to accept service of this

Motion and accompanying documents through the Court's ECF system on behalf

of Mayor Sheldon Neeley.

/s/ Melanie D. Calero
Melanie D. Calero
Natural Resources Defense Council
40 West 20th Street
New York, NY 10011
(212) 727-4546
mcalero@nrdc.org