# Exhibit 23

April 12, 2023

VIA EMAIL

Joseph Kuptz
William Kim
City of Flint Department of Law
1101 S. Saginaw Street, Third Floor
Flint, MI 48502
jkuptz@cityofflint.com
wkim@cityofflint.com

City of Flint
ATTN: City Administrator Clyde Edwards
City Hall
1101 S. Saginaw Street, First Floor
Flint, MI 48502
cedwards@cityofflint.com

      Re:    Request for Meet and Confer Regarding Ongoing Violations of Settlement
               Agreement in *Concerned Pastors for Social Action v. Khouri*, No. 16-10277 (E.D.
               Mich.)

Dear Messrs. Kuptz, Kim, and Edwards:

      Pursuant to Paragraph 128 of the Settlement Agreement ("Agreement"), Plaintiffs request
a meet and confer to discuss the City's continuing violations of the Agreement and the Court's
order granting Plaintiffs' Fifth Motion to Enforce the Agreement, ECF No. 258, as well as the
City's plan for complying with the May 1, 2023 deadline to determine the remaining scope of
restoration work.

      As described below, the City continues to repeatedly violate the Agreement, including by
failing to (1) provide compliant monthly reporting, (2) complete required outreach, and
(3) respond to information requests. In particular, the City has neither provided any compliant
restoration reporting documenting its visual inspection progress to date nor answered Plaintiffs'
basic questions regarding the City's work to implement the visual inspection requirements. As a
result, Plaintiffs lack essential information about whether the City is on track to meet the
approaching May 1, 2023 deadline.

**I.**      **The City's continuing violations of the Court's orders**

      **A.**      **The City continues to violate outreach requirements**

      The City was required to complete the required outreach to all homes on the 2022
Replacement Eligible Homes List by March 1, 2023. ECF No. 258 at 19. As Plaintiffs previously

documented, the City failed to meet this deadline and has yet to complete this outreach. Feb. 22, 2023 Ltr. fr. A. Rolnick to J. Kuptz; Mar. 10, 2023 Ltr. fr. A. Rolnick to J. Kuptz; Mar. 30, 2023 Em. fr. A. Rolnick to J. Kuptz. The City's ongoing delay in finishing this work is egregious and inexplicable. The City must complete this overdue work as soon as practicable to give all remaining eligible residents a fair opportunity to participate in the program before the August 1 deadline to complete all excavations and replacements. **At the parties' next meet and confer, please explain what efforts the City is making, if any, to complete this essential remaining outreach.**

In addition, the City has not cured its failure to report the times of consent attempts in its October 28, 2022, and December 28, 2022, reports. *See* February 22, 2023 Ltr. fr. A. Rolnick to J. Kuptz; ECF No. 208 ¶ 6(v)(2). Plaintiffs understand that this issue arose because the City failed to ensure that its contractor recorded the times of consent attempts performed during parts of fall 2022. *See* February 22, 2023 Ltr. fr. A. Rolnick to J. Kuptz. To fix this issue, Plaintiffs requested that the City perform additional attempts at any homes listed in its October 28, 2022 and December 28, 2022 outreach reports as necessary to demonstrate compliance with the requirement that the City perform at least two in-person consent attempts at these homes, at least one of which occurred after 5:00 PM or on a weekend. *Id.* The City has neither responded to Plaintiffs' proposal nor remedied its reporting violation. This is impeding Plaintiffs' ability to verify the City's compliance with the Agreement's outreach requirements. The City must promptly finish any additional consent attempts needed to show compliance with the outreach requirements.

### B.     The City continues to violate restoration reporting requirements

During the parties' meeting on March 17, the City represented that it would provide restoration reporting compliant with the Agreement and February 2023 Order in its next status report. *See* ECF No. 258, at 24-25. Although the City provided restoration information for some addresses in its March 28 report, this report did not cure the violations noticed in Plaintiffs' March 10 letter. *See* Mar. 10, 2023 Ltr. fr. A. Rolnick to J. Kuptz; March 30, 2023 Em. fr. A. Rolnick to J. Kuptz.

The City is required to provide reporting (a) identifying all previously excavated homes for which it has a contemporaneous record that restoration was completed, (b) identifying all previously excavated addresses where the City's records indicate restoration is still needed, and (c) identifying all previously excavated homes where the City lacks a contemporaneous record of restoration and either (i) the City confirmed by visual inspection that restoration was completed, (ii) the City confirmed by visual inspection that restoration was still needed, or (iii) the City does not yet know whether restoration is still needed. ECF No. 258 at 24-25. However, the City's monthly report only included documentation of restoration at 272 addresses. This is far short of the required reporting. In addition, for some of these addresses, the records reflect completion of either soft- or hard-surface restoration, but it is unclear whether restoration has been fully completed or is still pending as to those addresses. The City also did not provide any reporting concerning the addresses where it does not have a contemporaneous record of restoration, despite its representation that it has been inspecting these addresses to confirm restoration status since

last fall, and may have completed roughly 2,000 inspections. *See* Mar. 22, 2023 Em. fr. A. Rolnick to J. Kuptz.

The City's failure to provide complete restoration reporting indicates a willful disregard of the Court's orders, including a failure to take reasonable efforts to comply. There is no excuse for the City's violations of unambiguous requirements to which the City consented, that allow the City to report addresses as having an unknown restoration status, and that Plaintiffs have discussed in detail with the City's counsel and ROWE staff on numerous occasions. ECF No. 258 at 24-25; March 22, 2023 Em. fr. A. Rolnick to J. Kuptz. The City must come into compliance with its restoration reporting requirements immediately. **Please provide the missing reporting as soon as possible.**

## II.      Additional restoration issues

In addition to the above violations of the Agreement, Plaintiffs would also like to discuss the following issues related to the City's work to remedy its restoration recordkeeping violations and identify the remaining scope of restoration work.

### A.      Fall 2022 visual inspections

On March 17, the City stated that it had completed around 2,000 visual inspections in fall 2022 that did not comply with the Court's February 2023 Order, ECF No. 258, and that the City would only begin employing the criteria specified in Paragraph 16.b of the Stipulation for inspections performed in March 2023 and thereafter. *See* Mar. 22, 2023 Em. fr. A. Rolnick to J. Kuptz. ROWE, the City's program manager, stated that it had maintained some records concerning these inspections, but the City has not shared those records with Plaintiffs. *Id.*

The Court required all visual inspections to comply with the 2023 Stipulation. *See* ECF No. 258 at 23-24. By May 1, 2023, the Court ordered that, for all previously excavated addresses, the City either (i) provide contemporaneous documentation indicating completed restoration, including the date(s) of restoration; or (ii) provide documentation that the requirements of Paragraph 16.b of the 2023 Stipulation, have been met as to the address. *See* ECF No. 258 at 16, 23-24. Any inspections the City completed before it implemented the Paragraph 16.b requirements do not comply with the City's restoration obligations. *See* ECF No. 258 at 23-24. Thus, if the City does not return to those homes and conduct complaint visual inspections by the May 2023 deadline, it will violate the Court's order.

To facilitate a prompt determination of the remaining scope of restoration work, Plaintiffs requested that the City share a proposal for confirming that the fall 2022 inspections objectively and accurately determined whether the subject addresses required restoration, including the criteria considered in coming to that determination. *See* Mar. 22, 2023 Em. fr. A. Rolnick to J. Kuptz. The City has not offered a proposal, nor has it provided any documentation regarding these homes. Although Plaintiffs are open to further discussing potential paths forward regarding these homes, Plaintiffs cannot rely on the City's word alone that these inspections were conducted in an accurate manner and should be considered compliant under the Court's order.

Plaintiffs therefore propose that the City return to all of the addresses where it completed inspections that did not comply with Paragraph 16.b. of the 2023 Stipulation *and* determined that restoration was complete, and complete a compliant inspection. For those homes where the City completed a non-compliant visual inspection, but determined that further restoration work is needed, no further inspection is required. **Before or at the parties' next meeting, please provide the City's position on this proposal.**

### B.      Remaining scope of restoration work

Despite several requests for reporting, multiple notices of violation, and a motion concerning the City's failure to maintain proper restoration records, Plaintiffs remain in the dark as to what progress the City has made in filling its restoration recordkeeping gaps. The City's failure to provide compliant restoration reporting makes it impossible for Plaintiffs to understand the scope of remaining restoration work. Moreover, after months of purported records review and visual inspections, the City has not been able to provide an estimate of the remaining number of addresses where visual inspections are required to confirm restoration status.

Plaintiffs thus lack information about the City's implementation of the new requirements and its progress towards meeting the upcoming critical May 1, 2023 deadline to identify the remaining scope of restoration work. *See* ECF No. 258 at 16. Missing the May 2023 deadline would risk delaying completion of the restoration work beyond the end of 2023, when the WIIN funding expires. Further, that the City violated the new requirements as soon as they were entered—requirements agreed to after arms-length negotiations—indicates a lack of seriousness and diligence towards its obligations to Plaintiffs, the community, and the Court. **At the parties' next meeting, please describe the efforts the City is taking to ensure compliance with the May 1, 2023 deadline.**

## III.      Outstanding information requests

The City's responses to a number of Plaintiffs' information requests from the past several months are long overdue. As previously explained, the City's March 24 response to these information requests was incomplete. March 24, 2023 Em. fr. A. Rolnick to J. Kuptz. **Please respond to the following information requests as soon as possible:**

1.   Sample images of door hangers left at five addresses where the resident was not home at the time of the scheduled excavation and/or replacement. *See* ECF No. 258 at 14.

2.   Log of advance notice phone calls to residents concerning scheduled excavation work and indicating whether the caller spoke to the resident or left a voicemail. *See* ECF No. 258 at 13.

3.   Log of additional rescheduling outreach to residents.

4.   Log of requests from residents to reschedule excavations.

**In addition, please provide a copy of the doorhanger the City is leaving at homes when it completes a visual inspection and determines that it will not be performing future restoration work.** *See* ECF No. 258 at 25. Plaintiffs requested this over two weeks ago. *See* March 24, 2023 Em. fr. A. Rolnick to J. Kuptz.

\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiffs request a meet and confer with City officials, including the City Administrator and Mayor and appropriate officials from the Department of Public Works and ROWE, to discuss these matters. We are available at the following times (all EST):

Thursday, April 20: 9:00 am – 1:00 pm, 4:00 pm – 5:00pm
Friday, April 21: 9:00 am – 1:00 pm, 3:00 pm – 5:00 pm
Monday, April 24: 11:00 am – 1:00 pm, 2:00 pm – 4:00 pm

Sincerely,

Adeline S. Rolnick

cc (via email):   Sarah Tallman, stallman@nrdc.org; Melanie Calero, mcalero@nrdc.org, Bonsitu Kitaba, bkitaba@aclumich.org; Richard Kuhl, kuhlr@michigan.gov; Nate Gambill, gambilln@michigan.gov

# Exhibit 24

| From: | Rolnick, Addie |
|---|---|
| To: | Joseph Kuptz |
| Cc: | William Kim; Kuhl, Richard (AG); Calero, Melanie; Tallman, Sarah; Bonsitu Kitaba; Vandal, Nicole |
| Subject: | RE: Concerned Pastors, et al v City of Flint, et al re: Paper Restoration Records |
| Date: | Monday, May 15, 2023 11:12:59 AM |
| Attachments: | Restoration Addresses as of 6-24-21.xlsx |

Joe,

I am writing to follow up on our call on Friday concerning the City's continuing violations of the Agreement. Based on our conversation, we've summarized our understanding of the City's noncompliance below. **Please let us know if anything in the below summary is inaccurate. Please also provide the requested information in writing as soon as possible.**

**Outreach:** The City stated that it believes it has completed the remaining outreach required by the Agreement and is working with ROWE to prepare the missing outreach reporting. The City did not have an estimate of when it would provide this reporting. The City must provide this reporting as soon as possible to remedy the City's outreach violation. Please provide this reporting on a weekly rolling basis, starting this Friday, as the data is exported.

**Restoration:** In response to Plaintiffs' inquiries regarding the ~11,000 previously excavated addresses missing from the City's May 1 report, the City revealed for the first time that it believes the only records pertaining to restoration work at these addresses are physical records housed in file cabinets that predate the City's use of the CityWorks system. The City's counsel stated that they became aware of these records in the last two weeks—after the May 1 deadline—and that they do not know which specific addresses are encompassed by these records or exactly how many addresses these records cover. The City shared that these paper records fall into two categories. First, the City has copies of work orders that were prepared by a City employee for each address, identifying what kinds of restoration work needed to be completed there. Second, the City has copies of invoices for restoration work that were prepared by the restoration contractor one-to-two weeks after the work was completed.

Plaintiffs are evaluating the sample invoices Joe shared on Friday to determine whether these are contemporaneous records of restoration, as required by the Court's order. To aid Plaintiffs' evaluation, please share copies of work orders for at least five addresses listed on the invoices. In addition, Plaintiffs have some clarifying questions regarding these records:

1. **What do the various "work description" and "item identifier" codes mean?**

2. **What does %(J/G) mean? What do the percentages in this column mean?**

3. **What do the numbers in the "retainage 5%" column mean?**

4. **What do the numbers in the "scheduled value" and "this period" columns mean?**

5. **What does the "area" column refer to? Do the numbers in that column  refer to a geographic area of the city?**

The City stated that, excluding the possible need to conduct visual inspections at the approximately 11,000 addresses for which it has only paper work orders and invoices, it expects to be finished with all required visual inspections by Friday, May 19. **The City must provide compliant reporting on the**

**visual inspections it has conducted over the last month as soon as possible. Please provide this reporting on a weekly rolling basis, to provide assurances that the City is continuing to make progress towards remedying its violations.**

In addition, several addresses listed in the "Needs completion based on VI" tab of the May 1 report were previously reported as addresses where the City completed restoration in the data shared by the City on June 24, 2021 (attached). **Please confirm whether there are addresses listed on the City's June 2021 restoration list for which the City has since decided it does not have contemporaneous documentation of restoration. Please also confirm whether the City is planning to conduct visual inspections at all or some addresses listed on the June 2021 restoration list. If the City plans to conduct visual inspections for only some of these addresses, please provide the basis for determining which subset.**

In addition, the City's May 1 report does not include any addresses in category (a) on page 24 of the Court's Feb. 24 order, ECF No. 258 ("All previously excavated addresses where the City has contemporaneous documentation of completed restoration, including the date(s) of restoration."). **Please confirm whether there are any previously excavated addresses that fall into this category.** At a minimum, the City should be maintaining contemporaneous records of restoration it is conducting in 2022 and 2023, and those addresses should be reflected in the City's reporting.

Finally, as we mentioned on Friday, Plaintiffs have received inquiries from the community regarding the paint being used in renovations to Flint's water tower. Could you please confirm that the City is not using lead-based paint in its renovations? Thanks for your cooperation in running down this information.

Regards,

Addie

ADELINE ROLNICK
*Attorney*

NATURAL RESOURCES DEFENSE COUNCIL
1152 15TH STREET NW, SUITE 300
WASHINGTON, DC 20005
T 202.513.6240
AROLNICK@NRDC.ORG
PRONOUNS: SHE/HER
NRDC.ORG

---

**From:** Joseph Kuptz <jkuptz@cityofflint.com>
**Sent:** Friday, May 12, 2023 3:54 PM
**To:** Calero, Melanie <mcalero@nrdc.org>; Tallman, Sarah <stallman@nrdc.org>; Rolnick, Addie <ARolnick@nrdc.org>
**Cc:** William Kim <wkim@cityofflint.com>; Kuhl, Richard (AG) <kuhlr@michigan.gov>
**Subject:** Concerned Pastors, et al v City of Flint, et al re: Paper Restoration Records

Sarah/Addie/Melanie - to follow up on our conversation this afternoon, please see a

couple examples of the records that we talked about.

These were apparently submitted weekly - each invoice has a "week ending" entry. The application contains a list of addresses and what work was done at that address. There's a separate line item for each type of work - that's why some addresses appear two or three times.

For example, on the document "DOC287" on page 2, there are three entries for 2210 Arlington. The work done at that address during the week ending June 6, 2020 was 50 square feet of sidewalk, removal of 50 square feet of damaged concrete and 15 square feet of curb and gutter.

Please let me know if you have any questions.

We look forward to your thoughts.


Joe

--
Joseph N. Kuptz, Assistant City Attorney
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
(810) 237-2085

# Exhibit 25

PCA-147

**Department of
Public Works**

**22-007**

# CITY OF FLINT
# MICHIGAN



# CONTRACT

**Rowe Professional Services
Project Management Services
SLE-SLR and Restoration Projects
$2,900,000.00
Approved by City Council on 4/11/22
Resolution #220105**

PCA-148



# City of Flint

## Department of Finance
## Division of Purchases & Supplies

**Sheldon A. Neeley**
**Mayor**

**April 18, 2022**

**TO:**       Michael Brown, DPW Supervisor

**FROM:**    Lauren Rowley, Purchasing Manager

**SUBJECT:**    NOTICE TO PROCEED TO ENTER INTO A CONTRACT
Professional Services/Project Managements Services/SLE-SLR and Restoration Projects–
Resolution #220105

Please be advised that the Resolution for Rowe Engineering, has been approved by City Council on April 11, 2022 for Professional Services/Project Management Services/SLE-SLR And Restoration Projects.

