**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| Concerned Pastors for Social Action, et al., <br>     Plaintiffs, | Case No. 16-10277 <br> Hon. David M. Lawson |
| v. | |
| Nick A. Khouri, et al., <br>     Defendants. <br> _____/ | |

## CITY OF FLINT'S AND NON-PARTY MAYOR SHELDON NEELEY'S RESPONSE TO PLAINTIFFS' MOTION FOR CONTEMPT

### ORAL ARGUMENT REQUESTED

NOW COME the Defendant City of Flint (the "City") and the non-party Mayor Sheldon Neeley (in his official capacity) (the "Mayor") and for their response to Plaintiffs' Motion for Contempt state as follows:

Plaintiffs have filed the instant Motion for Contempt seeking to hold the City in contempt of court for alleged violations of the previous orders of this Court. Plaintiffs also seek to hold the Mayor in contempt of Court for the violations allegedly committed by the City.

Specifically, Plaintiffs assert that the City (1) has failed to determine the remaining scope of restoration work by the court-ordered deadline of May 1, 2023, (2) failed to comply with monthly restoration reporting requirements, and (3) failed to complete required outreach to all eligible addresses.

Plaintiffs proposed order, submitted with its motion, seeks a fine in the amount of $500.00 per day from the date of entry until the City complies with the court-ordered requirements outlined in the preceding paragraph. Plaintiffs also seek a judicial

amendment of the original Settlement Agreement entered in this matter to allow them to recover litigation costs associated with its future enforcement.

However, as of the filing date of this response, the City has in fact (1) nearly completed a determination of the scope of restoration work, and (2) completed all outreach to all eligible addresses, as required by the Court's orders. Therefore, any order that could be entered by this Court based on Plaintiffs' Motion for Contempt will shortly be fully moot. Furthermore, any judicial amendment of the original Settlement Agreement is legally impermissible.

Finally, any effort to have the non-party Mayor held in contempt of Court for the City's alleged non-compliance will be moot, is speculative and duplicative of the relief already requested from the City.

Wherefore, for the reasons stated herein and in the attached brief, the City of Flint and the non-party Mayor Sheldon Neeley respectfully request that this Court deny Plaintiffs' motion in its entirety.

Dated: June 14, 2023

Respectfully submitted,

/s/ Joseph N. Kuptz
Joseph N. Kuptz (P-68623)
City of Flint Law Department
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
jkuptz@cityofflint.com
P-68623

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Concerned Pastors for Social Action, et al.,       Case No. 16-10277
    Plaintiffs,      Hon. David M. Lawson

v.

Nick A. Khouri, et al.,
    Defendants.
_____/

**BRIEF IN SUPPORT OF CITY OF FLINT'S AND NON-PARTY MAYOR SHELDON NEELEY'S RESPONSE TO PLAINTIFFS' MOTION FOR CONTEMPT**

i

## Table of Contents

Statement of the Issues Presented ................................................................................. iii

Table of Authorities ......................................................................................................... iv

I.   Introduction ............................................................................................................ 1

II.   Procedural and Factual Background ...................................................................... 1

III.   Argument ................................................................................................................ 4

    A.   Issues .............................................................................................................. 4

    B.   Standard of Review ....................................................................................... 4

    C.   Mayor Sheldon Neeley, a Non-Party To This Litigation, Is Not Properly the Subject of This Contempt Motion ............................................................... 5

    D.   The Modification of the Original Settlement Agreement to Allow Plaintiffs to Recover Litigation Costs is Inappropriate ................................................ 7

    E.   The City Has Completed Required Outreach at All Homes on the 2022 Replacement Eligible Homes List ............................................................... 9

    F.   The City Has Completed the Vast Majority of Restoration Status Site Visits For All Addresses on the 2022 Replacement Eligible Homes List ................. 10

IV.   Conclusion ............................................................................................................ 11

## STATEMENT OF THE ISSUES PRESENTED

1. Should the City of Flint be held in civil contempt of court where the alleged items of non-compliance with this Court's previously issued orders have been or will be completed by the hearing date on Plaintiffs' Motion?

2. Should the non-party Mayor Sheldon Neeley (in his official capacity) be held in civil contempt of court where (1) the alleged items of non-compliance with this Court's previously issued orders have been or will be completed by the hearing date on Plaintiffs' Motion, and (2) the relief requested as to the non-party Mayor is duplicative of that requested of the City?

