# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CONCERNED PASTORS FOR SOCIAL
ACTION, et al.,

        Plaintiffs,

v.

NICK A. KHOURI, et al.,

        Defendants.

                                  /

Case No. 16-10277

Hon. David M. Lawson

**PLAINTIFFS' POST-HEARING BRIEF IN SUPPORT OF
MOTION FOR CONTEMPT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ................................................................................................................ 2

I.      The City violated and is still violating the Court's
February 2023 Order ........................................................................................ 2

        A.      The City concedes that it missed, for the fourth time, a
Court-ordered deadline to complete required outreach to Flint
residents ................................................................................................ 2

        B.      It is undisputed that the City failed to provide compliant
restoration reporting and failed to identify where restoration
work is still required by the Court-ordered May 1 deadline ................ 3

        C.      Plaintiffs established by clear and convincing evidence that
the City continues to violate the requirement to identify the
full scope of remaining restoration work ............................................. 6

II.     The City and Mayor did not make all reasonable efforts to comply
with the Court's February 2023 Order ............................................................. 9

        A.      The City produced no evidence showing it took all
reasonable steps to avoid missing the outreach deadline ................... 10

        B.      The evidence shows the City's lack of efforts to avoid
its restoration violations ...................................................................... 10

III.   Sanctions are appropriate to incentivize respect for this Court's
orders and ensure Flint residents obtain the benefits the Settlement
Agreement guarantees them ........................................................................... 14

CONCLUSION ........................................................................................................... 15

## TABLE OF AUTHORITIES

### Cases

*Elec. Workers Pension Tr. Fund of Loc. Union # 58*
*v. Gary's Elec. Serv. Co.*,
    340 F.3d 373 (6th Cir. 2003) ..................................................1, 2, 9, 10, 12, 13

*Glover v. Johnson*,
    934 F.2d 703 (6th Cir. 1991)......................................................................12

### Federal Rules

Federal Rule of Evidence 702......................................................................9

## INTRODUCTION

The City of Flint's persistent and recurring failures to comply with this Court's orders have delayed the service line replacement program by years. Most recently, the City missed, for the fourth time, a deadline to complete required outreach, denying Flint residents timely information about how to have their pipes checked for lead and replaced. And the evidence shows that the City has still not finished identifying *where* it needs to repair the yards, driveways, and sidewalks it has excavated—a step that must be completed before setting a new deadline for the City's overdue restoration work.

The evidence establishing these violations is not disputed. And most troublingly, unless something changes, the City's business-as-usual pattern of heedlessly violating specific deadlines set by this Court seems likely to continue. Even now, faced with a contempt motion, the City has not shown that it took all reasonable steps to comply with the Court's February 2023 order. A contempt remedy is plainly needed as "an encouragement to comply" and to "enforce the message" that judicial orders must "be taken seriously." *Elec. Workers Pension Tr. Fund of Loc. Union # 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 385 (6th Cir. 2003).

# ARGUMENT

## I.   The City violated and is still violating the Court's February 2023 Order

Plaintiffs have met their burden to show by "clear and convincing evidence" that the City violated multiple "definite and specific order[s] of the court." *Elec. Workers Pension Tr. Fund*, 340 F.3d at 379 (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)).

### A.   The City concedes that it missed, for the fourth time, a Court-ordered deadline to complete required outreach to Flint residents

The City does not dispute that it failed to complete and report all required outreach to Flint residents by this Court's March 1 deadline. *See* Feb. 2023 Order 19, ECF No. 258, PageID.11690; Order Am. Settlement Agmt. (2019 Order) ¶ 6.iv, ECF No. 208, PageID.10349; Pls.' Ex. 64 (Pls.' Contempt App. (PCA) 171-72), ECF Nos. 260-7 & 260-8, PageID.11979-80 (City's acknowledgment that it still needed to complete outreach at over 600 homes as of late April). Indeed, the City stipulated that it did not provide documentation to Plaintiffs showing that it had completed all required outreach until June 22, nearly a month after Plaintiffs filed their contempt motion and nearly four months after the Court's deadline. Notice & Stip. 1-2, ECF No. 269, PageID.12767-68; *see also* Pls.' Ex. 57 (Decl. of Noah Attal ¶¶ 4 n.2, 13), ECF No. 266-1, PageID.12725, 12730-31 (as of May 20, City was still completing new consent attempts and had yet to complete required outreach to 306 homes).