You are now authorized with this notice to proceed to enter a contract with Rowe Engineering.  Please see attached Resolution #220105.

**If you have any questions, please feel free to give me a call or send an email.**

*Lauren Rowley*

Purchasing Manager

*220105*



| | |
|---|---|
| **RESOLUTION NO.:** | |
| **PRESENTED:** | 2/23/2022 |
| **ADOPTED:** | APR 1 1 2022 |

**STATE OF MICHIGAN DTMB**
**CONTRACT # 00829**
**BY THE CITY ADMINISTRATOR:**

### RESOLUTION TO ROWE PROFESSIONAL SERVICES FOR PROJECT MANAGEMENT SERVICES FOR SERVICE LINE REPLACEMENT AND RESTORATION

The Division of Purchases & Supplies has utilized the State of Michigan's indefinite-scope cooperative contract for Rowe Professional Services, 540 S. Saginaw St. Suite 200, Flint MI, 48502, for the next phase of service line replacement and restorations.

WHEREAS The Department of Public Works has utilized Rowe Professional Services as the program manager for the exploration/replacement (SLE/SLR) project(s) since May of 2019. Due to their experience with the ongoing project, their knowledge of working with EGLE, The State of Michigan, and CityWorks software used by the city, they would like to continue working with Rowe for the next phase of these projects.

WHEREAS, The City of Flint, Department of Public Works is requesting authorization to enter into a contract with Rowe Professional Services, for Project Management Services for SLE/SLR management, in an amount not-to-exceed $400,000.00, and restoration management services, in an amount not-to-exceed $2,500,000.00 for an overall total contract price of $2,900,000.00.

Funding for said services are budgeted and will come from the following account:

| Account Number | Account Name | Grant Code | Amount |
|---|---|---|---|
| 496-540.006-801.051 | Project Management Svcs | FEPA 18WIIN-1 | $2,900,000.00 |
| | | **GRAND TOTAL** | **$2,900,000.00** |

IT IS RESOLVED, That the Appropriate City Officials are to Enter into a Contract with Rowe Professional Services for Project Management Services for the SLE/SLR and restoration projects for an overall amount not-to-exceed $2,900,000.00.

**APPROVED AS TO FORM:**

*William Kim (Feb 18, 2022 11:43 EST)*

**William Kim, Acting City Attorney**

**APPROVED AS TO FINANCE:**

*Jennifer Ryan*
*Jennifer Ryan (Feb 18, 2022 11:42 EST)*

**Robert Widigan, Chief Financial Officer**

**FOR THE CITY OF FLINT:**

*CLYDE D EDWARDS*
*CLYDE D EDWARDS (Feb 21, 2022 11:17 EST)*

**Clyde Edwards, City Administrator**

**APPROVED AS TO PURCHASING:**

*Lauren Rowley*

**Lauren Rowley, Purchasing Manager**

**APPROVED BY CITY COUNCIL:**

APR 1 1 2022

## PROJECT MANAGEMENT SERVICES/SLE-SLR AND RESTORATION PROJECTS

This agreement (hereinafter "Agreement") by and between the City of Flint, a Michigan Municipal Corporation, 1101 S. Saginaw Street, Flint, MI 48502, (hereinafter the "City"), and Rowe Professional Services, hereinafter referred to as "Contractor."

1.    **Applicable Law**:    This Agreement and all related disputes shall be governed by and interpreted in accordance with the laws of the State of Michigan.

2.    **Arbitration**:   Contractor agrees that for all claims, disputes, and other matters arising out of or relating to this agreement, Contractor must request the City's consent to arbitrate within 30 days from the date the Contractor knows or should have known the facts giving rise to the claim, dispute or question.

    (a)    Notice of a request for arbitration must be submitted in writing by certified mail or personal service upon the Chief Legal Officer.

    (b)    Within 60 days from the date a request for arbitration is received by the City, the City shall inform Contractor whether it agrees to arbitrate.  If the City does not consent, Contractor may proceed with an action in a court of competent jurisdiction within the State of Michigan.  If the City does consent, then within 30 days of the consent each party shall submit to the other the name of one person to serve as an arbitrator.  The two arbitrators together shall then select a third person, the three together shall then serve as a panel in all proceedings.  Any unanimous decision of the three arbitrators shall be a final binding decision.  The City's failure to respond to a timely, conforming request for arbitration is deemed consent to arbitration.

    (c)    The costs of the arbitration shall be split and borne equally between the parties and such costs are not subject to shifting by the arbitrator.

    (d)    Contractor's failure to comply with any portion (including timeliness) of this provision shall be deemed a permanent waiver and forfeiture of the claim, dispute, or question.

    (e)    This provision shall survive the expiration or termination of this Agreement in perpetuity.

3.    **City Income Tax Withholding**: Contractor and any subcontractor engaged in this contract shall withhold from each payment to his employees the City income tax on all of their compensation subject to City tax, after giving effect to exemptions, as follows:

    (a)    <u>Residents of the City:</u> At a rate equal to 1% of all compensation paid to the employee who is a resident of the City of Flint.

    (b)    <u>Non-residents:</u> At a rate equal to ½ % of the compensation paid to the employee for work done or services performed in the City of Flint.

Project Management Services for SLR and Restoration

These taxes shall be held in trust and paid over to the City of Flint in accordance with City ordinances and State law. Any failure to do so shall constitute a material breach of this contract.

**4.** **Compensation**: The City shall pay for such services as have been set forth herein within 45 days of submission of properly detailed and itemized invoices, releases, affidavits, and the like. Notwithstanding, the contract price shall not to exceed $2,900,000.00. Contractor recognizes that the City does not guarantee it will require any set amount of services. Contractor's services will be utilized as needed and as determined solely by the City of Flint. Contractor expressly acknowledges that it, without limitation, has no right to payment of an amount exceeding the amount set forth in this Section. Contractor agrees that oral agreements by City officials to pay a greater amount are not binding.

(a) Contractor shall submit itemized invoices for all services provided under this Agreement identifying:

(i) The date of service

(ii) The purchase order number

(ii) The name of person providing the service and a general description of the service provided.

(iii) The unit rate and the total amount due.

(iv) Parts utilized for the service

Invoices shall be submitted to:

City of Flint
Accounts Payable
P.O. Box 246
Flint, MI 48501-0246 or accountspayable@cityofflint.com

It is solely within the discretion of the City as to whether Contractor has provided a proper invoice. The City may require additional information or waive requirements as it sees fit.

**5.** **Contract Documents**: The invitation for bids, instructions to bidders, proposal, affidavit, addenda (if any), statement of bidder's qualifications (when required), general conditions, special conditions, performance bond, labor and material payment bond, insurance certificates, technical specifications, and drawings, together with this agreement, form the contract, and they are as fully a part of the contract as if attached hereto or repeated herein.

**6.** **Disclaimer of Contractual Relationship With Subcontractors:** Nothing contained in the Contract Documents shall create any contractual relationship between the City and any Subcontractor or Sub-subcontractor.

**7.** **Effective Date:** This contract shall be effective upon the date that it is executed by all parties and presented to the City of Flint Clerk. This contract shall terminate on 12/31/23.

PCA-152

**8.    Certification, Licensing, Debarment, Suspension and Other Responsibilities:**
Contractor warrants and certifies that Contractor and/or any of its principals are properly certified
and licensed to perform the duties required by this contract in accord with laws, rules, and
regulations, and is not presently debarred, suspended, proposed for debarment or declared
ineligible for the award of any Federal contracts by any Federal agency.  Contractor may not
continue to or be compensated for any work performed during any time period where the
debarment, suspension or ineligibility described above exists or may arise in the course of
Contractor contractual relationship with the City.  Failure to comply with this section constitutes
a material breach of this Contract.  Should it be determined that contractor performed work under
this contract while in non-compliance with this provision, Contractor agrees to reimburse the City
for any costs that the City must repay to any and all entities.

**9.    Force Majeure:**  Neither party shall be responsible for damages or delays caused by Force
Majeure or other events beyond the control of the other party and which could not reasonably have
been anticipated or prevented.  For purposes of this Agreement, Force Majeure includes, but is not
limited to, adverse weather conditions, floods, epidemics, war, riot, strikes, lockouts, and other
industrial disturbances; unknown site conditions, accidents, sabotage, fire, and acts of God.
Should Force Majeure occur, the parties shall mutually agree on the terms and conditions upon
which the services may continue.

**10.    Good Standing**:  Contractor must remain current and not be in default of any obligations
due the City of Flint, including the payment of taxes, fines, penalties, licenses, or other monies due
the City of Flint or having any current or pending litigation against the City or be in violation of
the Clean Water Act, or any permitting by the City, or Sewer Use Ordinances or any other City
Ordinances, or any State or Federal regulatory agency, or be debarred by the City of Flint from
consideration for a contract award pursuant to Section 18-21.5 (d) of Article IV of the "Purchasing
Ordinance of the City of Flint".  Violations of this clause shall constitute a substantial and material
breach of this contract.  Such breach shall constitute good cause for the termination of this contract
should the City of Flint decide to terminate on such basis.

**11.    Indemnification**: To the fullest extent permitted by law, Contractor agrees to defend, pay
on behalf of, indemnify, and hold harmless the City of Flint, its elected and appointed officials,
employees and volunteers and other working on behalf of the City of Flint, against any and all
claims, demands, suits, or losses, including all costs connected therewith, and for any damages
which may be asserted, claimed, or recovered against or from the City of Flint, its elected and
appointed officials, employees, volunteers or others working on behalf of the City of Flint, by
reason of personal injury, including bodily injury or death and/or property damage, including loss
of use thereof, which may arise as a result of Contractor's acts, omissions, faults, and negligence,
or that of any of his employees, agents, and representatives in connection with the performance of
this contract.  Should the Contractor fail to indemnify the City in the above-mentioned
circumstances, the City may exercise its option to deduct the cost that it incurs from the contract
price forthwith or may file an action in a court of competent jurisdiction, the costs of which shall
be paid by Contractor.  This provision shall survive the termination and/or expiration of this
agreement, in perpetuity.

PCA-153

Project Management Services for SLR and Restoration

**12.     Independent Contractor**: No provision of this contract shall be construed as creating an employer-employee relationship.  It is hereby expressly understood and agreed that Contractor is an "independent contractor" as that phrase has been defined and interpreted by the courts of the State of Michigan and, as such, Contractor is not entitled to any benefits not otherwise specified herein.

**13.     Insurance/Worker's Compensation:** Contractor shall not commence work under this contract until he has procured and provided evidence of the insurance required under this section. All coverage shall be obtained from insurance companies licensed and authorized to do business in the State of Michigan unless otherwise approved by the City's Finance Department.  Policies shall be reviewed by the City's Finance Department for completeness and limits of coverage.  All coverage shall be with insurance carriers acceptable to the City of Flint. Contractor shall maintain the following insurance coverage for the duration of the contract.

    (a)     <u>Commercial General Liability</u> coverage of not less than one million dollars ($1,000,000) combined single limit with the City of Flint, and including all elected and appointed officials, all employees and volunteers, all boards, commissions and/or authorities and their board members, employees and volunteers, named as "Additional Insureds." This coverage shall be written on an ISO occurrence basis form and shall include: Bodily Injury, Personal Injury, Property Damage, Contractual Liability, Products and Completed Operations, Independent Contractors; Broad Form Commercial General Liability Endorsement, (XCU) Exclusions deleted and a per contract aggregate coverage.  This coverage shall be primary to the Additional Insureds, and not contributing with any other insurance or similar protection available to the Additional Insureds, whether said other available coverage be primary, contributing, or excess.

    (b)     <u>Workers Compensation Insurance</u> in accordance with Michigan statutory requirements, including Employers Liability coverage.

    (c)     <u>Professional Liability - Errors and Omissions</u>.  All projects involving the use of Architects, civil engineers, landscape design specialists, and other professional services must provide the City of Flint with evidence of Professional Liability coverage in an amount not less than one million dollars ($1,000,000).  Evidence of this coverage must be provided for a minimum of three years after project completion.  Any deductibles or self-insured retention must be declared to and approved by the City.  In addition, the total dollar value of all claims paid out on the policy shall be declared.  At the option of the City, either the insurer shall reduce or eliminate such deductibles or self-insured retention with respect to the City, its officials, employees, agents and volunteers; or Contractor shall procure a bond guaranteeing payment of losses and related investigation, claim, administration, and defense expenses.

Contractor shall furnish the City with two certificates of insurance for all coverage requested with original endorsements for those policies requiring the Additional Insureds. All certificates of insurance must provide the City of Flint with not less than 30 days

PCA-154

advance written notice in the event of cancellation, non-payment of premium, non-renewal, or any material change in policy coverage.  In addition, the wording "Endeavor to" and "but failure to mail such notice shall impose no obligation or liability of any kind upon the company, its agents or representatives" must be removed from the standard ACORD cancellation statement.   These certificates must identify the City of Flint, Finance Department, as the "Certificate Holder." Contractor must provide, upon request, certified copies of all insurance policies.  If any of the above polices are due to expire during the term of this contract, Contractor shall deliver renewal certificates and copies of the new policies to the City of Flint at least ten days prior to the expiration date.  Contractor shall ensure that all subcontractors utilized obtain and maintain all insurance coverage required by this provision.

**14.**  **Laws and Ordinances**: Contractor shall obey and abide by all of the laws, rules and regulations of the Federal Government, State of Michigan, Genesee County and the City of Flint, applicable to the performance of this agreement, including, but not limited to, labor laws, and laws regulating or applying to public improvements.

**15.**  **Modifications:**  Any modifications to this contract must be in writing and signed by the parties or the authorized employee, officer, board or council representative of the parties authorized to make such contractual modifications under State law and local ordinances.

**16.**  **No Third-Party Beneficiary:** No contractor, subcontractor, mechanic, materialman, laborer, vendor, or other person dealing with the principal Contractor shall be, nor shall any of them be deemed to be, third-party beneficiaries of this contract, but each such person shall be deemed to have agreed (a) that they shall look to the principal Contractor as their sole source of recovery if not paid, and (b) except as otherwise agreed to by the principal Contractor and any such person in writing, they may not enter any claim or bring any such action against the City under any circumstances.  Except as provided by law, or as otherwise agreed to in writing between the City and such person, each such person shall be deemed to have waived in writing all rights to seek redress from the City under any circumstances whatsoever.

**17.**  **Non-Assignability:** Contractor shall not assign or transfer any interest in this contract without the prior written consent of the City provided, however, that claims for money due or to become due to Contractor from the City under this contract may be assigned to a bank, trust company, or other financial institution without such approval.  Notice of any such assignment or transfer shall be furnished promptly to the City.

**18.**  **Non-Disclosure/Confidentiality:** Contractor agrees that Contractor will not disclose any such information provided to Contractor in furtherance of this Agreement, or in any other way make such documents public, without the express written approval of the City or the order of a court of competent jurisdiction.

**19.**  **Non-Discrimination**:  The Contractor shall comply with the Elliott Larsen Civil Rights Act, 1976 PA 453, as amended, MCL 37.2101 et seq., the Persons with Disabilities Civil Rights Act, 1976 PA 220, as amended, MCL 37.1101 et seq., and all other federal, state, and local fair employment practices and equal opportunity laws and covenants that it shall not discriminate

PCA-155

against any employee or applicant for employment, to be employed in the performance of this Agreement, with respect to his or her hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment, because of his or her race, religion, ethnicity, color, national origin, age, sex, sexual orientation, gender identity, height, weight, marital status, familial status, association with the federal government, or physical or mental disability that is unrelated to the individual's ability to perform the duties of a particular job or position or status with respect to public assistance. A breach of this covenant is a material breach of this Agreement.

20.     **Anti-Lobbying**: The Contractor shall not use any of the grant funds awarded in this Agreement for the purpose of lobbying as defined in the State of Michigan's lobbying statute, MCL 4.415(2). "'Lobbying' means communicating directly with an official of the executive branch of state government or an official in the legislative branch of state government for the purpose of influencing legislative or administrative action." The Contractor shall not use any of the grant funds awarded in this Agreement for the purpose of litigation against the State or City. Further, the Contractor agrees to require that language of this assurance be included in the award documents of all subawards.

21.     **Ethics:** Pursuant to the Flint City Charter §1-602 (I) entitled Notice, every public servant, volunteer and city, contractor is to receive training and be provided with a copy of these ethical standards upon passage of this Charter or at the time of appointment and or hire or the commencement of services (See Attached Flint City Charter §1-602 (I)). Therefore, Contractor acknowledges receipt of Flint City Charter §1-602 and agrees that Contractor and its staff shall abide by the terms and participate in any training provided by the City/or update orientation as may be necessary from time to time. Public servants are all persons employed or otherwise engaged by the corporation of the City of Flint to conduct business on its behalf including but not limited to elected officials, appointed employees, members of boards and commissions, classified employees, contractual employees, and volunteers, in accordance with Flint City Charter §1-602.