3. Should the bargained for and mutually agreed-upon Settlement Agreement previously entered in this case be modified to allow Plaintiffs to recover ongoing litigation costs?

# **TABLE OF AUTHORITIES**

**Cases**

*Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) ............................... 8

*City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 198, 702 N.W.2d 106, 113 (2005) ....................................................................... 8

*Cogent Sols. Grp., LLC v. Hyalogic, LLC*, 712 F.3d 305, 309 (6th Cir. 2013) ................. 8

*Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996) ............................... 6

*Gascho v Global Fitness Holdings, LLC*, 875 F.3d 795, 799 (6th Cir. 2017) .................... 5

*Gnesys, Inc v Greene*, 437 F.3d 482, 493 (6th Cir. 2005) ............................... 4

*Hidrofiltros, de Mexico, S.A. de C.V. v. Rexair, Inc.*, 355 F.3d 927, 930 (6th Cir. 2004) .. 9

*Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985) ........................... 5

*Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) ....................... 5

*Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 491, 703 N.W.2d 23, 43 (2005) ............................. 8

*Sault Ste. Marie Tribe of Chippewa Indians v. Granholm*, 475 F.3d 805, 811 (6th Cir. 2007) ............................................................................... 8

*Universal Settlements Int'l, Inc. v. Nat'l Viatical, Inc.*, 568 F. App'x 398, 404 (6th Cir. 2014) ............................................................................... 9

*Wyandotte Elec. Supply Co. v. Elec. Tech. Sys.*, 499 Mich. 127, 144, 881 N.W.2d 95, 103 (2016) ........................................................................... 8

I. **INTRODUCTION**

Plaintiffs have filed a Motion for Contempt, seeking to hold the City of Flint (the "City") and non-party Mayor Sheldon Neeley (in his official capacity) (the "Mayor") in contempt of court for alleged violations of this Court's previously issued order.

Specifically, Plaintiffs contend that the City has failed to (1) determine, by May 1, 2023, which City homes have remaining property restoration work; (2) provide timely, accurate, and complete monthly restoration reporting, and (3) conduct mail and in-person outreach to residents to attempt to obtain their permission to conduct service line excavations (and where appropriate, replacement).

Plaintiffs furthermore contend that the Mayor, even though the relief requested of him is duplicative to that requested from the City, and is a non-party to this litigation, should be held in contempt for "failing to ensure the City's compliance with the Agreement."

As will be shown below, the Plaintiffs concerns raised in their Motion for Contempt are now or will be either moot, are duplicative, or wholly lack merit.

Therefore, for the reasons stated herein, the City and the Mayor respectfully request that this Court deny the Plaintiffs' Motion for Contempt in its entirety.

II. **PROCEDURAL AND FACTUAL BACKGROUND**

The Court is familiar with the history of this case and the Settlement Agreement that resolved it (Dkt 147-1, executed March, 2017). This case arose out of the Flint Water Crisis – the City of Flint's use of the Flint River as a drinking water source from April 2014 through October 2015, initiated while the City was under the control of state-appointed Emergency Financial Managers, and done with the ongoing approval of multiple outside

drinking water consultants and regulators. As the main focus of the Settlement Agreement that resolved this case, the City agreed to excavate its residential service lines and replace any identified as lead or galvanized steel, with funding provided by the State of Michigan.

To date, the City's service line excavation and replacement efforts have gone through six completed "phases" and are currently in Phase VII, the final phase of the program. As of May 14, 2023, the City has expended approximately $94,029,779 on service line excavations, replacements and restorations.

Asserting that the City Defendants have failed to comply with the terms of the Settlement Agreement and subsequent orders (specifically, Order Granting Plaintiffs' Fifth Motion to Enforce Settlement Agreement, Dkt 258), Plaintiffs filed their Motion for Contempt on May 26, 2023 and this Court set hearing on that motion for June 30, 2023 at 9:00AM.