2

This is the fourth court-ordered outreach deadline the City has violated. Settlement Agmt. (Agmt.) ¶ 15.b, ECF No. 147-1, PageID.7368 (ordering first deadline); Order Mod. Settlement Agmt. (2020 Order) ¶ 1, ECF No. 217, PageID.10409 (ordering second deadline); Order Mod. Settlement Agmt. (2022 Order) ¶ 1, ECF No. 237, PageID.11071 (ordering third deadline). Because of those violations, hundreds of people who live in Flint have waited years longer than they should have to receive important information about how to get their pipes checked for lead and replaced.

**B.     It is undisputed that the City failed to provide compliant restoration reporting and failed to identify where restoration work is still required by the Court-ordered May 1 deadline**

The City concedes that it did not meet the Court's May 1 deadline to identify where it still needs to complete property restoration. It simply ignores Plaintiffs' evidence that the City violated restoration reporting requirements. *See* City Resp. 10, ECF No. 264, PageID.12071; Pls.' Reply 2, ECF No. 266, PageID.12714.

After the City failed to keep records of where it completed property repairs, the Court ordered the City to follow a specific process to correct that gap, to complete that process by May 1, and to submit monthly cumulative restoration status reports to Plaintiffs. Pls.' 5th Mot. to Enforce 10, ECF No. 242, PageID.11107; Feb. 2023 Order 16, 23-26, PageID.11687, 11694-97. This remedy was necessary because the City could not commit to a revised deadline (it had

3

missed the first deadline) to finish repairing property damage to all excavated homes until it figured out *where* restoration work was needed and how much of it remained. Pls.' 5th Mot. to Enforce 11-12, PageID.11108-09; Feb. 2023 Order 16-17, PageID.11687-88.

Under this Court's February 2023 order, the City was required to document its progress by compiling and, every month, producing a comprehensive list of all previously excavated addresses sorted into several "restoration status" categories:

1. <u>Records show completed restoration:</u> The City has contemporaneous records showing completed property restoration;

2. <u>Records show restoration needed:</u> The City's records show that property restoration work is still needed, without the need for an in-person visual inspection;

3. <u>Visual inspection shows completed restoration:</u> The City does not have contemporaneous records regarding restoration status, conducted a visual inspection, and determined *no* further restoration is needed;

4. <u>Visual inspection shows restoration needed:</u> The City does not have contemporaneous records regarding restoration status, conducted a visual inspection, and determined further restoration is needed; or

5. <u>To be determined:</u> The City does not know whether further restoration is needed, and must conduct either further records review or a visual inspection to make that determination.

Feb. 2023 Order 24-25, PageID.11695-96. The Court further ordered the City to complete the process of identifying the restoration status of every excavated home by May 1. *Id*. at 16, PageID.11687. In short, the City had to remove any homes

4

listed in the "to be determined" category by identifying through records review or a visual inspection whether more work was needed at each home.[1]

It is undisputed that the City violated these requirements repeatedly. Plaintiffs' unrebutted evidence demonstrated that the City repeatedly violated requirements to report all restoration work completed in fall 2022 and spring 2023. *See* Pls.' Mot. Contempt 10-11, ECF No. 260, PageID.11744-45; Pls.' Reply 2, PageID.12714; Calero Decl. ¶¶ 6, 10-11, 15, ECF No. 260-2, PageID.11766-67, 11768-70, 11771-72; Pls.' Ex. 64 (PCA 132, 190-91), PageID.11940, 11998-99. And the City admits that it "did not meet" the Court's May 1 deadline to determine, for all excavated addresses, whether property restoration work was still needed. Tr. 11:10-13 (Kuptz); City Resp. 10, PageID.12071. Until the City identifies exactly how much restoration work remains, the parties cannot negotiate a deadline to complete restoration. Feb. 2023 Order 16-17, PageID.11687-88.

---

[1] The Court's February 2023 order did not explicitly require the City to include homes in category 2 above ("records show restoration needed") in the report due on May 1 identifying a restoration status for every excavated home. However, the City's June restoration report included a list of 805 addresses in category 2, for which the City's current contractor has kept records of excavations since fall 2022 and where restoration is still needed. *See* Tr. 14:4-15:1 (Kuptz). The City's categorization of these homes is consistent with the remedial purpose of the visual inspection process—to fill the City's restoration recordkeeping gaps—and with other restoration reporting terms, *see* Feb. 2023 Order 24, PageID.11695 (category (b)).