22.     **COVID-19 Policies and Training:** Contractor acknowledges that the Country is in the middle of a COVID-19 pandemic and agrees that Contractor, its staff and its subcontractors will comply with Federal, State of Michigan Executive Orders, Michigan Department of Health and Human Services Epidemic Orders, Local guidance, CDC, OSHA, MIOSHA and other regulatory guidelines to mitigate risk and exposure to COVID-19. Contractor also agrees that Contractor, its staff and subcontractors if any, shall abide by City of Flint COVID-19 policies and procedures currently in existence, modified or that may be created, including but not limited daily temperature checks, social distancing, mitigation and disinfected measures and agree to participate in any trainings as required by the City of Flint. Contractor, its staff and its subcontractors agree that failure to comply with this provision shall constitute a substantial and material breach of this contract. Such a breach shall constitute good cause for the termination of this contract should the City of Flint decide to terminate on such basis.

23.     **Notices**: Notices to the City of Flint shall be deemed sufficient if in writing and mailed, postage prepaid, addressed to **Michael J. Brown** and **Inez Brown, City Clerk, City of Flint, 1101 S. Saginaw Street, Flint, Michigan 48502**, or to such other address as may be designated in

writing by the City from time to time.  Notices to Contractor shall be deemed sufficient if in writing and mailed, postage prepaid, addressed to <u>Rowe Professional Services Company, 540 S. Saginaw St., Suite 200, Flint, Michigan 48502</u>, or to such other address as may be designated in writing by Contractor from time to time.

**24.    Records Property of City:** All documents, information, reports and the like prepared or generated by Contractor as a result of this contract shall become the sole property of the City of Flint and shall be provided to the City on request.

**25.    Scope of Services**:  Contractor shall provide all of the materials, labor, equipment, supplies, machinery, tools, superintendence, insurance and other accessories and services necessary to complete the project in accordance with the Proposal dated February 1, 2022 (see attached proposal).  Contractor shall perform the work in accordance with the Standard General Conditions and any Special Conditions provided for in this contract and warrants to the City that all materials and equipment furnished under this contract will be new unless otherwise specified, and that all work will be of good quality, free from faults and defects and in conformance with the contract documents.  All work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective.  In addition to any other remedies the City may have, if, within one year of the date of substantial completion of work, or within one year after acceptance by the City, or within such longer period of time as may be prescribed by law, any of the work is found to be defective or not in accord with the contract documents, Contractor shall correct promptly after receipt of a written notice from the City to do so, unless the City has previously given Contractor a written acceptance of such condition.

All work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective.  In addition to any other remedies the City may have, if, within one year of the date of substantial completion of work, or within one year after acceptance by the City, or within such longer period of time as may be prescribed by law, any of the work is found to be defective or not in accord with the contract documents, Contractor shall correct promptly after receipt of a written notice from the City to do so, unless the City has previously given Contractor a written acceptance of such condition.

**26.    Severability**:  In the event that any provision contained herein shall be determined by a court or administrative tribunal to be contrary to a provision of state or federal law or to be unenforceable for any reason, then, to the extent necessary and possible to render the remainder of this Agreement enforceable, such provision may be modified or severed by such court or administrative tribunal so as to, as nearly as possible, carry out the intention of the parties hereto, considering the purpose of the entire Agreement in relation to such provision.  The invalidation of one or more terms of this contract shall not affect the validity of the remaining terms.

**27.    Standards of Performance**: Contractor agrees to exercise independent judgment and to perform its duties under this contract in accordance with sound professional practices.  The City is relying upon the professional reputation, experience, certification, and ability of Contractor. Contractor agrees that all of the obligations required by him under this Contract shall be performed by him or by others employed by him and working under his direction and control.  The continued

PCA-157

effectiveness of this contract during its term or any renewal term shall be contingent upon Contractor maintaining any certifications in accordance with any applicable legal requirements.

**28.    Subcontracting**:  No subcontract work, if permitted by the City, shall be started prior to the written approval of the subcontractor by the City.  The City reserves the right to accept or reject any subcontractor.

**29.    Termination**:  This contract may be terminated by either party hereto by submitting a notice of termination to the other party.  The City, through its City Administrator, may terminate this agreement upon actual notice to Contractor.  Contractor may terminate this agreement by providing written notice that shall be effective 30 days from the date it is submitted unless otherwise agreed to by the parties hereto.  Contractor, upon receiving such notice and prorated payment upon termination of this contract shall give to the City all pertinent records, data, and information created up to the date of termination to which the City, under the terms of this contract, is entitled.

**30.    Time of Performance**: Contractor's services shall commence immediately upon receipt of the notice to proceed and shall be carried out forthwith and without reasonable delay.

**31.    Union Compliance:** Contractor agrees to comply with all regulations and requirements of any national or local union(s) that may have jurisdiction over any of the materials, facilities, services, or personnel to be furnished by the City.  However, this provision does not apply if its application would violate Public Act 98 of 2011.

**32.    Waiver:** Failure of the City to insist upon strict compliance with any of the terms, covenants, or conditions of this Agreement shall not be deemed a waiver of any term, covenant, or condition.  Any waiver or relinquishment of any right or power hereunder at any one or more times shall not be deemed a waiver or relinquishment of that right or power at any other time.

**33.    Whole Agreement**: This Agreement and the documents cited herein embody the entire agreement between the parties.  Any additions, deletions or modifications hereto must be in writing and signed by both parties.  This Agreement may be executed by facsimile and in counterparts, all of which, taken together, shall constitute a single agreement.

<SIGNATURES ON NEXT PAGE>

PCA-158

Project Management Services for SLR and Restoration

**CONTRACTOR:**                                          **WITNESS(ES):**

*Leanne H. Panduren*                    04/27/2022          _____
Leanne H. Panduren Apr 27, 2022 11:41 EDT
**Rowe Professional Services**          **Date**

**Its** CEO/President  _____


**CITY OF FLINT, a Michigan Municipal Corp.:**

_____          4/22/22
Sheldon A. Neeley, Mayor              **Date**

_____          4/21/22
Clyde Edwards, City Administrator     **Date**


**APPROVED AS TO FORM:**

_____          4.19.22
William Kim, Chief Legal Officer      **Date**

PCA-159

# ACORD CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
12/8/2021

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: certs@pciaonline.com | |
|---|---|---|
| Professional Concepts Insurance Agency, Inc.<br>1127 South Old US Highway 23<br><br>Brighton          MI   48114-9861 | PHONE (A/C, No, Ext): (800) 969-4041 | FAX (A/C, No): (800) 969-4081 |
| | E-MAIL ADDRESS: certs@pciaonline.com | |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED<br>Rowe Professional Services, Co<br>540 S Saginaw St<br>Ste 200<br>Flint          MI   48502-1858 | INSURER A: The Phoenix Insurance Co | 25623 |
| | INSURER B: Travelers Indem. Co of America | 25666 |
| | INSURER C: Travelers Prop Casualty of Ame | 25674 |
| | INSURER D: Travelers Casualty and Surety | 19038 |
| | INSURER E: XL Specialty Ins. Co. | 37885 |
| | INSURER F: | |

## COVERAGES     CERTIFICATE NUMBER: 22-23 ALL     REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE X OCCUR<br>X X,C,U<br>X contractual Liability<br>GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY ☒ PRO-JECT ☐ LOC<br>☐ OTHER: | X | | 6805H9600862247 | 1-1-2022 | 1-1-2023 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 1,000,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| B | AUTOMOBILE LIABILITY<br>X ANY AUTO<br>X ALL OWNED AUTOS ☐ SCHEDULED AUTOS<br>X HIRED AUTOS X NON-OWNED AUTOS | | X | BA3R44572A2247 | 1-1-2022 | 1-1-2023 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| C | X UMBRELLA LIAB X OCCUR<br>EXCESS LIAB ☐ CLAIMS-MADE<br>☐ DED X RETENTION $ 10,000 | | | CUP5C4944252247 | 1-1-2022 | 1-1-2023 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | AGGREGATE | $ 5,000,000 |
| D | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY       Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☒ N<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | UB6N7328752247 | 1-1-2022 | 1-1-2023 | X PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| E | Professional Liability | | | DPR9986957 | 1-1-2022 | 1-1-2023 | Per Claim | $ 1,000,000 |
| | | | | | | | aggregate | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
City of Flint and including all elected and appointed officials, all employees and volunteers, all boards, commissions and/or authorities and their board members, employees and volunteers are considered additional insured's with respects to general and auto liability coverage as long as required within a written contract. Coverage is considered primary and non-contributory on the general liability coverage.

Effective Date: This contract shall be effective upon the date that it is executed by all parties. The contract will be placed on file with the City of Flint Clerk.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| City of Flint<br>1101 S. Saginaw Street<br>Flint, MI  48502 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>Mike Cosgrove/SUNNY     *Michael Cosgrove* |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)     The ACORD name and logo are registered marks of ACORD
INS025 (201401)

PCA-160



February 1, 2022

Mr. Clyde Edwards
City of Flint
1101 S. Saginaw Street
Flint, MI  48502

RE:   2022 Service Line Exploration/Replacement and Restoration
      Professional Services Proposal

Dear Mr. Edwards:

ROWE Professional Services Company is pleased to submit this proposal to continue to assist the City of Flint with your lead service line replacement project.  As you are aware, ROWE has been assisting the city as your program manager for the Service Line Exploration/Service Line Replacement (SLE/SLR) project since May 2019.  Throughout that timeframe, we have worked with city departments, the Michigan Department of Environment, Great Lakes, and Energy (EGLE), State of Michigan, and other stakeholders to research what residential properties have not been explored/replaced and document that data into the Cityworks system.  Not all residential properties have had service lines explored or replaced for a variety of reasons, thus the reason for our proposal to continue to assist the city as program managers.

In addition to the SLE/SLR program, there is the restoration of roads, walkways, drives, lawns, etc., that needs to be completed once the SLE/SLR is complete at each property.  To date, the city has been managing the restoration work but, due to manpower constraints, ROWE has been requested to be the program management for this component and assist the city.  The work involved with the program management of the restoration is very similar to the SLE/SLR where data will be gathered and uploaded into the Cityworks software which ROWE is very familiar with.

We offer the following scope of services for the SLE/SLR program management:

**SLE/SLR Services**

- **Project Scope** – For purposes of developing our scope and budget, it is anticipated that there are up to 1,000 properties remaining that need have a SLE/SLR completed.

- **Prepare SLE/SLR Construction Bid Packages** – In coordination with the city, ROWE will prepare construction bid packages that include sufficient information for the contractors to understand and price the project work for the remaining residential properties.  The bid package will be similar to the one the city produced in 2019 with minor changes that will be recommended based on our experience with this program over the past 2+ years.

Flint, MI (HQ): 540 S. Saginaw Street, Suite 200, 48502 | Phone: (810) 341-7500

Flint, MI (HQ) | Lapeer, MI | Farmington Hills, MI | Kentwood MI | Mt Pleasant, MI | Grayling MI | Myrtle Beach, SC | www.rowepsc.com

PCA-161

Mr. Clyde Edwards
February 1, 2022
Page 2

- **Advertise and Receive Bids** – The city will advertise the project bid packet, conduct the pre-bid conference, and issue addenda required for the project.  We will administer a pre-bid meeting with prospective contractors to explain the status of the SLE/SLR program, what is expected of the selected contractor(s), and overall schedule.

- **List of Remaining Homes** – ROWE will review the existing data that has been used in our previous contract to compile addresses of remaining homes.  We will maintain records of these in the Cityworks software.

- **Contact Homeowners/Residents** – The contractor(s) will be responsible for contacting the property owners to obtain permission to perform work on private property.  These permissions will be sent to ROWE to vet out and then develop a work order within the Cityworks software, if necessary.

- **Construction Coordination** – ROWE will coordinate weekly progress meeting to discuss items such as progress/schedule, issues with the contractor(s) and other stakeholders.

- **Construction Observation** – ROWE will provide one on-site inspector for each of the contractors' sites during all construction activities (excavations, service line material inspections, and LSL replacements).

- **Pay Applications/Change Orders** – By utilizing the data entered into Cityworks software, ROWE will work with the contractor(s) to develop monthly pay applications for approval by the city.  If funding from outside the city is being utilized, we will verify that the documentation for each pay application and/or change order meets the funding requirements.

- **Reporting** – ROWE will prepare the required reporting for work completed.  We anticipate that the reports will be similar to those prepared under our previous contract which includes weekly, monthly, and quarterly reports.  We will work with the city departments early in the program to determine the frequency of such reports.

The following is our proposed scope of work for the Restoration Services program management.

**Restoration Services**

- **Project Scope** – For purposes of developing our scope and budget, it is anticipated that there are up to 8,500 properties remaining that need restoration completed.  The restoration for each property may vary from work in the street, sidewalk repair, drive repair, lawn restoration, and fence replacement.

- **Identifying List of Homes** – ROWE will review the existing data that can be provided by the city to develop an initial list of homes that need some form of restoration completed.  Once we have compiled that data, we will perform a drive-by site visit to confirm that that the field conditions support the need for work to be performed.  The observation from the field will be documented in Cityworks to assist with the development of the work orders.  Since many of these homes have had SLE/SLR work completed for several years, the homeowner may have already taken care of the restoration, therefore there will be no work order generated for that address.

- **Prepare Service Restoration Construction Bid Packages** – In coordination with the city, ROWE will prepare construction bid packages that include sufficient information for the contractors to understand and price the project work.  The bid package will be similar to the one the city produced in 2019 with recommended changes based on our understanding of how

Mr. Clyde Edwards
February 1, 2022
Page 3

restoration work was performed.  The quantities identified in the bid documents will be based on our review of the data plus our field visit.

- **Advertise and Receive Bids** – The city will advertise the project bid packet, conduct the pre-bid conference, and issue addenda required for the project.  We will administer a pre-bid meeting with prospective contractors to explain the status of the restoration program, what is expected of the selected contractor(s) and overall schedule

- **Contact Homeowners/Residents** – The contractor(s) will be responsible for contacting the property owners to confirm the restoration work completed and when the work will be completed.  Documentation of this meeting will need to be sent to ROWE to vet out and then develop a work order within the Cityworks software, if necessary.

- **Construction Coordination** – ROWE will coordinate weekly progress meeting to discuss items such as progress/schedule, issues with the contractor(s) and other stakeholders.

- **Construction Observation** – ROWE will provide an on-site inspector(s) to observe the restoration work being performed by the contractor(s).  We will keep the City Transportation department informed of locations and schedules when work will be performed in paved roadways so the city will have the opportunity to be on site to observe the work.

- **Pay Applications/Change Orders** – By utilizing the data entered into Cityworks software, ROWE will work with the contractor(s) to develop monthly pay applications for approval by the city.  If funding from outside the city is being utilized, we will verify that the documentation for each pay application and/or changes order meets the funding requirements.

- **Reporting** – ROWE will prepare the required reporting for work completed.  We will work with the city departments early in the program to determine what reports are required and the frequency of such reports.

## SCHEDULE

Based on our recent discussions, we understand the city is interested in getting this project bid out and award the contracts by late winter so work can begin as soon as the weather permits in the spring.  The following is our proposed schedule for our services:

| | |
|---|---|
| Proposal submitted to City for review | January 28th |
| City Council Award of ROWE Contract | February 9th |
| Project Kick Off with ROWE/City | February 10th or 11th |
| ROWE to analyze available data for Restoration | February 14th – 25th |
| ROWE to perform field site visit | February 21st – March 4th |
| Bid Package Complete For SLE/SLR | March 4th |
| Bid Package Complete for Restoration | March 18th |
| Advertisement of Both Bid Packages | Mid/Late March |
| Pre-Bid Meetings | Early April |
| Bid Opening of Both Bid Packages | April |
| Award of Contract(s) | Late April |
| Construction to Begin | May |
| Construction Complete | TBD |

## COMPENSATION

ROWE acknowledges that we will conform to the contractual agreement with our MIDEAL/ MDTMB State of Michigan Cooperative agreement submitted on January 17, 2019.  We note that

Mr. Clyde Edwards
February 1, 2022
Page 4

we are in our fourth year of our contract and our rates will be adjusted in our next MDTMB ISID submittal anticipated for the end of 2022 or early 2023.

Compensation for our serviced will be billed on our hourly rate schedule. The work for the SLE/SLR is more defined since ROWE has been involved with this program for almost 3 years. The work associated with the restoration is less defined and will require more up-front time analyzing the data available and then performing field work. Our proposed fees are noted below:

| Task | Budget |
| --- | --- |
| SLE/SLR Program Management | $400,000 |
| Restoration Program Management | $2,500,000 |
| Total Budget | $2,900,000 |

We appreciate the opportunity to continue to provide the City of Flint professional engineering services. With our corporate headquarters located in the downtown area, we are committed to assisting the city with your infrastructure improvements.