Plaintiffs in their Motion for Contempt ignore or gloss over the substantial progress made by the City of Flint since the parties were last before the Court:

- Completed outreach activities for all 31,578 addresses on the 2022 Replacement Eligible Homes List;
- Secured an inventory of materials that is anticipated to be sufficient to complete all service line excavations and replacements;
- Performed 326 service line excavations and replacements (leaving approximately 90 to complete, under the terms of the Settlement Agreement and the amendments thereto);

- Almost fully investigated the extent of restoration work needed by conducting approximately 26,520 in-person site visits to determine restoration status (leaving about 500 remaining);
- Obtained supplies to begin and maintain restoration activities;
- Finished numerous restorations (which will only continue to increase, given the reallocation of work crews from service line excavation and replacement to restoration):
    - 260 soft surface (dirt and grass);
    - 70 concrete (sidewalks, driveways and roads);
    - 85 HMA (asphalt – driveways and roads);

Given this progress, the City fully anticipates completing service line excavation and replacement activities by the court-ordered August 1, 2023 deadline (potentially even sooner).

Throughout all of these activities, the City has taken the Plaintiffs' concerns seriously and met with them on multiple occasions since the last hearing in this matter[1].

All of these efforts show that, contrary to Plaintiffs' assertions, the City has not been "sitting back and doing nothing." The opposite is true – the City has been actively, intentionally and diligently moving forward with the task at hand. The City remains fully committed to excavation and, if appropriate, replacement of lead or galvanized steel service lines at every eligible and cooperative address in the City, along with subsequent restoration of the affected property.

---

[1] February 16, 2023; March 17, 2023; April 24, 2023; May 12, 2023 and May 18, 2023.

### III. ARGUMENT

**A.  ISSUES**

Plaintiffs contend that the City has failed to (1) determine, by May 1, 2023, which City homes have remaining property restoration work; (2) provide timely, accurate, and complete monthly restoration reporting, and (3) conduct mail and in-person outreach to residents to attempt to obtain their permission to conduct service line excavations (and where appropriate, replacement).

Plaintiffs furthermore contend that the Mayor, even though a non-party to this litigation, should be held in contempt for "failing to ensure the City's compliance with the Agreement."

As will be shown below, the Plaintiffs concerns raised in their Motion for Contempt are now either or will be moot, duplicative or wholly lack merit.

**B.  STANDARD OF REVIEW**

"A party may be found in contempt if the petitioner shows that the respondent 'violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.' In a contempt proceeding, 'the basic proposition [is] that all orders and judgments of courts must be complied with promptly.'" *Gnesys, Inc v Greene*, 437 F.3d 482, 493 (6th Cir. 2005) (internal citations omitted).

The same court also stated "[i]n a civil contempt proceeding, the burden is on the petitioner to 'prove by clear and convincing evidence that the respondent violated the court's prior order.' The standard is whether 'the defendants took all reasonable steps within their power to comply with the court's order,' which includes whether the

defendants have 'marshal[ed] their own resources, assert[ed] their high authority, and demand[ed] the results needed from subordinate persons and agencies in order to effectuate the course of action required by the [court's order].'" *Id.* (internal citations omitted).

As noted by Plaintiffs, contempt sanctions are "serious" and must be used "with caution," as measures "last resort, not first resort." *Gascho v Global Fitness Holdings, LLC*, 875 F.3d 795, 799 (6th Cir. 2017).

C. **MAYOR SHELDON NEELEY, A NON-PARTY TO THIS LITIGATION, IS NOT PROPERLY THE SUBJECT OF THIS CONTEMPT MOTION**

Plaintiffs assert that, as Flint's chief executive, Mayor Sheldon Neeley should be found in civil contempt of court for "failing to ensure the City's compliance with the Agreement."

As an initial matter, as will be noted in subsequent sections of this Response, the City is or will be in full compliance with the alleged violations of the Agreement by the hearing date on Plaintiffs' Motion.

Second, any effort to hold both the City itself and Mayor Neeley in contempt of court is duplicative. An official-capacity suit (or, analogously, a civil contempt motion) is merely an alternative method of pleading an action against the governmental entity that employs a government official. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985) ("An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) ("An official-capacity claim against a person is essentially a claim against the municipality"). As such, a claim against both a municipality and a municipal official in

his or her official capacity is duplicative. Dismissal is appropriate for such duplicative claims. *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996). In Doe, the Sixth Circuit, as a matter of law, upheld a District Court's dismissal of official capacity claims against various officials because their governmental entity was also named as a defendant. *Id.*