5

### C. Plaintiffs established by clear and convincing evidence that the City continues to violate the requirement to identify the full scope of remaining restoration work

While the City's counsel contends that the City has belatedly determined whether each excavated home still requires restoration, Plaintiffs' expert's undisputed analysis of the City's own reporting as of the hearing shows that the City's violations continue. As the testimony demonstrates, the City's June restoration reporting did not identify, for all excavated addresses, whether property repairs are needed. The City thus still remains out of compliance.[2]

Specifically, Noah Attal, Plaintiffs' expert, testified that the City's restoration report, dated June 22, 2023, omitted 704 addresses at which the City's own previous reporting showed that the City had excavated a service line. Tr. 29:7-13, 29:19-30:7, 65:24-66:13; *see generally* Pls.' Ex. 57 (Decl. of Noah Attal ¶¶ 15-20), PageID.12731-34. In other words, as of June 22, 2023, the City had dug up a service line at 704 homes for which the City has not reported, and apparently does not know, whether it still needs to complete property repairs. Mr. Attal's analysis was supported by reliable methodologies for compiling and analyzing large datasets. *See* Tr. 23:6-20; 30:21-32:15, 33:15-36:22, 39:11-48:17 (describing basis for his use of STATA software and process for analyzing the City's data through

---

[2] Whether or not the City is continuing to violate this Court's order, the City and Mayor should be held in contempt. *See* Pls.' Reply at 3-4, 5-7, PageID.12715-16, 12717-19.

6

geocoding and removing duplicates). And his testimony was unrebutted.

Plaintiffs also showed that the City is still violating the requirement that its monthly restoration reports be cumulative (so that they include all excavated addresses) and complete (so that they identify the restoration status of every excavated home). Feb. 2023 Order 24-25, PageID.11695-96. The City's June restoration report was missing at least 168 addresses that had appeared on the City's earlier restoration reports. *See* Tr. 50:2-51:7 (Attal). And as noted above, it was additionally missing 704 addresses for which the City previously reported an excavation. *See id.* at 29:19-25, 65:24-66:24 (Attal).

None of this evidence is disputed. The City did not challenge the admission of Mr. Attal's testimony. It did not challenge the reliability of his methodology. *See* Tr. 24:8-21. And it offered no evidence of its own to show that its June restoration report identified a restoration status for every excavated home.

To be sure, Jeff Markstrom, the City's witness, stated that he took "a quick look" at approximately 10 of the 704 addresses Mr. Attal identified as missing from the June restoration report and thought that some of those 10 homes "may" have had inactive water accounts or have been abandoned. Tr. 86:23-88:1. Mr. Markstrom conceded, however, that he did not know whether the addresses Mr. Attal identified had been excavated, or whether the City's restoration reports had identified restoration needs at those addresses. Tr. 125:10-23. He admitted that

7

some addresses where the City previously reported excavations did not appear on the June restoration report. Tr. 99:24-120:12, 121:18-124:24. And he testified that at least one address missing from the City's June restoration report had in fact been assigned to the City's contractor to perform work because it needed property repairs.[3] Tr. 87:15-19.

Mr. Markstrom's surmise that some homes may lack current active water accounts is irrelevant in any event. Even Mr. Markstrom himself conceded that a home with an inactive water account may be eligible for service line replacement (and property restoration), at least if the home is a currently vacant rental property. *See* Tr. 98:7-12. And more importantly, this Court's order required the City to complete property repairs at every excavated home without exception. 2022 Order ¶ 2, PageID.11071; *see also* Agmt. ¶¶ 11, 18, PageID.7365-66, 7370 (homes may be eligible for excavation without current active water account). The order contained no "inactive water account" exception.

As for whether any of these homes may be abandoned, no competent testimony established abandonment of any of these homes, let alone all of them. In support of his surmise that some "may" be abandoned, Mr. Markstrom mentioned reviewing 10 unspecified addresses in an unknown "GIS database for the City of

---

[3] This concession only proves Plaintiffs' point that the City's June restoration report did not include information on every previously excavated address and did not fully identify the scope of remaining required restoration work.

8

Flint – or for Genesee County." Tr. 87:17-24. But Mr. Markstrom never explained what the unspecified database showed or whether his method of inferring possible abandonment from that database was reliable. *Cf.* Fed. R. Evid. 702 (requiring non-lay opinion to be based on sufficient facts and reliable methods, reliably applied). As far as the record shows, his opinion—that some of those 10 addresses "may" have been abandoned—was exactly what it sounds like: speculation.