If you agree with our proposal, please prepare an engineering services contract for our review and execution. You can contact either Rick Freeman or Jeff Markstrom to discuss our proposal in more detail at (810) 341-7500.

Sincerely,
ROWE Professional Services Company

Jeffrey Markstrom, PE

Jeffrey B. Markstrom, PE
Design Services Division Manager

Rick Freeman, PE

Rick A. Freeman, PE
Principal/Director of Engineering

R:\Projects\PROPOSAL\ENGINEER\City of Flint\2022 SLE Restoration\SLE-SLR and Restoration Proposal.docx

# Exhibit 26

| | |
|---|---|
| From: | Rolnick, Addie |
| To: | Joseph Kuptz; William Kim; Tammy Phaneuf; Jeff Markstrom |
| Cc: | Tallman, Sarah; Calero, Melanie; Vandal, Nicole; Bonsitu Kitaba; Kuhl, Richard (AG); Gambill, Nathan (AG) |
| Subject: | Concerned Pastors v. Khouri |
| Date: | Wednesday, March 22, 2023 5:53:01 PM |
| Attachments: | 258. Order Granting 5th MTE.pdf<br>256. Stip re 5th Mot Enforce.pdf |

Joe,

I am writing to follow up on our meeting last Friday concerning the City's noncompliance with its obligations under the Agreement. Based on that conversation, we've summarized our understanding of the status of the City's compliance below. <u>Please let us know if anything in the below summary is inaccurate.</u>

To facilitate a shared understanding of the City's obligations among all involved parties, Plaintiffs have included the ROWE representatives who joined Friday's meeting on this correspondence and have attached the 2023 Stipulation and the Court's February 2023 order specifying the most recently imposed City's excavation, replacement, and restoration obligations. As Plaintiffs reiterated during the parties' meeting, the City must cure its violations as soon as possible to ensure that it will meet its upcoming deadlines under the Agreement, including by promptly completing all required outreach at homes on the 2022 Replacement Eligible Homes List and providing fully compliant restoration reporting in its next monthly status report.

Regards,

Addie

I. **Service Line Replacement and Restoration Plans**
   A. As Plaintiffs explained in our March 3, 2023 email, the Plans the City provided on March 1, 2023 violate the Court's February 2023 Order: they do not explain how the City will complete the remaining service line replacement and restoration work "as quickly as practicable," ECF No. 258 at 18-19, and are missing a number of specific elements required by the Court's order. *See* March 3, 2023 Em. fr. A. Rolnick to J. Kuptz. Plaintiffs understand that the City will be working with ROWE to revise the SLR and Restoration Plans and will circulate revised plans this week. <u>Please provide compliant Plans as soon as possible.</u>

II. **Excavations/Replacements**
   A. **Outreach:** During Friday's meeting, the City was unable to confirm whether it had completed required outreach at all homes on the 2022 Replacement Eligible Homes List. ROWE's representatives also stated that the City may not have been instructing Lakeshore to complete required outreach at the homes on the 2022 Replacement Eligible Homes List that do not currently have active water accounts. As Plaintiffs explained in our March 10, 2023 letter, the City must complete the required outreach to these homes, unless the City confirms they are abandoned. <u>Please confirm in writing whether or not the City has completed the required consent outreach to all homes on the 2022 Replacement Eligible Homes List—including both the required mailing and in-person consent attempts—as soon as possible, and provide documentation of any outreach not included in the City's monthly reports. To the extent the City has not completed this outreach, the City must complete this outreach as soon as practicable in order to cure its violation of the Court's February 2023 Order.</u>
   B. **Distinguishing between consent attempts and scheduling attempts:** The City and ROWE stated that the CityWorks system now contains fields that differentiate between consent and scheduling attempts. Plaintiffs understand that the City will work with ROWE to provide retroactive reporting that includes compliant labeling for addresses where excavation work has not been completed because the resident did not respond to the City's scheduling attempts. <u>Please provide this reporting as soon as possible.</u>

III. **Restoration**
   A. **Restoration reporting:** At the parties' meeting, the City represented that it would provide restoration reporting in its next status report. The City admitted that it failed to ensure that it could export restoration data from CityWorks into Excel format until this month, despite the fact that it agreed months ago to provide reporting in this format.

During Friday's meeting, ROWE representatives also posed clarifying questions to Plaintiffs regarding the required reporting and appeared to lack a complete understanding of the restoration reporting obligations delineated in the Court's February 2023 order. Plaintiffs are concerned about the apparent lack of communication between the City and its contractors regarding the City's reporting obligations. <u>Please provide the missing restoration reporting (described on pages 24-25 of the Court's order, ECF No. 258), in Excel format, no later than March 28.</u>

B. **Visual inspections:** At the parties' meeting, ROWE represented that around 2,000 visual inspections were completed in fall 2022, none of which complied with the terms of the 2023 Stipulation. ROWE stated that it maintained some records concerning these inspections, but did not record the dates of these inspections. ROWE also stated that no inspections have taken place in 2023 due to snow cover, which contradicted the City's prior statement that Stipulation-compliant visual inspections were ongoing earlier this year. ROWE represented that visual inspections compliant with the Court's February 2023 order would begin this week, and that it is considering increased staffing to meet the May 1 deadline. However, the City and ROWE could not provide an estimated remaining number of addresses where visual inspections are required to confirm restoration status. As Plaintiffs stated at the meeting, to the extent the City completed visual inspections before it implemented the terms of the 2023 Stipulation, those inspections do not comply with the City's restoration obligations under the Agreement.  <u>For those addresses where a visual inspection was completed before the Court's February 2023 order and the City determined it would not perform future restoration, please share, in writing, the City's proposed process for confirming that those inspections objectively and accurately determined that those addresses no longer required restoration, including the criteria considered in coming to that determination.</u>

C. **Notice requirement:** The City and ROWE confirmed that ROWE would begin printing and distributing the notice door hangers required by the Court's February 2023 order, ECF No. 258 at 25-26, this week. The City stated that it was open to Plaintiffs' proposal of an alternative means of providing notice to homes where the City completed visual inspections before the Court's order and determined the City would not perform future restoration, in lieu of returning to those homes to leave a doorhanger. <u>Plaintiffs will confer with their clients and propose next steps regarding this proposed alternative notice.</u>

D. **Aerial imagery:** The City stated that it has decided to proceed exclusively with in-person visual inspections of previously excavated addresses and is no longer considering inspections using aerial imagery. Although the City has decided not to use aerial imagery for its visual inspections, Plaintiffs are exploring whether the use of aerial imagery could still be valuable, particularly in relation to the visual inspections completed before the Court's February 2023 order. The City has previously stated that, in addition to images accessible through the Genesee County GIS viewer, it may have access to other, non-public aerial images or image-viewing functionality. <u>Please let us know whether the City can provide Plaintiffs with access to the full database of aerial images, including non-public images and/or software tools associated with the images. Please also let us know whether any software programs would be required to access the additional non-public images.</u>

E. **Settling period:** The City stated that Lakeshore is not applying a specific settling period to current restoration work because it is able to do compaction testing to confirm whether addresses are immediately ready for soft-surface restoration. The City explained that, in the past, its restoration contractor applied a settling period because a different contractor was doing the excavation work and similar compaction testing was not being completed.

ADELINE ROLNICK
**Attorney**

NATURAL RESOURCES DEFENSE COUNCIL
1152 15TH STREET NW, SUITE 300
WASHINGTON, DC 20005

T 202.513.6240
AROLNICK@NRDC.ORG
PRONOUNS: SHE/HER
NRDC.ORG

# Exhibit 27

PCA-170

| From: | Joseph Kuptz |
|---|---|
| To: | Rolnick, Addie |
| Cc: | William Kim; Tallman, Sarah; Calero, Melanie; Vandal, Nicole; Bonsitu Kitaba; Kuhl, Richard (AG); Gambill, Nathan (AG); Clyde Ed_ards |
| Subject: | Re: Concerned Pastors for Social Action v. Khouri |
| Date: | riday, April 28, 2023 8:06:1  PM |
| Attachments: | _820 Winthrop_ oor_ anger 030223. peg |
| | _301 Warrington_ oor_ anger 022123 NC. peg |
| | 2022 10 1_ Outreach attempts updated. ls_ |
| | _oor_ anger.pdf |
| | 2023 0_ 23 Remaining outreach. ls_ |
| | 2022 12 1_ Outreach Attempts_ pdated. ls_ |
| | 3021 Wyoming_ oor_ anger 032023. peg |
| | _GC_ Call_ og 2023 0_ 21_ EP.pdf |
| | 2_13 Bro_ nell_ oor_ anger 032023. peg |
| | 28_1 Brandon_ oor_ anger 032_ 23. peg |

Addie - in response to your email of April 25th:

- the attached spreadsheet "2023-04-23 Remaining Outreach.xlsx" represents, as of 04/16/2023, all work orders that were in LGC's inbox in City Works that still needed some sort of outreach. 673 of the addresses are from the list that we discussed on the call and were mistakenly excluded because at one point they did not have active water accounts;
- "2022-10-24 Outreach attempts-updated.xlsx" - this is the outreach spreadsheet that was previously sent as part of the 10/2022 monthly reporting. Those addresses highlighted in green (70 of 423) do not have a weekend visit. Those 70 addresses will be added as outreach work orders for LGC;
- "2022-12-14 Outreach attempts-updated.xlsx" - this si the outreach spreadsheet that was previously sent as part of the 12/2022 monthly reporting. 47 have since been completed and 5 were declinations. A number of these have since been updated in City Works. Those highlighted in green (28 of 104) still require outreach. Those 28 addresses will be added as outreach work orders for LGC;
- sample images of door hangers left at five addresses where the resident was not home at the time of the scheduled SLE/SLR;
- call log of advance notice phone calls, log of add'l rescheduling outreach and log of requests from residents to reschedule; and
- copy of "restoration complete" door hanger.

In addition, per your request, as of the end of the previous reporting week, there were eight crews conducting outreach activity. This was double the number of crews (4) performing outreach the prior week. As you will note from the 04/26 weekly report, this enhanced outreach effort resulted in 237 first and second attempts and 445 final attempts at outreach. Mostly all of the addresses on the 2023-04-23 Remaining Outreach.xlsx spreadsheet have been completed.

Thank-you.


Joe


On Tue, Apr 25, 2023 at 5:09 PM Rolnick, Addie <ARolnick@nrdc.org> wrote:

Joe,


I am writing to follow up on our meeting yesterday concerning the City's continuing violations of the Agreement. Based on our conversation, we've summarized our

understanding of the City's compliance below. Please let us know if anything in the below summary is inaccurate. <u>Please also provide the requested information in writing as soon as possible, and by no later than this Friday, April 28.</u>

### I.       Outreach

The City confirmed that it did not complete outreach to all homes on the 2022 Replacement Eligible Homes List by March 1, as required by the Court's February order. *See* ECF No. 258 at 19. The City and Rowe's representatives also stated that the City and Rowe incorrectly instructed Lakeshore *not* to complete outreach at certain homes on the 2022 Replacement Eligible Homes List (those without current active water accounts.) Because of this, the City has determined that it has remaining outreach obligations to 674 homes. The City and Rowe shared that they have not given Lakeshore a deadline to finish outreach at these homes and were unable to provide an estimate of when this outreach would be completed. The City was also unable to answer questions about the specific resources it is putting towards completing this overdue outreach work. <u>Please confirm in writing how many crews are currently performing outreach and whether the number of crews has changed since the City missed the March 1 outreach deadline.</u>

The City also agreed to provide the following information to Plaintiffs regarding the City's outreach efforts:

1.  An Excel spreadsheet listing the 674 homes where the City is instructing Lakeshore to complete outreach.
2.  An Excel spreadsheet listing any homes on the 2022 Replacement Eligible Homes List where the City is not instructing Lakeshore to complete outreach because the City has information that the home is either demolished or is on a list of homes that are going to be demolished.
3.  An Excel spreadsheet listing the homes where the resident submitted a consent form, but the City has not yet scheduled an excavation because the resident does not have a current active water account.

### II.       Restoration

The City confirmed that it is "unlikely" to meet its May 1 deadline to identify the remaining scope of restoration work. *See* ECF No. 258 at 16. While the City and Rowe's representatives shared that the City has completed close to 6,000 visual inspections (2,000 of which were performed last fall and did not comply with the terms of the Court's February order), they also shared that the City does not yet know the total number of homes that will require visual inspections to confirm their restoration status because the City lacks a contemporaneous record of restoration. Rowe's representative stated that there may be as many as 16,000 total homes requiring a visual inspection.

The City also shared that it intends to share reporting on its visual inspections to date in the monthly report due this Friday, April 28, and that this reporting will be in the format required by the Court's order. *See* ECF No. 258 at 24-25.

### III.   Outstanding Information Requests

As explained in Plaintiffs' April 12 letter (attached), the City's responses to a number of Plaintiffs' information requests are weeks overdue. Please respond to the information requests listed on pages 4-5 of Plaintiffs' letter as soon as possible.

Regards,

Addie

ADELINE ROLNICK

**Attorney**

NATURAL RESOURCES DEFENSE COUNCIL

1152 15TH STREET NW, SUITE 300

WASHINGTON, DC 20005

T 202.513.6240
AROLNICK@NRDC.ORG
PRONOUNS: SHE/HER

NRDC.ORG

**From:** Rolnick, Addie
**ent:** Wednesday, April 12, 2023 4:55 PM

**To:** Joseph Kuptz <jkuptz@cityofflint.com>; William Kim <wkim@cityofflint.com>;
Clyde Edwards <cedwards@cityofflint.com>
**Cc:** Tallman, Sarah <stallman@nrdc.org>; Calero, Melanie <mcalero@nrdc.org>; Vandal,
Nicole <nvandal@nrdc.org>; Bonsitu Kitaba <bkitaba@aclumich.org>; Kuhl, Richard (AG)
<KuhlR@michigan.gov>; Gambill, Nathan (AG) <GambillN@michigan.gov>
  **ub ect:** Concerned Pastors for Social Action v. Khouri

Joe, Bill, and Clyde,

Please see the attached letter. Plaintiffs are available to discuss these issues at the following
times (all EST):

Thursday, April 20: 9:00 am – 1:00 pm, 4:00 pm – 5:00pm

Friday, April 21: 9:00 am – 1:00 pm, 3:00 pm – 5:00 pm

Monday, April 24: 11:00 am – 1:00 pm, 2:00 pm – 4:00 pm

Regards,

Addie

ADELINE ROLNICK

**Attorney**

NATURAL RESOURCES DEFENSE COUNCIL

1152 15TH STREET NW, SUITE 300

WASHINGTON, DC 20005

T 202.513.6240
AROLNICK@NRDC.ORG
PRONOUNS: SHE/HER

NRDC.ORG

--
Joseph N. Kuptz, Assistant City Attorney
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
(810) 237-2085

# Exhibit 28

# City of Flint

## Fiscal Year 2021–2022



## ADOPTED BUDGET

Adopted by City Council on June 14, 2021

PCA-177

**City of Flint**
**FY2022 Adopted Budget**

FY2021-22
Adopted
Budget

**WATER FUND**

| | |
|---|---:|
| User Charges | 30,163,000 |
| Interest Income | 98,110 |
| **TOTAL REVENUES FOR WATER FUND** | **30,261,110** |

**Appropriations by Department**

UTILITIES - WATER ADMINISTRATION

| | |
|---|---:|
| Wages & Fringes | 252,790 |
| Supplies & Operating Expenses | 4,919,851 |
| Capital Outlay | 3,795,000 |
| Debt Service | 6,649,200 |
| TOTAL APPROPRIATIONS FOR DEPT 536.100 | 15,616,841 |

UTILITIES - WATER CROSS CONNECTION PROG

| | |
|---|---:|
| Wages & Fringes | 131,999 |
| Supplies & Operating Expenses | 1,500 |
| TOTAL APPROPRIATIONS FOR DEPT 536.206 | 133,499 |

WATER SERVICE CENTER MANAGEMENT

| | |
|---|---:|
| Wages & Fringes | 340,176 |
| Supplies & Operating Expenses | 900,560 |
| TOTAL APPROPRIATIONS FOR DEPT 540.100 | 1,240,736 |

WSC-METER READING - WATER

| | |
|---|---:|
| Wages & Fringes | 569,902 |
| Supplies & Operating Expenses | 90,000 |
| TOTAL APPROPRIATIONS FOR DEPT 540.200 | 659,902 |

WSC-WATER DISTRIBURION MAINS

| | |
|---|---:|
| Wages & Fringes | 3,579,940 |
| Supplies & Operating Expenses | 756,500 |
| Capital Outlay | 10,000 |
| TOTAL APPROPRIATIONS FOR DEPT 540.202 | 4,346,440 |