Third, Plaintiffs make bare allegations that because "Mayor Neeley nonetheless 'failed to take appropriate action to ensure' compliance with this Court's orders, he should be held in contempt." *Plaintiffs' Motion for Contempt,* at pp. 18-19. They also state, among other allegations that "[t]he Mayor could have exercised his authority to review the City's contracts with its contractors to ensure they were sufficient to meet the City's obligations," etc. *Id.* at p. 19. These statements are vague, unsupported by any evidence and speculative. They also have the benefit of 20/20 hindsight. The Mayor, with the review and approval of City Council, did cause the City to employ a project manager and contractor on this project in 2022. A number of the delays experienced by the City in completion of this project (material and manpower shortages, inclement weather, resident scheduling delays, etc.) have been well-documented in prior briefings to this Court by the City. Plaintiffs have not pointed to any valid and specific actions or inactions by the Mayor, who should not be held in civil contempt for these intervening or superseding causes.

Therefore, the inclusion of the Mayor, a non-party to the instant lawsuit, and the relief requested of him, is merely duplicative of the relief requested from the City and is based on speculative reasoning. Naming him, for the first time in this litigation is thus legally dubious at best, does nothing additional to further the effectuation of the Settlement Agreement and its amendments, and any requests for relief sought against him should be denied for the same reasons as set forth in *Doe, supra.*

    **D.**    **THE MODIFICATION OF THE ORIGINAL SETTLEMENT AGREEMENT TO ALLOW PLAINTIFFS TO RECOVER LITIGATION COSTS IS INAPPROPRIATE**

Plaintiffs, as part of the instant Motion, seek entry of an order modifying Paragraph 124 of the original Settlement Agreement entered in this matter. ECF No. 147-1. That paragraph provides as follows (to provide context, Paragraph 123 is also provided here):

> 123. Within 60 days of the Effective Date, State Parties will pay Plaintiffs eight hundred ninety five thousand dollars ($895,000) in litigation costs (including attorneys' fees and experts costs), in accord with instructions provided by Plaintiffs' counsel.
>
> 124. This payment shall fully and finally release, discharge, and satisfy any claim by Plaintiffs to litigation costs (including attorneys' fees and expert costs) incurred in this Case and incurred in enforcing this Agreement through the Termination Date.

The payment as outlined above was made by the State Parties to this lawsuit. However, Plaintiffs now seek to modify that mutually agreed upon provision to allow them to "recover litigation costs, including attorneys' fees and expert costs, for work completed on or after the date of this [proposed] Order that is necessary to enforce the Agreement or other order of this Court against the City Defendants." *See* Plaintiffs' [Proposed] Order Granting Plaintiffs' Motion for Contempt.

For several reasons, this relief requested by Plaintiffs is wholly inappropriate. First, the phrase "that is necessary to enforce the Agreement or other order of this Court against the City Defendants" is vague, ambiguous and ripe for protracted future argument. Second, as noted previously, the City is or will be in full compliance with the orders issued by this Court – all outreach has been completed as required and the City has completed a determination of the full scope of restoration.

Third, the reformation of the Settlement Agreement entered into over six years ago is not appropriate at this point under well-settled law - "[i]t is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (internal citation omitted). However, "[t]he court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Id.* "A settlement agreement is a type of contract and is governed 'by reference to state substantive law governing contracts generally.'" *Cogent Sols. Grp., LLC v. Hyalogic, LLC*, 712 F.3d 305, 309 (6th Cir. 2013) (internal citations omitted). Similarly, a consent decree is a binding contract. *Sault Ste. Marie Tribe of Chippewa Indians v. Granholm*, 475 F.3d 805, 811 (6th Cir. 2007). Because it is a contract, a consent decree formed in Michigan is subject to Michigan contract law.

Under Michigan contract law, the "goal in contract interpretation is to give effect to the intent of the parties, **to be determined first and foremost by the plain and unambiguous language of the contract itself**." *Wyandotte Elec. Supply Co. v. Elec. Tech. Sys.*, 499 Mich. 127, 144, 881 N.W.2d 95, 103 (2016) (emphasis added). Clear and unambiguous language will be construed according to its "plain sense and meaning." *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 198, 702 N.W.2d 106, 113 (2005) (*citing New Amsterdam Cas. Co. v. Sokolowski*, 374 Mich. 340, 342; 132 N.W.2d 66 (1965). "[U]nambiguous contracts . . . are to be enforced as written unless a contractual provision violates law or public policy." *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 491, 703 N.W.2d 23, 43 (2005).