The City is thus left with its counsel's unsupported argument that the City had, on the eve of the hearing, finally finished the months-overdue process of identifying where restoration work still remains to be done. Tr. 11:13-14 (Kuptz). The evidence does not support that claim.[4]

## II. The City and Mayor did not make all reasonable efforts to comply with the Court's February 2023 Order

Because Plaintiffs made a prima facie showing that the City violated definite and specific court orders, to avoid contempt the City and Mayor bear the burden of showing "categorically and in detail" that they took "all reasonable steps" to comply. *Elec. Workers Pension Tr. Fund*, 340 F.3d at 379 (cleaned up). Neither the City nor the Mayor met their burden. The City's response brief ignored this burden and included no evidence on its efforts to avoid violations—arguably waiving the

---

[4] To the extent the City's position is that the June restoration report was complete, it was also required to propose a restoration deadline within seven days. Feb. 2023 Order 16, PageID.11687. It has not done so.

9

point. *See* Pls.' Reply 3, PageID.12715. The new evidence the City later presented at the hearing shows that the City failed to take basic steps to assure compliance with the Court's orders. And the Mayor, for his part, offered no evidence at all that he took any steps to ensure compliance with the February 2023 Order.

### A. The City produced no evidence showing it took all reasonable steps to avoid missing the outreach deadline

The City produced no evidence to carry its burden of showing that it took "all reasonable steps" to finish the required outreach by the Court's March 1 deadline. *See Elec. Workers Pension Tr. Fund*, 340 F.3d at 379 (cleaned up); *see also id.* at 383 (to support defense to civil contempt, the contemnor must show "that he is not responsible for the present inability" to comply). Instead, the record shows that the City waited until two months *after* the March 1 deadline passed—and, tellingly, until after Plaintiffs initiated dispute resolution—to double the number of crews performing outreach. Pls.' Ex. 64 (PCA 130-31, 171), PageID.11938-39, 11979. The City does not claim that it was unable to increase its outreach staffing earlier. The City also offers no explanation for why it incorrectly instructed its own contractors where to complete outreach. *Id*. at 171-72, PageID.11979-80.

### B. The evidence shows the City's lack of efforts to avoid its restoration violations

The evidence shows that the City did not take all reasonable steps to ensure

10

it would finish identifying the scope of remaining restoration work by May 1. The City did not start visual inspections until March 29—waiting until a month before its May 1 deadline to even begin. *See* Defs.' Ex. 1-1, 1-2, 1-3 (showing March 29, 2023, as earliest inspection date in tabs labeled "Homes to complete based on V[isual] I[nspection]" and "Homes Completed based on V[isual] I[nspection]"). The City doubled the number of crews completing inspections only after missing the May 1 deadline. Pls.' Ex 64 (PCA 127), PageID.11935; Tr.127:19-25. And the City's witness admitted that the City waited until May 10—again, after the Court's deadline—to authorize its project manager to conduct around 11,000 required inspections. Tr. 78:3-18, 81:1-15 (Markstrom); *see also* Pls.' Ex. 64 (PCA 144), PageID.11952. This is not the conduct of a party engaging in "all reasonable efforts" to comply with the Court's order.

The City did not need to wait to review its records and identify previously excavated addresses. It has been on notice for over two years that it must identify where it must complete restoration and document all completed restorations. *See, e.g.*, Pls.' App. 133, 137-38, ECF No. 242-4, PageID.11370, 11374-75. It agreed to the May 1 deadline last fall and stipulated to it in January. *See id.* at 232-34, PageID.11469-71; Stip. re 5th Mot. Enforce ¶ 5, ECF No. 256, PageID.11615. And yet, even as of June 30, Mr. Markstrom—the project manager in charge of the City's project management firm's (ROWE's) work on the service line replacement

11

program—did not know whether the City had provided ROWE with all of its data regarding where excavations have already been completed. Tr. 116:25-117:3 (Markstrom).

Mr. Markstrom's testimony showed, at most, that ROWE conducted visual inspection work this spring. *See, e.g.*, Tr. 82:17-83:15 (Markstrom) (describing inspection efforts). However, "the test is *not* whether defendants made a good faith effort at compliance"—if Mr. Markstrom's testimony could be thought to show good-faith effort—"but whether the defendants took all reasonable steps within their power to comply with the court's order." *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991) (emphasis added) (internal quotation marks omitted). The City has not met this standard. The City offered no evidence that it could not begin compliant inspections before March 29, 2023; that it was impossible to increase staffing before May 1, 2023, or that it was unable to provide ROWE with a complete list of where inspections were needed before the May 1 deadline.