CAPITAL IMPROVEMENT

| | |
|---|---:|
| Supplies & Operating Expenses | 160,000 |
| Capital Outlay | 100,000 |
| TOTAL APPROPRIATIONS FOR DEPT 540.300 | 260,000 |

WATER PLANT - OPERATIONS

| | |
|---|---:|
| Wages & Fringes | 951,300 |
| Supplies & Operating Expenses | 7,619,646 |
| Capital Outlay | 23,000 |
| TOTAL APPROPRIATIONS FOR DEPT 545.200 | 8,593,946 |

**City of Flint**
**FY2022 Adopted Budget**

|  | FY2021-22 Adopted Budget |
|---|---|
| WATER PLANT MAINTENANCE | |
| Wages & Fringes | 1,029,939 |
| Supplies & Operating Expenses | 282,800 |
| Capital Outlay | 68,850 |
| TOTAL APPROPRIATIONS FOR DEPT 545.201 | 1,381,589 |
| | |
| WATER PLANT - DAM MAINTENANCE | |
| Supplies & Operating Expenses | 525,000 |
| TOTAL APPROPRIATIONS FOR DEPT 545.203 | 525,000 |
| | |
| WATER PLANT - CAPITAL IMPROVEMENTS | |
| Supplies & Operating Expenses | 145,000 |
| Capital Outlay | 60,000 |
| TOTAL APPROPRIATIONS FOR DEPT 545.300 | 205,000 |
| | |
| COST ALLOCATION AND RETIREE HEALTHCARE | |
| Wages & Fringes | 2,055,868 |
| Supplies & Operating Expenses | 3,191,494 |
| TOTAL APPROPRIATIONS FOR DEPT 900.100 | 5,247,362 |
| | |
| **TOTAL APPROPRIATIONS FOR WATER FUND** | **38,210,315** |
| | |
| NET OF REVENUES/APPROPRIATIONS | (7,949,205) |
| BEGINNING FUND BALANCE | (3,821,685) |
| ENDING FUND BALANCE | (11,770,890) |

PCA-179

Exhibit 29


# East Village Magazine

Home   About   All News   Contact   Latest Issue   Commentary   Coronavirus   Editorials

# Flint City Council passes $64 million "balance budget after Winfrey-Carter's dramatic pause during rollcall vote

| Home | Analysis | Flint City Council passes $64 million "balanced" budget after Winfrey-Carter's dramatic pause during rollcall vote |

Search

Support Us

Help The East V
with your kind

Donate

## Posted on Jun 7, 2022

By Tom Travis

In a dramatic and unprecedented vote, the city council passed a $64 million budget in its Monday meeting. According to Chief Financial Officer (CFO) Robert Widigan, the budget allocates $64 million for the city's expenditures  and is based on $50.7 million in revenue. Widigan explains the budget will be balanced with a transfer of $14 million from the general fund balance which stands at $22 million.

The resolution to approve the city's 2022-2023 fiscal year budget passed 5-2. Voting 'yes' were Councilpersons Allie Herkenroder (Ward 7), Eva Worthing (Ward 9), Ladel Lewis (Ward 2), Judy Priestley (Ward 4) and Jerri Winfrey-Carter (Ward 5). Councilperson Eric Mays abstained and Tonya Burns voted no. Councilperson Quincy Murphy (Ward 3) had left the meeting earlier in the evening and Councilperson Dennis Pfeiffer was absent.

**Councilperson Winfrey-Carter casts final 'yes' vote to approve budget**

The process to get to 5-2 was dramatic. After six hours of council deliberations (and months of debate), City Clerk Inez Brown began the roll-call vote on the budget resolution.  When she called for Councilperson Jerri Winfrey-Carter's (Ward 5) vote there was an unusually long pause. Councilpersons looked at Winfrey-Carter.



The Latest Editi
Magazine Is Ava
Download Here

PCA-181

Case 2:16-cv-10277-DML-SDD  ECF No. 260-8, PageID.1990  Filed 05/26/23  Page 46 of 106



Councilperson Jerri Winfrey-Carter (Ward 5) cast the deciding vote to approve the city's $64 million budget. (Photo by Tom Travis)

The pause lasted nearly 30 seconds.

Finally, Winfrey-Carter leaned forward into her microphone and said, "yes."

Her vote gave the necessary fifth affirmative to pass the budget. Councilperson Eric Mays mumbled into his microphone, "unbelievable" as Winfrey-Carter cast her vote.

*EVM has reached out to Winfrey-Carter for her thoughts on the vote. At the time of publishing she has not responded.*

Throughout the budget hearings and budget debates in council meetings, Winfrey-Carter has largely sided with Mays in their contentiousness towards the Mayor's budget.

> In a phone interview early Tuesday morning, Council Vice-President Allie Herkenroder agreed it was a dramatic moment in council voting. Herkenroder said she was very happy with Winfrey-Carter's yes vote. "The vote was very telling about the council.
>
> "I see her vote as her putting Flint first," Herkenroder said. "Each vote carries so much weight."



Councilperson Vice President Allie Herkenroder (Ward 7). (Photo by Tom Travis)

Herkenroder added she's excited about the city.  "The city is beginning to move forward," she declared.

In a Tuesday morning follow-up email, the city's chief financial officer, Robert Widigan, stated, "The city is still in the black. The Mayor's proposed budget passed by the City Council last night is a balanced budget. This budget uses some of the General Fund Balance to maintain city services for our residents...there is no deficit for 2023. "

According to Public Act 2 of 1968 local governments are prohibited to have deficit spending.

Widigan added, "However, if pension costs continue to rise as forecasted in FY2024, the city is projected to see a deficit of $15 million."

> Mayor Sheldon Neeley wrote in his submitted budget to council, "Today, for FY2022 and FY2023, the pension contribution remains about $32 million and is projected to increase to $40 million in FY2024.

## The EVM Reader

Help shape the [East]
[Village Magazine]
[readership survey]

## FACES of Flint

"FACES of Flint [...]
the anvil of Ame[...]
presented by Th[...]
Magazine, is ava[...]



## Number of Lead[...]
Lines:

Pipes Explored:
Pipes Replaced:
Copper Lines In[...]

## Subscribe via E[...]

Enter your ema[...]
subscribe to The[...]
Magazine and re[...]
notifications of [...]
email.

Email Address

[ Subscribe ]

## Categories

▸ Analysis

▸ Book review

▸ Calendar

▸ Column

▸ Commentary

PCA-182

5/18/23, 11:02 AM    Flint City Council passes $64 million balanced budget after Winfrey-Carter's dramatic pause during rollc... - East Village M...

Case 2:16-cv-10277-DML-SDD ECF No. 260-8, PageID.1991 Filed 05/26/23 Page 47 of 106



Mayor Sheldon Neeley. (Photo by Tom Travis)

"This drastic increase makes pension contributions our most significant expense in the city budget. The outcome of these challenges is that the City of Flint faces an ongoing structural General Fund budget deficit of a $14 million reduction to fund balance in FY2023.

"This continues to grow to a $20 million reduction to fund balance in FY2024. In FY2023, we address this structural deficit with the use of some one-time fixes available to use due to poor accounting practices from the past. However, this does not fix the overall problem, and in FY2024, we are still projecting a significant deficit in the General Fund.

"The state of Michigan, its EMs, and the RTAB Board failed the residents of Flint. Those failures resulted in these ongoing structural budget deficits. This administration will seek a better path forward as we strive to build a partnership with the Flint City Council and the residents of Flint.

"On March 1, 2022, the Michigan House of Representatives passed HB 5054 that would provide $1.15B in state general fund resources to be utilized for direct assistance to municipalities to help pay down municipal pension debt. There will be two parts to the grant program: $900M will be used to bring all pensions that are less than 60% funded up to 60% funded, and $250M will be provided to pensions that are 60% funded or greater.

"This administration will continue to monitor proposed legislation and work with our partners in Lansing to ensure the result provides an affordable path forward for the City to pay pension benefits to retirees."

**Council rejects 10 amendments:  community requests, ARP fund movements rejected**

Several community requests bore the brunt of the council's final decisions. On the agenda was a resolution with 10 amendments from city council. Over the past few weeks the council had met as the Finance Committee, chaired by Councilperson Tonya Burns (Ward 6).

During those meetings the council drafted the amendments which included an increase to the Ombudsperson's budget of $300,000, a decrease of $168,428 for Supplies and Operations, an increase of $25,000 for Hasselbring Community Center (Ward 1), increase of $25,000 for Brennan Community Center (Ward 7), increase of $50,000 for Haskell Community Center, an increase of $8.1 million Budget Transfers from ARP (American Rescue Plan – Federal Stimulus), an increase of $40,000 for Major Street Fund/Tree Removal services, an increase in $60,000 for Local Street Fund/Tree Removal services, an increase in $140,000 for Major Street Fund Personnel Services, and an increase of $210,000 for Local Street Fund Personnel Services. These amendments were voted down.

After the resolution with amendments was voted down, the original resolution was brought for a vote. The original resolution was the budget the Mayor's office submitted for approval.

The link to the proposed budget can be viewed here.

*EVM* Managing Editor Tom Travis can be reached at tomntravis@gmail.com.

---

**Author:** Tom Travis

Coronavirus
Editorials
Essays
Features
First Amendm
Local News
News Briefs
OutDated
OutOfDate
Poetry
Print Edition
Reviews
Special Event
Village Life

Archives

May 2023 (9)
April 2023 (9)
March 2023
February 202
January 202
December 20
November 20
October 2022
September 20
August 2022
July 2022 (9)
June 2022 (1
May 2022 (14
April 2022 (1
March 2022

5/18/23, 2:50 AM    Flint City Council passes $64 million balanced budget after Winfrey-Carter's dramatic pause during rollcall vote — East Vilage M…

Case 2:16-cv-10277-DML-SDD   ECF No. 260-8, PageID.11992   Filed 05/26/23   Page 48 of 106

Share This Post On

February 202

January 202

December 20

November 20

October 2021

September 20

August 2021

July 2021 (15

June 2021 (1

May 2021 (18

April 2021 (2

March 2021 (

February 202

January 2021

December 20

November 20

October 2020

September 20

August 2020

July 2020 (28

June 2020 (3

May 2020 (3

April 2020 (4

March 2020

February 202

January 2020

December 20

November 20

October 2019

September 20

August 2019

PCA-184

5/18/23, 2:56 PM    Flint City Council passes $64 million balanced budget after Winfrey-Carter's dramatic pause during rollcall vote – East Village M…

Case 2:16-cv-10277-DML-SDD  ECF No. 260-8, PageID.1993  Filed 05/26/23  Page 49 of 106

- July 2019 (23)

- June 2019 (24)

- May 2019 (14)

- April 2019 (24)

- March 2019 (32)

- February 2019 (17)

- January 2019 (34)

- December 2018 (28)

- November 2018 (31)

- October 2018 (31)

- September 2018 (20)

- August 2018 (15)

- July 2018 (28)

- June 2018 (21)

- May 2018 (17)

- April 2018 (21)

- March 2018 (22)

- February 2018 (14)

- January 2018 (11)

- December 2017 (11)

- November 2017 (15)

- October 2017 (22)

- September 2017 (11)

- August 2017 (22)

- July 2017 (12)

- June 2017 (14)

- May 2017 (19)

- April 2017 (12)

- March 2017 (13)

- February 2017 (20)

- January 2017 (12)

PCA-185

- December 2016 (19)
- November 2016 (14)
- October 2016 (12)
- September 2016 (17)
- August 2016 (10)
- July 2016 (17)
- June 2016 (12)
- May 2016 (7)
- April 2016 (11)
- March 2016 (10)
- February 2016 (6)
- January 2016 (14)
- December 2015 (6)
- November 2015 (8)

PCA-186



**East Village Magazine on Facebook:**

East Village Magazine
1,559 followers

Follow Page

**East Village Magazine on Twitter:**

Tweets from @EastVillFlint

East Village ...
@Ea... · May 16

Budget hearings conclude; council chaos continues with loud racial accusations

eastvillagemagazine.org
Budget hearings conclude; council chaos continues with ...

East Village ...
@Ea... · May 11

Community Foundation leader Isaiah Oliver departing for new job in Florida, asserting "Love is never lost"

eastvillagemagazine.org
Community Foundation leader Isaiah Oliver departing for ne...

♡ 1

View more on Twitter

**Sections:**

- Analysis (979)
- Book review (43)
- Calendar (17)
- Column (65)
- Commentary (171)
- Coronavirus (205)
- Editorials (9)
- Essays (40)
- Features (1,077)
- First Amendment (7)
- Local News (1,453)
- News Briefs (175)
- OutDated (3)
- OutOfDate (5)
- Poetry (4)
- Print Edition (44)
- Reviews (69)
- Special Events (21)
- Village Life (64)

**Download the Village Magazi**

May 2023
April 2023
March 2023
February 2023
Dec 2022 - Jan 20
November - 2022
October - 2022
September - 2022
August - 2022
July - 2022
June 2022

The above links are
Acrobat format and
new window. The
Magazine is publish
and is available in
print format (distri
to the Flint, MI are

Copyright © 1976 - 2022 Village Information Center Inc., All rights reserved.

PCA-187

# Exhibit 30

PCA-188

From:        Joseph Kuptz
To:          Rolnick, Addie
Cc:          Bonsitu Kitaba; Vandal, Nicole; Kuhl, Richard (AG); William Kim; Tallman, Sarah; Calero, Melanie
Subject:     Re: Concerned Pastors, et al v City of Flint, et al re: April 2023 Monthly Report
Date:        Wednesday, May 10, 2023 5:01:08 PM

Addie - please see the City's answers below, which correlate by number with the questions in Melanie's prior email.  ote that all numbers given below are as of the close of the reporting period  0 /1 /202

1. Data in the "T  D" tab indicates the first tranche of addresses at which visual inspection is confirmed to be needed, as of the reporting date.
2. Data in the "  omes to complete based on    " and "  omes Completed based on    " tabs represent addresses at which a visual inspection occurred that was compliant with the terms of the 02/202  order, as of the reporting date.
.  The City does have additional records for addresses that were completed in the Fall of 2022, which may not be compliant with the 02/202  order. A determination has been made by the City that a visual inspection, compliant with the 02/202  order, will be conducted at those addresses.
.   can confirm that all addresses, in the current tranche, at which the City is conducting visual inspections, are addresses for which the City concluded it lacks contemporaneous records of fully completed restoration.
5. The City  through its pro ect manager   owe  is only responding to voicemails left at 810. 10.11  .  t is my understanding that the City did not receive any emails from residents or property owners during the reporting period and concerning visual inspections.
6. The City is currently assessing the total number of addresses which require visual inspections. As of the reporting date, the first tranche still contained 1 ,6 6 addresses.  t is anticipated that, weather dependent, the first tranche of 1 ,6 6 addresses  that remained as of the reporting date will be complete by Friday, May 1 th.

 t's my understanding that outreach attempts  to obtain consent for S  /S   have been completed.   will work to obtain updated reporting, but do not have a definite timeline as of the writing of this email.


Joe


On Wed, May 10, 2023 at 12:27 PM Rolnick, Addie <ARolnick@nrdc.org> wrote:

Joe,


In advance of our call tomorrow, can you provide any answers to the below questions  Without answers to these questions, Plaintiffs do not have a clear understanding of the City's progress towards identifying the remaining scope of restoration work. In addition, when we spoke last week, you stated that you expected the City to complete the remaining required outreach by last Friday. Did this happen  If so, please provide documentation of this completed outreach as soon as possible so Plaintiffs can assess whether the City has remedied its outreach violation.


Regards,

**Addie**

ADELINE ROLNICK

**Attorney**

NATURAL RESOURCES DEFENSE COUNCIL

1152 15TH STREET NW, SUITE 300

WASHINGTON, DC 20005

T 202.513.6240
AROLNICK@NRDC.ORG
PRONOUNS: SHE/HER

NRDC.ORG

---

From: Calero, Melanie <mcalero@nrdc.org>
Sent: Tuesday, May 2, 2023 4:20 PM
To: Joseph Kuptz <jkuptz@cityofflint.com>; Kuhl, Richard (AG) <kuhlr@michigan.gov>;
Tallman, Sarah <stallman@nrdc.org>; William Kim <wkim@cityofflint.com>;
krisztiang@michigan.gov; Russell, Erin (EGLE) <russelle@michigan.gov>; Clyde Edwards
<cedwards@cityofflint.com>; Rolnick, Addie <ARolnick@nrdc.org>; Bonsitu Kitaba
<bkitaba@aclumich.org>; Vandal, Nicole <nvandal@nrdc.org>
Subject: RE: Concerned Pastors, et al v City of Flint, et al re: April 2023 Monthly Report

Joe,

Thank you for sharing this information.