Courts will not create ambiguity where the contract terms are clear. *City of Grosse Pointe Park*, 473 Mich., at 198. If the terms are unambiguous, contradictory inferences

are essentially irrelevant. *Hidrofiltros, de Mexico, S.A. de C.V. v. Rexair, Inc.*, 355 F.3d 927, 930 (6th Cir. 2004) (*citing Pierson Sand & Gravel, Inc. v. Pierson Twp.*, 851 F. Supp. 850, 858 (W.D. Mich. 1994), aff'd, 89 F.3d 835 (6th Cir. 1996)). The Sixth Circuit has recognized that "courts have 'very limited authority to alter the terms of any consent judgment . . . . The only facts and circumstances that [the Sixth Circuit] has ruled warrant relief from a consent judgment are some showing of the existence of fraud or a mutual mistake of fact.'" *Universal Settlements Int'l, Inc. v. Nat'l Viatical, Inc.*, 568 F. App'x 398, 404 (6th Cir. 2014) (*citing Mallory v. Eyrich*, 922 F.2d 1273, 1280 (6th Cir. 1991)).

### E. THE CITY HAS COMPLETED REQUIRED OUTREACH AT ALL HOMES ON THE 2022 REPLACEMENT ELIGIBLE HOMES LIST

Next, Plaintiffs assert that the City has failed to complete outreach at all homes on the 2022 Replacement Eligible Homes List. This required outreach includes a mailing and at least two in-person contacts, at least one of which must occur after 5 p.m. or on a weekend.

The City contends that all outreach activities have been completed for the 31,578 addresses on the 2022 Replacement Eligible Homes List, and compliant reporting provided to Plaintiffs.

In support of their contention that the City has not completed outreach, Plaintiffs attached to their Motion, as Exhibit E, the Declaration of Nicole Vandal. That declaration indicates that Ms. Vandal "conducted a limited analysis" of certain compliance reporting provided to Plaintiffs by the City and discovered that 16 eligible addresses lacked all outreach attempts. Those 16 addresses were not identified. However, the City subsequently requested and was provided with a list of those 16 addresses.

Upon investigation by the City, it was determined that of those 16 addresses, 9 were abandoned, 3 were vacant lots and 1 had already had service line excavation work completed on March 24, 2023.

Subsequently, on June 13, 2023, Plaintiffs provided an additional list of 308 addresses at which they allege outreach was incomplete.

To avoid a protracted and time-consuming dispute with Plaintiffs, the City (either itself or through its contractor) has begun the process of completing the alleged missing outreach at those addresses. It is anticipated that those outreach activities will be complete by the hearing scheduled on Plaintiffs' Motion.

**F.   THE CITY HAS COMPLETED THE VAST MAJORITY OF RESTORATION STATUS SITE VISITS FOR ALL ADDRESSES ON THE 2022 REPLACEMENT ELIGIBLE HOMES LIST**

Finally, Plaintiffs state that the City did not complete a determination of the restoration status of all addresses on the 2022 Replacement Eligible Homes List by the deadline of May 1, 2023. The City admits that it did not complete this work by the stated deadline. Part of the delay in completing that determination was due to inclement weather and ground cover in the early months of 2023, which precluded the ability to visually observe lawn, road, sidewalk and driveway status.

However, as of June 14, 2023, the City has completed approximately 26,520 in-person visual inspections of addresses that did not already have a contemporaneous record of restoration (leaving about 500 to complete). This included sending two-person teams to visually inspect each of those addresses at a total cost to the City of approximately $1,458,200. It is anticipated that site visits will be fully complete by June 21, 2023 and compliant reporting will be provided to Plaintiffs by June 26, 2023.

## IV. CONCLUSION

Wherefore, for the reasons stated, the City Defendants respectfully request that this Court deny Plaintiffs' motion in its entirety.

Respectfully submitted,

Dated: June 14, 2023

/s/ Joseph N. Kuptz
Joseph N. Kuptz (P-68623)
City of Flint Law Department
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
jkuptz@cityofflint.com
P-68623

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2023, I electronically filed the foregoing pleadings using the ECF system which will send notification of such filing to the counsels of record.

Respectfully submitted,

Dated: June 14, 2023

/s/ Joseph N. Kuptz
Joseph N. Kuptz (P-68623)
City of Flint Law Department
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
jkuptz@cityofflint.com
P-68623