The City's rationalization of its delay did not show "categorically and in detail why [the City] [wa]s unable to comply." *Elec. Workers Pension Tr. Fund*, 340 F.3d at 379 (cleaned up). Surely the City knew of the possibility of winter snow when, last fall, it agreed to the May 1 inspection deadline. Pls.' App. 232-34, PageID.11469-71. Mr. Markstrom's protestation that ROWE's visual inspections were delayed by snow cover in Flint, Tr. 83:16-21, thus only illustrates that the

12

City failed to plan for foreseeable weather conditions. In any event, Mr. Markstrom did not testify that there was snow on the ground until March 29, 2023, the date of the first visual inspection. *See* Def. Ex. 1-1, 1-2, 1-3. And in response to this Court's questioning, Mr. Markstrom clarified that the City did not need to wait for the frost to come out of the ground to perform those inspections. Tr. 131:12-14 (Markstrom).

Likewise, Mr. Markstrom's vague suggestion that ROWE's inspections were delayed by a need to prepare a doorhanger does not explain the City's violation. The Court's order specified a period for the parties to negotiate doorhanger text. Feb. 2023 Order 25-26, PageID.11696-97. The parties agreed to that text ahead of schedule, on March 8, 2023, but the City still waited weeks to begin compliant inspections. Notice & Stip. ¶¶ 1-4, ECF No. 272, PageID.12910; Def. Ex. 1-1, 1-2, 1-3. Mr. Markstrom could not describe what steps, if any, the City or ROWE took to print the door hangers as quickly as possible once the language was finalized. Tr. 131:22-132:13. And none of this would explain the City's months-long delay in identifying where it still needs to complete restoration work.[5]

---

[5] ROWE's need to redo inspections first performed in fall 2022, because those inspections did not comply with terms the City was well aware of at the time, constitutes self-induced delay. *See* Tr. 130:12-17, 132:18-133:7 (Markstrom). That cannot support a defense to civil contempt. *Elec. Workers Pension Tr. Fund*, 340 F.3d at 383.

### III. Sanctions are appropriate to incentivize respect for this Court's orders and ensure Flint residents obtain the benefits the Settlement Agreement guarantees them

Nearly a decade after the water crisis began, the City's persistent noncompliance continues to saddle Flint residents with torn-up lawns and broken sidewalks. The City conceded that its visual inspections revealed more than 4,000 properties in need of repair. Tr. 14:11-23 (Kuptz). And more may arise as the City addresses communications from residents concerning possible inaccuracies in the City's inspections. *See* Tr. 15:5-15 (Kuptz) (acknowledging that some residents disputed the City's conclusion that repairs were complete at their homes).

Meanwhile, until the City confirms whether restoration is needed at more than 700 addresses, the parties' negotiations of a deadline for the City to, at long last, finish all restoration work are further delayed under the terms of the Court's February 2023 Order. *See* Feb. 2023 Order 16-17, PageID.11687-88. It is a reasonable prospect that the pipe replacement program will not be finished this calendar year, yet again.

The testimony presented at the hearing only reinforced the lack of seriousness with which the City has taken this Court's commands and the real needs of the City's residents. To coerce compliance, the Court should order a $500 daily fine until the City finishes determining the restoration status of the remaining 704 homes. (The City has waived any objection to the specific amount of the fine

14

by failing to make any argument or offer any evidence to show that a different remedy would be more equitable or appropriate.) And, to deter future violations so that Plaintiffs are not forced to return to Court on yet another enforcement motion, this Court should permit Plaintiffs to seek attorneys' fees recovery for time necessarily spent enforcing the Agreement going forward. Pls.' Mot. Contempt 22-25, PageID.11756-59.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for contempt should be granted.

Dated:     July 14, 2023                    Respectfully submitted,

/s/ Adeline S. Rolnick                      /s/ Bonsitu Kitaba (with consent)
Adeline S. Rolnick                          Bonsitu Kitaba (P78822)
Sarah C. Tallman                            Daniel S. Korobkin (P72842)
Natural Resources Defense Council           American Civil Liberties Union Fund
1152 15th Street NW, Suite 300              of Michigan
Washington, DC 20005                        2966 Woodward Avenue
(202) 513-6240                              Detroit, MI 48201
arolnick@nrdc.org                           (313) 578-6823
stallman@nrdc.org                           bkitaba@aclumich.org
                                            dkorobkin@aclumich.org
Melanie D. Calero
Natural Resources Defense Council           *Counsel for Plaintiff American Civil*
40 West 20th Street                         *Liberties Union of Michigan*
New York, NY 10011
(212) 727-4546
mcalero@nrdc.org

Michael E. Wall
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94104
(415) 875-6100

15

mwall@nrdc.org

*Counsel for Plaintiffs Concerned
Pastors for Social Action, Melissa
Mays, and Natural Resources Defense
Council*

16