This report does not comply with the restoration reporting requirements delineated in the
Court's order. For every previously excavated address, the City must report whether (1) the
City has a contemporaneous record of restoration or (2) the City has no contemporaneous

record of restoration and either has completed or plans to complete a visual inspection or further records review. See ECF No. 258 at 24-25. This report reflects data for a total of only approximately 16,000 excavated addresses, rather than providing information on restoration status for the total number of addresses (over 27,000) the City has excavated to date. The City is also required to report " a ll previously excavated addresses where the City has contemporaneous documentation of completed restoration," but there does not appear to be a tab in the report containing this information. Id. Finally, the call log documenting calls from residents or property owners regarding visual inspections is missing address information for one of the entries   please ensure that, going forward, address information is logged, as required by the order. Id.

We also have some follow-up questions regarding this report. Please provide written responses to these questions as soon as possible:

1.  Can you please explain what the data in the "TBD" tab reflects? It seems to include addresses where the City has records of partial or complete restoration and addresses where the City does not have records of restoration. Do the listed addresses need to be categorized into the correct tabs following further records review, or do all of these addresses require visual inspections? In particular, if an address has blank cells in the columns regarding dates of restoration, does that mean that address requires a visual inspection, or is that entry reflecting that the address is a "known home to complete"?
2.  The report includes data for 2,056 homes that have been visually inspected, but the City previously stated that it has completed nearly 6,000 visual inspections. Does this report document every visual inspection the City has completed (as of the end of the reporting period) that complied with the terms of the February 2023 order?
3.  The report seems to include data for only 37 of the homes inspected in the fall. Does the City have additional records for the addresses that were inspected in the fall?
4.  Some of the addresses in the  homes completed based on VI  tab seem to have contemporaneous documentation of fully completed restoration. Can you confirm that all addresses for which the City is conducting visual inspections are addresses for which the City concluded it lacks contemporaneous records of fully completed restoration?
5.  With respect to communications from residents or property owners regarding the visual inspections, we have noticed that the phone number goes straight to voicemail when called. Is the City/ROWE answering calls to this number during business hours, or is it only responding to voicemails? In addition, did the City receive any emails from residents or property owners during the reporting period concerning the visual inspections?
6.   ou mentioned that the number of crews conducting visual inspections has increased. Does the City have an updated estimate as to how many addresses still require visual inspections? In addition, does the City have an expected completion date for the visual inspection work?

Regards,

Melanie

ELANIE CALERO

**Attorney**

NATURAL RESOURCES DEFENSE COUNCIL

40 W 20TH STREET

NEW ORK, N 10011
 CALERO@NRDC.ORG

PRONOUNS: SHE/HER

---

**From: Joseph Kuptz <jkuptz@cityofflint.com>**
**Sent: Monday, May 1, 2023 4:40 PM**
**To: Kuhl, Richard (AG) <kuhlr@michigan.gov>; Tallman, Sarah <stallman@nrdc.org>;**
**William Kim <wkim@cityofflint.com>; krisztiang@michigan.gov; Russell, Erin (EGLE)**
**<russelle@michigan.gov>; Clyde Edwards <cedwards@cityofflint.com>; Rolnick, Addie**
**<ARolnick@nrdc.org>; Bonsitu Kitaba <bkitaba@aclumich.org>; Calero, Melanie**
**<mcalero@nrdc.org>; Vandal, Nicole <nvandal@nrdc.org>**
**Subject: Re: Concerned Pastors, et al v City of Flint, et al re: April 2023 Monthly Report**

Please see the attached updated monthly report in this matter.   have only attached
new spreadsheets that were not included in the previous email.

 also note that, effective today,   owe has essentially doubled the number of teams,
to 7, that are conducting restoration status site visits.

Thank-you.

Joe

**On Fri, Apr 28, 2023 at 7:39 PM Joseph Kuptz <jkuptz@cityofflint.com> wrote:**

Please find attached the City of Flint's April, 202   monthly report in this matter.

Thank-you.

Joe

--

**Joseph N. Kuptz, Assistant City Attorney**

**City of Flint, Department of Law**

**1101 S. Saginaw St., 3rd Floor**

**Flint, MI 48502**

**(810) 237-2085**

--

**Joseph N. Kuptz, Assistant City Attorney**

**City of Flint, Department of Law**

**1101 S. Saginaw St., 3rd Floor**

**Flint, MI 48502**

**(810) 237-2085**

--
Joseph N. Kuptz, Assistant City Attorney
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
(810) 237-2085

# Exhibit 31

PCA-195

From:      Joseph Kuptz
To:        Kuhl, Richard (AG); Tallman, Sarah; William Kim; krisztian __michi_an_ov; Russell,_rin (_G__); Clyde _d_ards;
           Rolnick, Addie; Bonsitu Kitaba; Michael Bro__n; Calero, Melanie; Vandal, Nicole
Subject:   Concerned Pastors, et al v City of Flint, et al re:   uarterly Report 02 28 2023
Date:      Tuesday, February 28, 2023  : 5:51 PM
 ttac me t :  1313 Cleveland Ave (1) doc
              2023 2 1  Filter Verifications _ls_
              2023 2 1 __ eclinations _ls_
              2023 2 1  Fast Start __ ploration Status _ls_
              2_3_ Concord 2023 (1) doc
              _W _M 11 2__ 22 to 11 30 22 _ls_
              _W _M 11 1__ 22 to 11 23 22 _ls_
              _ecember 2022 M _R _ls
              2023 02 28 CoF __ uarterly Status Report pdf
              _W _M 12 01 22 to 12 0__ 22 _ls_
              Flint V__ S__ S R Sept_Restoration _nvoice 01 pdf
              _W _M 12 15 22 to 12 21 22 _ls_
              _W _M 12 22 22 to 12 28 22 _ls_
              _nvoice F NA__ PA__ pdf
              Flint Fast Start Phase V__ S__ S R _nvoice 02 pdf
              November 2022 M _R Ne__ Version 2 0_ ls
              Total _nvoice 3_12 15 22 pdf
              _W _M 12 08 22 to 12 1__ 22 _ls_

Please find attached the City of Flint's most recently quarterly report, along with supporting files.

 f you believe anything is missing, or have any questions or concerns, please do not hesitate to contact me.

Thank-you.


Joe


--
**Joseph N. Kuptz, Assistant City Attorney**
**City of Flint, Department of Law**
**1101 S. Saginaw St., 3rd Floor**
**Flint, MI 48502**
**(810) 237-2085**

# Exhibit 32

From:       Joseph Kuptz
To:         Kuhl, Richard (AG); Tallman, Sarah; William Kim; krisztian   michi an ov; Russell.  rin ( G  ); Clyde  d ards;
            Rolnick, Addie; Bonsitu Kitaba; Calero, Melanie; Vandal, Nicole
Subject:    Concerned Pastors, et al v City of Flint, et al re: March Monthly Report and Revised Plans
Date:       Tuesday, March 28, 2023 8: 5:2  PM
 ttac me t :  2023 03 28 CoF Status Report pdf
            2023 02 1    eclinations  ls
            2023 03 1    eclinations  ls
            2023 02 1     ploration Status  ls
            2023 02 1    utreach Attempts  ls
            2023 02 1    omes   ith Consent  ls
            2023 03 1     ploration Status  ls
            2023 03 1  Restoration  ls
            2023 03 1    omes   ith Consent  ls
            2023 03 1    utreach Attempts  ls
            Flint Service  ine Replacement Plan   pdated 03 28 2023 pdf
            Flint Service  ine Restoration Plan   pdated 03 28 2023 pdf

Please find attached the City of Flint's March monthly report, along with revised versions of the S    /S
and   estoration Plans.

Thank-you.

Joe

--
**Joseph N. Kuptz, Assistant City Attorney**
**City of Flint, Department of Law**
**1101 S. Saginaw St., 3rd Floor**
**Flint, MI 48502**
**(810) 237-2085**

Exhibit 33

PCA-199

From:          Joseph Kuptz
To:            Kuhl, Richard (AG); Tallman, Sarah; William Kim; krisztian _ michi_an_ov; Russell, _rin (_G_); Clyde _d_ards;
               Rolnick, Addie; Bonsitu Kitaba; Calero, Melanie; Vandal, Nicole
Subject:       Re: Concerned Pastors, et al v City of Flint, et al re: April 2023 Monthly Report
Date:          Monday, May 1, 2023  : 3:25 PM
 ttac  me  t  :   2023 0_ 28 CoF Status Report v2 pdf
               2023 0_ 1_ Restoration Contact _o_ ls_
               2023 0_ 1_ Restoration _ls_

Please see the attached updated monthly report in this matter.   have only attached new spreadsheets
that were not included in the previous email.

 also note that, effective today,    owe has essentially doubled the number of teams, to 7, that are
conducting restoration status site visits.

Thank-you.


Joe


**On Fri, Apr 28, 2023 at 7:39 PM Joseph Kuptz <jkuptz@cityofflint.com> wrote:**
> Please find attached the City of Flint's April, 202   monthly report in this matter.
>
> Thank-you.
>
>
> Joe
>
>
> --
> **Joseph N. Kuptz, Assistant City Attorney**
> **City of Flint, Department of Law**
> **1101 S. Saginaw St., 3rd Floor**
> **Flint, MI 48502**
> **(810) 237-2085**


--
**Joseph N. Kuptz, Assistant City Attorney**
**City of Flint, Department of Law**
**1101 S. Saginaw St., 3rd Floor**
**Flint, MI 48502**
**(810) 237-2085**

# Exhibit 34

From:          Joseph Kuptz
To:            Kuhl, Richard (AG); Tallman, Sarah; William Kim; krisztian   michi an ov; Russell,  rin ( G  ); Clyde  d ards;
               Rolnick, Addie; Bonsitu Kitaba; Calero, Melanie; Vandal, Nicole
Subject:       Re: Concerned Pastors, et al v City of Flint, et al re:   pdated Reportin
Date:          Monday, May 22, 2023 10:5 : 2 AM
 ttac me t :    2023 05 1    utreach Attempts  ls
               2023 05 10 Restoration  ls

Thank-you for your patience on the updated reporting. Please note that the restoration reporting is based
on visual inspections completed through May 10, 202 .

 et me know as soon as possible if you have any questions or concerns.

Thank-you.


Joe


**On Fri, May 19, 2023 at 8:38 PM Joseph Kuptz <jkuptz@cityofflint.com> wrote:**

Please be advised that the updated reporting regarding outreach attempts and restoration efforts has
been delayed due to a   P  /server access issue involving the City's pro ect manager.

As soon as that issue is resolved, updated reporting will be provided.

Thank-you.


Joe


--
**Joseph N. Kuptz, Assistant City Attorney**
**City of Flint, Department of Law**
**1101 S. Saginaw St., 3rd Floor**
**Flint, MI 48502**
**(810) 237-2085**


--
**Joseph N. Kuptz, Assistant City Attorney**
**City of Flint, Department of Law**
**1101 S. Saginaw St., 3rd Floor**
**Flint, MI 48502**
**(810) 237-2085**

# Exhibit 35

# NRDC

November 15, 2018

VIA EMAIL AND U.S. CERTIFIED MAIL

City of Flint Department of Law
ATTN: William Y. Kim
1101 South Saginaw Street, Third Floor
Flint, MI 48502
wkim@cityofflint.com

City of Flint
ATTN: Steven Branch, Interim City Administrator
City Hall
1101 South Saginaw Street, First Floor
Flint, MI 48502
sbranch@cityofflint.com

      Re:    Notice of City of Flint's Violations of Settlement Agreement in *Concerned Pastors for Social Action v. Khouri*, No. 16-10277 (E.D. Mich.)

Messrs. Kim and Branch:

      Pursuant to Paragraph 128 of the Settlement Agreement, Plaintiffs provide notice to the City concerning a dispute over the City's noncompliance with its obligations under Paragraph 15 of the Agreement, as amended by the parties' stipulation and the Court's July 19, 2018 Order.

      Paragraph 15 requires the City to "undertake reasonable efforts" to contact Flint residents to obtain permission to replace their service lines. *See* Order Amending Settlement Agmt. ¶ 15, ECF No. 174. The purpose of Paragraph 15's outreach requirements is to ensure that as many Flint residents as possible have a meaningful opportunity to participate in the Agreement's service line replacement program.

      The required efforts include completing at least two in-person attempts to obtain permission from residents at replacement eligible households to replace their service lines. *Id.* ¶ 15.a. At least one of the two in-person attempts must be made during the evening (after 5 p.m.) or on a weekend (Saturday or Sunday). *Id.* For those in-person attempts that are unsuccessful, the City must keep records showing the date and time of the attempt. *Id.*

¶ 15.b. If the two in-person attempts are unsuccessful, the City must send at least one written request by U.S. mail "to the property owner's address requesting permission to replace the service line at the address of the replacement eligible household." *Id.* ¶ 15.a. The City must "keep records that show the dates on which such written requests were sent, the address of the replacement eligible household, and the address of the property owner of such household (if different)." *Id.* ¶ 15.c.

The deadline to complete this outreach for a minimum of 18,000 replacement eligible households slated for excavations under the Agreement was September 28, 2018. *See id.* ¶ 15.d (requiring completion of outreach under Paragraph 15 within eighteen months of the Effective Date (March 28, 2017)).

The City has not complied with these requirements. On a telephone call on October 9, 2018, Mr. Kim stated that the City has not yet completed the outreach required by Paragraph 15 and has not yet sent the letters required by Paragraph 15.a.

Plaintiffs are available to meet and confer with the City to discuss this matter during the weeks of November 26 and December 3. In the interest of efficiency, we suggest that the parties discuss these issues alongside the dispute raised in Plaintiffs' September 28, 2018 Notice of Violation to the City concerning its prioritization of homes for excavations in 2019.

In addition, to further the parties' efforts to promptly resolve this dispute, <u>please provide, pursuant to Paragraph 118, all records required to be maintained under Paragraph 15 regarding the City's outreach efforts</u>. This includes records documenting unsuccessful in-person attempts to obtain permission to replace service lines (as required by Paragraph 15.b), and records documenting mailing of the written requests for permission (as required by Paragraph 15.c).

Sincerely,

Sarah C. Tallman

2

cc (via email):               Dimple Chaudhary, dchaudhary@nrdc.org
                                 Jolie McLaughlin, jdmclaughlin@nrdc.org
                                 Michael Steinberg, msteinberg@aclumich.org
                                 Bonsitu Kitaba, bkitaba@aclumich.org
                                 Glenn Simmington, gsimmington@gmail.com
                                 Richard Kuhl, kuhlr@michigan.gov
                                 Nate Gambill, gambilln@michigan.gov
                                 Todd Mendel, tmendel@bsdd.com
                                 Sheldon Klein, klein@butzel.com

cc (via Certified U.S. Mail):    Michigan Department of Environmental Quality
                                 ATTN: George Krisztian
                                 525 West Allegan Street
                                 P.O. Box 30473
                                 Lansing, MI 48909-7973

PCA-206

# Exhibit 36

PCA-207

February 22, 2023

VIA EMAIL

Joseph Kuptz
William Kim
City of Flint Department of Law
1101 S. Saginaw Street, Third Floor
Flint, MI 48502
jkuptz@cityofflint.com
wkim@cityofflint.com

City of Flint
ATTN: City Administrator Clyde Edwards
City Hall
1101 S. Saginaw Street, First Floor
Flint, MI 48502
cedwards@cityofflint.com

> Re:    Notice of City of Flint's Violations of Settlement Agreement in *Concerned Pastors for Social Action v. Khouri*, No. 16-10277 (E.D. Mich.)

Dear Messrs. Kuptz, Kim, and Edwards:

Pursuant to Paragraph 128 of the Settlement Agreement ("Agreement"), Plaintiffs provide notice of the City's noncompliance with the Agreement, as modified. *See* ECF Nos. 147-1, 174, 207, 208, 217, 237. Specifically, the City has failed to (1) report restoration work, (2) report the times of consent attempts, and (3) respond to information requests.

## I.    The City failed to provide monthly reporting on restoration completed in 2022

During the parties' meet and confer on February 16, 2023, the City stated that it completed restoration at an unspecified number of properties during the fall of 2022. The City has not reported this work to Plaintiffs, in violation of the Agreement. *See* ECF No. 217 ¶ 7.iii. Indeed, the City has provided *no* reporting on restoration since July 14, 2021.

Plaintiffs have previously sent four notices of violation and filed a motion concerning the City's violation of this same reporting requirement. *See* May 4, 2021 Ltr. fr. S. Tallman to W. Kim    C. Edwards; May 6, 2022 Ltr. fr. S. Tallman to W. Kim    C. Edwards; Aug. 19, 2022 Ltr. fr. S. Tallman to W. Kim    C. Edwards; Oct. 4, 2022 Ltr. fr. A. Rolnick to W. Kim    C. Edwards; Pls.' Fifth Mot. to Enforce Settlement., ECF No. 242. The City's continuing failure to report restoration work is unacceptable. **Please provide reporting on all restoration work completed in 2022 in the City's February 2  , 2023 monthly report.**

## II.      The City failed to report the times of consent attempts

The City's reporting of consent attempts in its October 28, 2022, and December 28, 2022, reports omitted the time of each attempt, in violation of the Agreement. *See* ECF No. 208 ¶ 6(v)(2). Plaintiffs have notified the City of this violation twice previously. Dec. 13, 2022 Em. fr. A. Rolnick to J. Kuptz; Feb. 1, 2023 Ltr. fr. A. Rolnick to J. Kuptz. The City's deficient reporting makes it impossible for Plaintiffs to verify the City's compliance with the Agreement's outreach requirements.

During the parties' meet and confer on February 16, 2023, the City stated that its contractor failed to record the times of consent attempts performed during these reporting periods. There is no excuse for the City's failure to ensure that its contractors are complying with a basic requirement of the Agreement that has been in place for years. *See* ECF No. 174 ¶ 15(b). To remedy this violation, Plaintiffs request that the City perform additional attempts at any homes listed in its October 28, 2022 and December 28, 2022 outreach reports as necessary to demonstrate compliance with the requirement that the City perform at least three in-person consent attempts at these homes, at least one of which occurred after 5:00 PM or on a weekend. **Please confirm in writing that the City will implement this remedy**.

## III.     Outstanding information requests

In their February 1, 2023 letter, Plaintiffs made a number of requests for written information related to the implementation of the Agreement. Plaintiffs requested (1) a copy of the door hanger described in ¶ 3.b of the January 2023 Stipulation; (2) sample images of door hangers left at five addresses where the resident was not home at the time of the scheduled excavation and/or replacement; and (3) sample images documenting the City's visual inspections at five addresses. **Please provide responses to these outstanding information requests as soon as possible.** *See* ECF No. 147-1 ¶ 118.

*        *        *

Plaintiffs are eager to resolve this dispute as soon as possible. We also anticipate that further discussions will be needed concerning the City s implementation of other aspects of the 2023 Stipulation. To conserve the parties' resources, we suggest scheduling a conference during the week of March 13. We are available at the following times (all EST):

Monday, March 13: 11:00 am – 2:00 pm, 3:00 pm – 5:00 pm
Tuesday, March 14: 9:00 am – 12:30 pm
Wednesday, March 15: 11:00 am – 2:00 pm
Thursday, March 16: 9:00 am – 1:00 pm
Friday, March 17: 9:00 am – 1:00 pm, 3:00 pm – 5:00 pm

If the City would like to confer sooner, please let us know. Thank you for your prompt attention to these issues.

Sincerely,

Adeline S. Rolnick

cc (via email):   Sarah Tallman, stallman@nrdc.org; Melanie Calero, mcalero@nrdc.org,
Bonsitu Kitaba, bkitaba@aclumich.org; Richard Kuhl, kuhlr@michigan.gov;
Nate Gambill, gambilln@michigan.gov

# Exhibit 37

PCA-211

From:        Joseph Kuptz
To:          Kuhl, Richard (AG); Tallman, Sarah; William Kim; krisztian  michi an ov; Russell,  rin ( G  ); Clyde  d ards;
             Rolnick, Addie; Bonsitu Kitaba; Calero, Melanie; Vandal, Nicole; Bennet Bush
Subject:     Concerned Pastors, et al  v City of Flint, et al  re: Weekly Reportin  0   12 2023
Date:        Wednesday, April 12, 2023   :23:00 AM
 ttac me t :  2023 0  05 Filter Verification  ls
             2023 0  S    S R  omes Completed  ls
             Flint  S R T  o Week  ookahead Schedule   10 2023 to   21 2023  ls

Please find attached the most recent weekly filter status verification report.
**Weekly Progress Update:**
a. Total number of excavations completed where no replacement was needed,
including the date of each excavation and the address where it was completed.
**Answer: See attached "2023-04-07 SLE_SLR Homes Completed.xls" covering
the period 04/03/2023 to 04/07/2023. No excavations were completed on
04/05/2023 due to inclement weather.**
b. Total number of service line replacements  partial and full  completed, including the
date of each replacement and the address where it was completed.

**Answer: See attached "2023-04-07 SLE_SLR Homes Completed.xls" covering
the period 04/03/2023 to 04/07/2023. No excavations were completed on
04/05/2023 due to inclement weather.**

c. Total number of addresses where the City has performed the final required consent
attempt in the previous week, including at how many addresses the City obtained
consent to conduct work.
**Answer: The City, through its contractor LGC and its subcontractors, has
performed 12 final required consent attempts in the previous week. Of all
consent attempts, 3 consents to conduct work were obtained.**
d. Total number of excavations and/or replacements the City has scheduled with
residents for the upcoming 7 days.
**Answer: See attached "Flint - SLR Two Week Lookahead Schedule 4-10-2023 to
4-21-2023.xls"**
e.   umber of service line replacements the City can perform based on the current
total number of parts in its materials inventory.
**Answer: approximately 515.**


**Pursuant to paragraph 10 of the 2023 Stipulation, during the reporting period,
there were no indefinite SLE/SLR outreach or scheduling work stoppages due
to inclement weather, only temporary day-long stoppages as noted in the
weekly reports filed during the reporting period.**
Please let me know as soon as possible if there are any questions or concerns or it is
your belief that information is incomplete or missing.
Thank-you.

--
Joseph N. Kuptz, Assistant City Attorney
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor

Flint, MI 48502
(810) 237-2085

# Exhibit 38

PCA-214

From:        Joseph Kuptz
To:          Kuhl, Richard (AG); Tallman, Sarah; William Kim; krisztian_michi_an_ov; Russell,_rin (_G_); Clyde_d_ards;
             Rolnick, Addie; Bonsitu Kitaba; Calero, Melanie; Vandal, Nicole
Subject:     Concerned Pastors, et al v City of Flint, et al re: Weekly Reportin 0 1 2023
Date:        Wednesday, April 1 , 2023 :25:28 PM
ttac me t :  2023 0 12 Filter Verification_ls_
             2023 0 1_S__S R_omes Completed_ls_

Please find attached the most recent weekly filter status verification report.
**Weekly Progress Update:**
a. Total number of excavations completed where no replacement was needed,
including the date of each excavation and the address where it was completed.
**Answer: See attached "2023-04-14 SLE_SLR Homes Completed.xls" covering
the period 04/10/2023 to 04/13/2023. No excavations were completed on
04/14/2023.**
b. Total number of service line replacements  partial and full  completed, including the
date of each replacement and the address where it was completed.

**Answer: See attached "2023-04-14 SLE_SLR Homes Completed.xls" covering
the period 04/10/2023 to 04/13/2023. No excavations were completed on
04/14/2023.**

c. Total number of addresses where the City has performed the final required consent
attempt in the previous week, including at how many addresses the City obtained
consent to conduct work.
**Answer: The City, through its contractor LGC and its subcontractors, has
performed 8 final required consent attempts in the previous week. Of all
consent attempts, 21 consents to conduct work were obtained. Please note that
all 21 consents to conduct work were obtained from addresses that do not have
active water accounts, and thus no SLE/SLR can be completed until an active
water account is established.**
d. Total number of excavations and/or replacements the City has scheduled with
residents for the upcoming 7 days.
**Answer: An updated schedule will be provided when available.**
e.   umber of service line replacements the City can perform based on the current
total number of parts in its materials inventory.
**Answer: approximately 500.**

Please let me know as soon as possible if there are any questions or concerns or it is
your belief that information is incomplete or missing.
Thank-you.

--
Joseph N. Kuptz, Assistant City Attorney
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
(810) 237-2085

# Exhibit 39

PCA-216

| | |
|---|---|
| From: | Joseph Kuptz |
| To: | Kuhl, Richard (AG); Tallman, Sarah; William Kim; krisztian   michi an ov; Russell,  rin ( G  ); Clyde  d ards; Rolnick, Addie; Bonsitu Kitaba; Calero, Melanie; Vandal, Nicole |
| Subject: | Concerned Pastors, et al v City of Flint et al re: Weekly Reportin  0  2  2023 |
| Date: | Wednesday, April 2 , 2023 8:52:38 PM |
| ttac me t : | 2023 0  21 S    S R  omes Completed ls |
| | 2023 0  1  Filter Verification  ls |

Please find attached the most recent weekly filter status verification report.

**Weekly Progress Update:**

a. Total number of excavations completed where no replacement was needed, including the date of each excavation and the address where it was completed.

**Answer: See attached "2023-04-21 SLE_SLR Homes Completed.xls" covering the period 04/18/2023 to 04/21/2023.**

b. Total number of service line replacements  partial and full  completed, including the date of each replacement and the address where it was completed.

**Answer: See attached "2023-04-21 SLE_SLR Homes Completed.xls" covering the period 04/18/2023 to 04/21/2023.**

c. Total number of addresses where the City has performed the final required consent attempt in the previous week, including at how many addresses the City obtained consent to conduct work.

**Answer: The City, through its contractor LGC and its subcontractors, has performed 445 final required consent attempts in the previous week. Of all consent attempts, 14   consents to conduct work were obtained. Please note that a portion of the consents to conduct work were obtained from addresses that do not have active water accounts, and thus no SLE/SLR can be completed until an active water account is established.**

d. Total number of excavations and/or replacements the City has scheduled with residents for the upcoming 7 days.

**Answer: See previously provided schedule.**

e.   umber of service line replacements the City can perform based on the current total number of parts in its materials inventory.

**Answer: approximately 4  0.**

Please let me know as soon as possible if there are any questions or concerns or it is your belief that information is incomplete or missing.

Thank-you.

--

Joseph N. Kuptz, Assistant City Attorney
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
(810) 237-2085

# Exhibit 40

From:       Joseph Kuptz
To:         Kuhl, Richard (AG); Tallman, Sarah; William Kim; krisztian  michi an ov; Russell,  rin ( G  ); Clyde  d ards;
            Rolnick, Addie; Bonsitu Kitaba; Calero, Melanie; Vandal, Nicole
Subject:    Concerned Pastors, et al v City of Flint, et al re: Weekly Reportin  05 03 2023
Date:       Wednesday, May 3, 2023 2: 2:3  PM
 ttac me t :   2023 0  28 S   S R  omes Completed  ls
            2023 0  2  Filter Verification  ls

Please find attached the most recent weekly filter status verification report.
**Weekly Progress Update:**
a. Total number of excavations completed where no replacement was needed,
including the date of each excavation and the address where it was completed.
**Answer: See attached "2023-04-28 SLE_SLR Homes Completed.xls" covering
the period 04/24/2023 to 04/28/2023.**
b. Total number of service line replacements  partial and full  completed, including the
date of each replacement and the address where it was completed.

**Answer: See attached "2023-04-28 SLE_SLR Homes Completed.xls" covering
the period 04/24/2023 to 04/28/2023.**

c. Total number of addresses where the City has performed the final required consent
attempt in the previous week, including at how many addresses the City obtained
consent to conduct work.
**Answer: The City, through its contractor LGC and its subcontractors, has
performed 50 final required consent attempts in the previous week. Of all
consent attempts, 10 consents to conduct work were obtained.**
d. Total number of excavations and/or replacements the City has scheduled with
residents for the upcoming 7 days.
**Answer: An updated schedule will be provided when available.**
e.   umber of service line replacements the City can perform based on the current
total number of parts in its materials inventory.
**Answer: approximately 480.**

Please let me know as soon as possible if there are any questions or concerns or it is
your belief that information is incomplete or missing.
Thank-you.

--
Joseph N. Kuptz, Assistant City Attorney
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
(810) 237-2085

# Exhibit 41

From:          Joseph Kuptz
To:            Kuhl, Richard (AG); Tallman, Sarah; William Kim; krisztian _ michi_an_ov; Russell,_rin (_G_); Clyde _d_ards;
               Rolnick, Addie; Bonsitu Kitaba; Calero, Melanie; Vandal, Nicole
Subject:       Concerned Pastors, et al  v City of Flint, et al  re: Weekly Reportin  05 1  2023
Date:          Wednesday, May 1 , 2023  :33:5 PM
 ttac me t :   2023_05 12 S _ S_R _omes Completed _ls_
               2023_05 10 Filter Verification _ls_

Please find attached the most recent weekly filter status verification report.

**Weekly Progress Update:**

a. Total number of excavations completed where no replacement was needed, including the date of each excavation and the address where it was completed.

**Answer: See attached "2023-05-12 SLE_SLR Homes Completed.xls" covering the period 05/08/2023 to 05/12/2023.**

b. Total number of service line replacements  partial and full  completed, including the date of each replacement and the address where it was completed.

**Answer: See attached "2023-05-12 SLE_SLR Homes Completed.xls" covering the period 05/08/2023 to 05/12/2023.**

c. Total number of addresses where the City has performed the final required consent attempt in the previous week, including at how many addresses the City obtained consent to conduct work.

**Answer: Consent attempt data is undergoing final quality control checks.  t is anticipated that final, updated reporting on consent attempts will be available 05/1 /2023.**

 rom all sources, 20 consents to conduct work were obtained.

d. Total number of excavations and/or replacements the City has scheduled with residents for the upcoming 7 days.

**Answer: This will be supplemented when available.**

e.  umber of service line replacements the City can perform based on the current total number of parts in its materials inventory.

**Answer: approximately 410.**

Please let me know as soon as possible if there are any questions or concerns or it is your belief that information is incomplete or missing.

Thank-you.

--

Joseph N. Kuptz, Assistant City Attorney
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
(810) 237-2085

# Exhibit 42

From:          Joseph Kuptz
To:            Kuhl, Richard (AG); Tallman, Sarah; William Kim; krisztian   michi an ov; Russell   rin ( G  ); Clyde   d ards;
               Rolnick, Addie; Bonsitu Kitaba; Calero, Melanie; Vandal, Nicole
Subject:       Concerned Pastors, et al  v City of Flint, et al  re: Weekly Reportin  05 2  2023
Date:          Wednesday, May 2 , 2023 1: 5:32 PM
 ttac me t :    2023 05 1  S   S R  omes Completed  ls
               2023 05 1  Filter Verification  ls
               Flint  S R 2 Week  ookahead Schedule 05 22 2023 to 0   02 2023  ls

Please find attached the most recent weekly filter status verification report.

**Weekly Progress Update:**

a. Total number of excavations completed where no replacement was needed, including the date of each excavation and the address where it was completed.

**Answer: See attached "2023-05-1   SLE_SLR Homes Completed.xls" covering the period 05/15/2023 to 05/1 /2023.**

b. Total number of service line replacements  partial and full  completed, including the date of each replacement and the address where it was completed.

**Answer: See attached "2023-05-1   SLE_SLR Homes Completed.xls" covering the period 05/15/2023 to 05/1 /2023.**

c. Total number of addresses where the City has performed the final required consent attempt in the previous week, including at how many addresses the City obtained consent to conduct work.

**Answer: Consent attempt work is complete. The City, from all sources, obtained 13 consents to conduct work.**

d. Total number of excavations and/or replacements the City has scheduled with residents for the upcoming 7 days.

**Answer: See attached "  lint - SLR 2 Week Lookahead Schedule 05-22-2023 to 0 -02-2023.xls"**

e.   umber of service line replacements the City can perform based on the current total number of parts in its materials inventory.

**Answer: approximately 400.**

Please let me know as soon as possible if there are any questions or concerns or it is your belief that information is incomplete or missing.

Thank-you.

--
Joseph N. Kuptz, Assistant City Attorney
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
(810) 237-2085

# Exhibit 43

PCA-225

From:          Joseph Kuptz
To:            Kuhl, Richard (AG); Tallman, Sarah; William Kim; krisztian   michi an ov; Russell,  rin ( G  ); Clyde  d ards;
               Rolnick, Addie; Bonsitu Kitaba; Calero, Melanie; Vandal, Nicole
Date:          Wednesday, May 10, 2023 5:25:  3 PM
 ttac  me  t :   2023 05 03 Filter Verification  ls
               2023 05 05 S    S R  omes Completed  ls
               Flint   S R 2 Week  ookahead Schedule 05 08 2023 to 05 1  2023  ls

Please find attached the most recent weekly filter status verification report.

**Weekly Progress Update:**

a. Total number of excavations completed where no replacement was needed, including the date of each excavation and the address where it was completed.

**Answer: See attached "2023-05-05 SLE_SLR Homes Completed.xls" covering the period 05/01/2023 to 05/05/2023.**

b. Total number of service line replacements  partial and full  completed, including the date of each replacement and the address where it was completed.

**Answer: See attached "2023-05-05 SLE_SLR Homes Completed.xls" covering the period 05/01/2023 to 05/05/2023.**

c. Total number of addresses where the City has performed the final required consent attempt in the previous week, including at how many addresses the City obtained consent to conduct work.

**Answer: The City, through its contractor LGC and its subcontractors, has performed 0 final required consent attempts in the previous week. Of all consent attempts, 0 consents to conduct work were obtained.**

d. Total number of excavations and/or replacements the City has scheduled with residents for the upcoming 7 days.

**Answer: See attached "  lint - SLR 2 Week Lookahead Schedule 05-08-2023 to 05-1  -2023.**

e.   umber of service line replacements the City can perform based on the current total number of parts in its materials inventory.

**Answer: approximately 440.**

Please let me know as soon as possible if there are any questions or concerns or it is your belief that information is incomplete or missing.

Thank-you.

--
Joseph N. Kuptz, Assistant City Attorney
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
(810) 237-2085

# Exhibit 44

PCA-228

| | |
|---|---|
| From: | Joseph Kuptz |
| To: | Kuhl, Richard (AG); Tallman, Sarah; William Kim; krisztian _michi_an_ov; Russell, _rin (_G_); Clyde_d_ards; Rolnick, Addie; Bonsitu Kitaba; Calero, Melanie; Vandal, Nicole |
| Subject: | Concerned Pastors, et al v City of Flint, et al re: April 2023 Monthly Report |
| Date: | Friday, April 28, 2023  : 3:3 PM |
| ttac me t : | 2023 0 1    ploration Status _ls_ |
| | 2023 0 1    eclinations _ls_ |
| | 2023 0 1    omes _ith Consent _ls_ |
| | 2023 0 1    utreach Attempts _ls_ |
| | 2023 0 28 CoF Status Report pdf |

Please find attached the City of Flint's April, 202  monthly report in this matter.

Thank-you.


Joe


--

**Joseph N. Kuptz, Assistant City Attorney**
**City of Flint, Department of Law**
**1101 S. Saginaw St., 3rd Floor**
**Flint, MI 48502**
**(810) 237-2085**

# Exhibit 45

PCA-230

| | |
|---|---|
| From: | William Kim |
| To: | Tallman, Sarah |
| Cc: | a_heeler_cityofflint com; Mc_au_hlin, Jolie; Rolnick, Addie; _u, Cat; Bonsitu Kitaba |
| Subject: | Re: Concerned Pastors |
| Date: | Wednesday, January 5, 2022 3:1 :52 PM |
| ttac me t : | 2021 12 2 Concerned Pastors Stip  redline doc |
| | 2022 01 05 Preliminary S _ S R Replacement _li ible _omes_ist_ls_ |

Sarah,

Here s my notes on your latest proposed stip. Let me know if you want to discuss.

Also, I ve attached my preliminary spreadsheet. Each tab should be pretty self-explanatory, but let me know if any of my abbreviations aren t apparent. The first tab ( Consol. Rpl. Elig. Add s ) consolidates what should be all of the applicable addresses. As discussed yesterday, once I have your add l info on the 11.2 list, I ll be able to incorporate that information as well.

Bill

On Tue, Jan 4, 2022 at 4:27 PM Tallman, Sarah <stallman@nrdc.org> wrote:

Bill,

Thanks for taking the time to talk today. Thank you for pulling together the lists that will comprise the 2021 Replacement Eligible Homes List and sending them to Plaintiffs in the next day or so. We can pull out the addresses from the 11 10 List that still require work from the City. If we receive the data and redline of the draft stipulation by COB Wednesday, we will aim to turn around the materials you send us by the end of the week.

As discussed, here are Plaintiffs' questions concerning the information on the City's website:

- elp ine The City's GetTheLeadOut page currently directs residents to call 810-410-1133 with questions. I tried calling this number, and got a voice message from Jennifer Allen at ROWE. If ROWE is not currently under contract with the City, who, if anyone, is managing and responding to messages left at this number In addition, the voice mailbox instructs residents with questions about restoration to call the City Hall Street Maintenance Department at 810-766-7343, ext. 2. Is this the correct number for inquiries about restoration If so, we request that the City directly post this number on its website.

- Email The City's GetTheLeadOut page includes a link to a contact email of GetTheLeadOut@cityofflint.com. Please confirm whether this account is being checked on a regular basis by a City staff member, and if so, how frequently the inbox is being checked and messages responded to.

- pdating website information The City's GetTheLeadOut page is unclear about whether the City is still accepting consent forms. The page says both that the deadline was extended to July 23, 2021, and that " ou can still have your service line checked for lead by submitting a consent form." This information is ambiguous as to whether residents may still submit consent forms to join the program. As the City has agreed, there are, at minimum, a specific set of addresses that still need outreach from the City and thus may join the program by submitting their consent forms. Other than those specific addresses, Plaintiffs are unclear as to whether the City is still accepting consent forms. We request that the City update the website to provide up-to-date

information to the public.

Regards,

Sarah

SARAH C. TALL  AN  SHE/HER

en or Attorney

NATURAL RESOURCES DEFENSE COUNCIL

1152 15TH STREET NW, SUITE 300

WASHINGTON, DC 20005

T 312.651.  1

_____@_____._____

AD  ITTED ONL  IN ILLINOIS  SUPER  ISION   A  E   ER OF THE D.C.  AR

--

**William Kim,** Assistant City Attorney
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
(810)237-2079



# Exhibit 46

PCA-233

| From: | Joseph Kuptz |
|---|---|
| To: | Rolnick, Addie |
| Cc: | William Kim; Tallman, Sarah; Calero, Melanie; Vandal, Nicole; Bonsitu Kitaba; Kuhl, Richard (AG); Gambill, Nathan (AG); Clyde_d_ards |
| Subject: | Re: Concerned Pastors for Social Action v  Khouri |
| Date: | Sunday, April 30, 2023  :08:12 PM |
| ttac  me  t : | Flint Priority   utreach addresses list   nactive Water Account  ls  |

Addie - in supplement to the below, please find attached a list of addresses where consent was obtained, but no active water account exists and thus S   /S    cannot be conducted.

Thank-you.


Joe


**On Fri, Apr 28, 2023 at 8:02 PM Joseph Kuptz <jkuptz@cityofflint.com> wrote:**

Addie - in response to your email of April 25th

- the attached spreadsheet "202 -0 -2    emaining Outreach.xlsx" represents, as of 0 /16/202 , all work orders that were in     C's inbox in City Works that still needed some sort of outreach. 67  of the addresses are from the list that we discussed on the call and were mistakenly excluded because at one point they did not have active water accounts
- "2022-10-2  Outreach attempts-updated.xlsx" - this is the outreach spreadsheet that was previously sent as part of the 10/2022 monthly reporting. Those addresses highlighted in green 70 of  2   do not have a weekend visit. Those 70 addresses will be added as outreach work orders for    C
- "2022-12-1  Outreach attempts-updated.xlsx" - this si the outreach spreadsheet that was previously sent as part of the 12/2022 monthly reporting.  7 have since been completed and 5 were declinations.  A number of these have since been updated in City Works. Those highlighted in green  28 of 10    still require outreach. Those 28 addresses will be added as outreach work orders for    C
- sample images of door hangers left at five addresses where the resident was not home at the time of the scheduled S   /S
- call log of advance notice phone calls, log of add'l rescheduling outreach and log of requests from residents to reschedule  and
- copy of "restoration complete" door hanger.

 n addition, per your request, as of the end of the previous reporting week, there were eight crews conducting outreach activity. This was double the number of crews      performing outreach the prior week. As you will note from the 0 /26 weekly report, this enhanced outreach effort resulted in 2 7 first and second attempts and    5 final attempts at outreach. Mostly all of the addresses on the 202 -0 -2   emaining Outreach.xlsx spreadsheet have been completed.

Thank-you.


Joe


**On Tue, Apr 25, 2023 at 5:09 PM Rolnick, Addie <ARolnick@nrdc.org> wrote:**

Joe,

I am writing to follow up on our meeting yesterday concerning the City's continuing violations of the Agreement. Based on our conversation, we've summarized our understanding of the City's compliance below. <u>Please let us know if anything in the below summary is inaccurate.</u> <u>Please also provide the requested information in writing as soon as possible, and by no later than this Friday, April 28.</u>

### I      Outreach

The City confirmed that it did not complete outreach to all homes on the 2022 Replacement Eligible Homes List by March 1, as required by the Court's February order. See ECF No. 258 at 19. The City and Rowe's representatives also stated that the City and Rowe incorrectly instructed Lakeshore       to complete outreach at certain homes on the 2022 Replacement Eligible Homes List (those without current active water accounts.) Because of this, the City has determined that it has remaining outreach obligations to 674 homes. The City and Rowe shared that they have not given Lakeshore a deadline to finish outreach at these homes and were unable to provide an estimate of when this outreach would be completed. The City was also unable to answer questions about the specific resources it is putting towards completing this overdue outreach work. <u>Please confirm in writing how many crews are currently performing outreach and whether the number of crews has changed since the City missed the March 1 outreach deadline.</u>

The City also agreed to provide the following information to Plaintiffs regarding the City's outreach efforts:

1. An Excel spreadsheet listing the 674 homes where the City is instructing Lakeshore to complete outreach.
2. An Excel spreadsheet listing any homes on the 2022 Replacement Eligible Homes List where the City is not instructing Lakeshore to complete outreach because the City has information that the home is either demolished or is on a list of homes that are going to be demolished.
3. An Excel spreadsheet listing the homes where the resident submitted a consent form, but the City has not yet scheduled an excavation because the resident does not have a current active water account.

### II      Restoration

The City confirmed that it is "unlikely" to meet its May 1 deadline to identify the remaining scope of restoration work. See ECF No. 258 at 16. While the City and Rowe's representatives shared that the City has completed close to 6,000 visual inspections (2,000 of which were performed last fall and did not comply with the terms of the Court's February order), they also shared that the City does not yet know the total number of homes that will require visual inspections to confirm their restoration status because the City lacks a contemporaneous record of restoration. Rowe's representative stated that there may be as many as 16,000 total homes requiring a visual inspection.

The City also shared that it intends to share reporting on its visual inspections to date in the monthly report due this Friday, April 28, and that this reporting will be in the format required by the Court's order. See ECF No. 258 at 24-25.

III     Outstanding Information Requests

As explained in Plaintiffs' April 12 letter (attached), the City's responses to a number of Plaintiffs' information requests are weeks overdue. Please respond to the information requests listed on pages 4-5 of Plaintiffs' letter as soon as possible.

Regards,

Addie

ADELINE ROLNICK

Attorney

NATURAL RESOURCES DEFENSE COUNCIL

1152 15TH STREET NW, SUITE 300

WASHINGTON, DC 20005

T 202.513.6240
AROLNICK@NRDC.ORG
PRONOUNS: SHE/HER

NRDC.ORG

PCA-236

From: Rolnick, Addie
Sent: Wednesday, April 12, 2023 4:55 PM
To: Joseph Kuptz <jkuptz@cityofflint.com>; William Kim <wkim@cityofflint.com>; Clyde Edwards <cedwards@cityofflint.com>
Cc: Tallman, Sarah <stallman@nrdc.org>; Calero, Melanie <mcalero@nrdc.org>; Vandal, Nicole <nvandal@nrdc.org>; Bonsitu Kitaba <bkitaba@aclumich.org>; Kuhl, Richard (AG) <KuhlR@michigan.gov>; Gambill, Nathan (AG) <GambillN@michigan.gov>
Subject: Concerned Pastors for Social Action v. Khouri

Joe, Bill, and Clyde,

Please see the attached letter. Plaintiffs are available to discuss these issues at the following times (all EST):

Thursday, April 20: 9:00 am – 1:00 pm, 4:00 pm – 5:00pm

Friday, April 21: 9:00 am – 1:00 pm, 3:00 pm – 5:00 pm

Monday, April 24: 11:00 am – 1:00 pm, 2:00 pm – 4:00 pm

Regards,

Addie

ADELINE ROLNICK

Attorney

NATURAL RESOURCES DEFENSE COUNCIL

1152 15TH STREET NW, SUITE 300

WASHINGTON, DC 20005

T 202.513.6240
AROLNICK@NRDC.ORG
PRONOUNS: SHE/HER

NRDC.ORG

--
**Joseph N. Kuptz, Assistant City Attorney**
**City of Flint, Department of Law**
**1101 S. Saginaw St., 3rd Floor**
**Flint, MI 48502**
**(810) 237-2085**

--
**Joseph N. Kuptz, Assistant City Attorney**
**City of Flint, Department of Law**
**1101 S. Saginaw St., 3rd Floor**
**Flint, MI 48502**
**(810) 237-2085**

# Exhibit 47

PCA-239



# City of Flint

## Department of Law

TO: **Counsel of Record,** *Concerned Pastors et al v Khouri et al*
FROM: **Joseph N. Kuptz, Assistant City Attorney**
RE: **Quarterly Status Report**
DATE: **February 28, 2023**

Pursuant to Paragraph 117(c) of the Settlement Agreement, the City provides the following report, covering the period of November 15, 2022 to February 14, 2023:

| Paragraph Reference/Description | Report |
|---|---|
| ¶117(c)(i). The total number of households for which a service line has been replaced since the Effective Date (3/28/2017); | 9,558 |
| ¶117(c)(ii). The number of households for which excavation was conducted or a service line was replaced, as described in Paragraph 10, during the Reporting Period, and for each household: (1) the address; (2) the material(s) of the service line confirmed or discovered; (3) whether any portion of the service line was replaced; (4) if any portion of the service line was replaced, a description of which portion was replaced (i.e., both, public only, or private only); and (5) if any portion of the service line was replaced, whether proper installation of a Faucet Filter after replacement was verified; | See attached: 2023-2-14 Fast Start Exploration Status.xlsx |
| ¶117(c)(iii). The number of households for which a service line replacement was refused, as described in Paragraph 15.b, during the Reporting Period, the addresses of those households, and the service line material(s) confirmed or discovered at those households; and | See attached: 2023-2-14 Declinations.xlsx |
| ¶117(c)(iv). The total amount of monies reimbursed to or paid on behalf of the City pursuant to Paragraph 23 as of the last day of the Reporting Period in the following categories: (1) WIIN monies and related State Matching Funds and (2) monies other than in (1). | (1) $40,000,000.00 (2) $52,688,732.00 |
| ¶117(c)(v). A list of all requests for reimbursement or payment on behalf of the City under Paragraph 23 that have been denied in part or in full by the Michigan Department of Environmental Quality during the Reporting Period, including the amount requested, the amount denied, and the reason for each denial. | Reimbursement #RR21 Date: 01/19/2023 Amount Requested by LGC: $298,871.22 Amount Denied: $16,436.51 Reason for Denial: The amount was withheld due to addresses excavated in archaeology zones. Funds will be released by EGLE |

# City of Flint

## Department of Law

| Paragraph Reference/Description | Report |
|---|---|
| | after the archaeology report is received. |
| ¶117(c)(vi). Copies of any financial or performance auditing results obtained pursuant to Paragraph 25 or relating to the City's use of the Allocated or Reserve Monies. | None. |
| ¶117(d)(i) – The results of all tap water monitoring conducted at households served by the Flint Water System from November, 2022 through February 14, 2023 | Data available at: https://www.michigan.gov/flintwater/sampling/residential-and-business-sampling<br><br>Also, see attached:<br><br>1313 Cleveland Ave (1)<br><br>2937 Concord 2023 (1) |
| ¶117(e)(i). The results of any water quality parameter monitoring conducted for the Flint Water System during the Reporting Period; | See attached:<br><br>November 2022 MOR New Version 2.0.xls<br><br>December 2022 MOR.xls<br><br>EWDM 11-17-22 to 11-23-22<br><br>EWDM 11-24-22 to 11-30-22<br><br>EWDM 12-01-22 to 12-07-22<br><br>EWDM 12-08-22 to 12-14-22<br><br>EWDM 12-15-22 to 12-21-22<br><br>EWDM 12-22-22 to 12-28-22 |
| ¶117(e)(ii).  Any formal communications Government Parties submitted to or received from EPA pursuant to the EPA Order during the Reporting Period. | See SOM Report. |

# City of Flint

## Department of Law

| Paragraph Reference/Description | Report |
|---|---|
| **02/12/2019 Stipulation Reporting** | |
| ¶6(i), (ii) | See attached:<br><br>2023-2-14 Fast Start Exploration Status.xlsx |
| ¶6(iii) - the total amount of monies approved for payment by the City for excavation and service line replacement work | $282,434.71 |
| ¶6(iv) - the total amount of monies approved for payment by the City for program-management and administrative work | $103,856.60 |
| ¶6(v) - (1) the date and recipient address of any letter sent pursuant to Paragraph 14 | N/A |
| ¶7 – Bid documents | N/A |
| **01/19/2023 Stipulation Reporting** | |
| ¶14(a) – the total number of addresses where City has performed final consent attempt, as req. by ¶15 of 03/2019 Order; total number of addresses where City obtained consent to work | 308 final consent attempts<br><br>128 consents obtained |
| ¶14(b) – the number of service line replacements City can perform based on current total number of parts in inventory | Approximately 670 |
| ¶15(a) – the number of service line replacements City can perform based on current total number of parts in inventory | Approximately 670 |
| ¶15(b) – dates or projected dates when City is scheduled to receive add'l service line replacement materials | None scheduled. |
| ¶15(c) – description of the City's efforts to obtain add'l required materials | N/A |
| Restoration Reporting – 2022 Completed Restoration | See attached:<br><br>Flint VII SLE-SLR Sept_Restoration Invoice 01<br><br>Flint Fast Start Phase VII SLE-SLR Invoice 02<br><br>Total Invoice 3_12-15-22<br><br>Invoice FINAL – PA4 |