UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CONCERNED PASTORS FOR SOCIAL ACTION; MELISSA MAYS; AMERICAN CIVIL LIBERTIES UNION OF MICHIGAN; and NATURAL RESOURCES DEFENSE COUNCIL, INC., <br><br>  Plaintiffs, <br>v <br><br> NICK A. KHOURI, et. al., <br><br>  Defendants. | No. 2:16-cv-10277-DML <br><br> HON. DAVID M. LAWSON |

_____/

**STATE PARTIES' UNOPPOSED MOTION TO TEMPORARILY STAY THE CITY OF FLINT'S RESTORATION OBLIGATIONS UNDER THE SETTLEMENT AGREEMENT**

The State Parties file this unopposed motion to temporarily stay the City of Flint's (City) obligations to conduct and provide weekly, monthly, and quarterly reports on restoration efforts under the Settlement Agreement (as amended by subsequent orders of this Court). The State Parties request that the Court enter a limited stay of these specific obligations that will be effective until August 1, 2025. The State Parties seek this stay for the reasons set forth below:

1.      Under an amendment to the Settlement Agreement, the City is required to conduct service line excavations (and replacements of lead and galvanized steel service lines, if identified) at 31,578 residences in the City.  As a result of significant efforts by the City, as of May 28, 2024, the City has asserted that it has completed its excavation and replacement obligation at all required addresses.  The Court's orders require the City to submit specific documentation supporting its notification of completion.  (*See* ECF No. 237, PageID.11071–72; ECF No. 258, PageID.11686–87.)  The parties will assess the City's documentation of compliance once the City submits it.

2.      The Settlement Agreement originally required the City to restore properties at every address where it completed an excavation by November 30, 2020.  Because the City did not timely conduct all the required restorations, the Court ordered the parties to negotiate a new deadline to complete that work.  Although the parties have engaged in months of good-faith negotiations, they have been unable to agree upon a new deadline.  Although this Court's February 24, 2023 Order (ECF No. 258, PageID.11688) requires the parties to submit supplemental briefs seeking to establish a new deadline, all parties agree for the

reasons set forth below that such briefing is not needed at this time. In addition to conducting restoration work, the City is required to provide reports to Plaintiffs on its restoration activities.

3. Currently, restorations are yet to be completed at approximately 1,901 residences in the City.

4. While the State Parties have no obligation under the Settlement Agreement to conduct excavations, replacements, or restorations in the City, the State Parties are required under the Settlement Agreement to allocate up to $97,000,000 to reimburse the City for excavation, replacement, and restoration activities. All but roughly $1,100,000–$1,200,000 of those funds have been expended.

5. The cost to complete just the remaining restoration work required under the Settlement Agreement is approximately $4,754,500. Project management costs will add to that total.

6. After discussions with the City regarding the anticipated exhaustion of the monies allocated by the State Parties and the public need to have the work completed on a timely basis, the State of Michigan (State) has agreed to assist the City in completing the required excavations, replacements, and restorations under the

Settlement Agreement. Specifically, the State has agreed to assume responsibility for managing the work being conducted by the City's contractors, including payment of additional funds required to complete that work required under the Settlement Agreement.

7. Although the State will seek to have the contractors complete the work as quickly as possible, after discussions with the parties, the parties have agreed that a goal of August 1, 2025, is appropriate to complete the required work. Nothing stated herein should be construed as an agreement by the State Parties to conduct any work not required by the Settlement Agreement or any order of this Court.

8. The responsibility for completing the required work under the Settlement Agreement and the February 24, 2023 Order of this Court lies with the City. During the period that the State is managing the work, the State Parties request that this Court stay the City's work and weekly, monthly, and quarterly reporting obligations under the Settlement Agreement, as well as any orders issued by this Court, solely as to restorations. The requested stay does not extend to the City's obligation to submit the notice, written statement, and

4

documentation described in Paragraph 7 of the Court's April 2022 Order, ECF No. 237, PageID.11075.

9. Neither Plaintiffs nor the City opposes the relief requested in this Motion. Plaintiffs' non-opposition to this Motion is conditioned on the State Parties' agreement (1) to provide bi-monthly reporting on the status of restoration efforts; (2) that the State require its contractor to conduct the visual inspections, photo documentation, and leave door hangers as set forth in the February 24, 2023 Order (ECF No. 258, PageID.11694–11695), and make the required documentation of those efforts available to other parties upon request; and (3) that the State inform the parties within 14 days of the time that it believes the required restoration have been completed and provide documentation supporting that belief. The State has agreed to these conditions. Plaintiffs also reserve their rights to move to lift the limited stay if it becomes necessary to avoid prejudice to their interests.

For the reasons set forth above and as stated in the accompanying brief, the State Parties request that this Court stay any obligation that the City has under the Settlement Agreement to conduct and provide

weekly, monthly, and quarterly reports on restoration work until August 1, 2025.

The State Parties further request that, in addition to entering the limited stay, the Court order the parties to submit a report to the Court on or before July 1, 2025 apprising it of the status of the State's efforts, and if the required work has not been completed by that date, whether the parties have been able to agree on a plan to complete that work.

Finally, the State Parties request that this Court enter an order declaring that the parties are not required to submit the supplemental briefs seeking to set a new deadline for the completion of restoration work.

Respectfully submitted,

/s/ *Richard S. Kuhl*
Richard S. Kuhl (P42042)
Nathan A. Gambill (P75506)
Environment, Natural
Resources, and Agriculture
Division
Assistant Attorneys General
Attorneys for Defendants Khouri
and RTAB members only
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
kuhlr@michigan.gov
gambilln@michigan.gov

Dated:  May 29, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CONCERNED PASTORS FOR SOCIAL ACTION; MELISSA MAYS; AMERICAN CIVIL LIBERTIES UNION OF MICHIGAN; and NATURAL RESOURCES DEFENSE COUNCIL, INC., <br><br> Plaintiffs, <br> v <br><br> NICK A. KHOURI, et. al., <br><br> Defendants. | No. 2:16-cv-10277-DML <br><br> HON. DAVID M. LAWSON |

_____/

**BRIEF IN SUPPORT OF STATE PARTIES' UNOPPOSED MOTION TO TEMPORARILY STAY THE CITY OF FLINT'S RESTORATION OBLIGATIONS UNDER THE SETTLEMENT AGREEMENT**

|  |  |
|---|---|
| | Richard S. Kuhl (P42042) <br> Nathan A. Gambill (P75506) <br> Assistant Attorneys General <br> Attorneys for Defendants Khouri and RTAB members only <br> Environment, Natural Resources, and Agriculture Division <br> P.O. Box 30755 <br> Lansing, MI 48909 <br> (517) 335-7664 <br> kuhlr@michigan.gov |
| Dated:  May 29, 2024 | gambilln@michigan.gov |

## CONCISE STATEMENT OF ISSUE PRESENTED

1. The City of Flint (City) is required under the Settlement Agreement (as amended) and by orders of this Court to complete and report on restoration work performed at residences where excavations have been conducted. The City has not yet completed those restorations—roughly 1,901 properties still require restoration. After discussions with the City regarding the near-exhaustion of funds available for use to perform the restoration work, the State has agreed to assist the City in those efforts by managing and paying for the work required to complete the restorations required under the Settlement Agreement. Should the Court stay the City's restoration obligations under the Settlement Agreement and orders of this Court relating to the City's restoration obligations until August 1, 2025 to permit the State time to complete the required work?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>Authority</u>: *Waste Mgmt. of Ohio, Inc. v. City of Dayton,* 132 F.3d 1142 (6th Cir. 1997)

Fed. R. Civ. P. 62(c)

i

## INTRODUCTION

The Court-ordered Settlement Agreement in this matter requires the City to excavate and replace lead and galvanized steel service lines in the City and to restore any properties at which such work was conducted. Although the City has nearly completed the required excavations, it must still complete restorations at approximately 1,901 residences in the City.

The funding that the State Parties provided to the City to conduct the work required under the Settlement Agreement has nearly been exhausted and the remaining amounts will be insufficient to pay for the work still required. Although the State is not required to conduct any excavation, replacement, or restoration work under the terms of the Settlement Agreement, the State has discussed the current situation with the City and has agreed to assist the City by assuming management of and providing additional funds to complete that work. The State intends to complete that work on or before August 1, 2025.

Pursuant to Fed. R. Civ. P. 62(c), the State Parties request that the Court stay all obligations the City has under the Settlement Agreement (as amended) or orders of this Court to conduct and provide

weekly, monthly, and quarterly reports on property restoration while the State undertakes this effort. Neither the City nor Plaintiffs oppose the relief requested in this Motion.

## STATEMENT OF FACTS

In March 2017, Plaintiffs, the City, the State of Michigan, and the Michigan Department of Environmental Quality (n/k/a Michigan Department of Environment, Great Lakes, and Energy), entered into a Settlement Agreement resolving Plaintiffs' claims under the Safe Drinking Water Act. (ECF No. 147-1.) The Settlement Agreement has been modified by either stipulation of the Settling Parties or court order on multiple occasions. (*See*, *e.g.*, ECF No. 164; ECF No. 174; ECF No. 208; ECF No. 211; ECF No. 217; ECF No. 237; ECF No. 258.)

The City is required under the Settlement Agreement to conduct excavations and replacements of lead and galvanized steel service lines at 31,578 residences in the City. (ECF No. 258, PageID.11684.) As of May 28, 2024, the City has asserted that it has completed its excavation and replacement obligations at all required addresses. The Court's orders require the City to submit specific documentation supporting its notification of completion. (*See* ECF No. 237, PageID.11071–72; ECF

2

No. 258, PageID.11686–87.) The parties will assess the City's documentation of compliance once the City submits that documentation.

The City was also initially required to restore properties at every address where an excavation was conducted by November 30, 2020. (ECF No. 217, PageID.10409). Because the City did not timely conduct all the required restorations, the Court ordered the parties to negotiate a new deadline to complete that work. (ECF No. 258, PageID.11687–88.) The parties have not been able to finalize a new deadline. Although this Court's February 24, 2023 Order (ECF No. 258, PageID.11688) requires the parties to submit supplemental briefs seeking to establish a new deadline, all parties agree for the reasons set forth below that such briefing is not needed at this time. In addition to conducting restoration work, the City is required to provide monthly reports to Plaintiffs on its restoration activities. (*Id.*, PageID.11695.)

Restorations must still be completed at approximately 1,901 residences in the City. The parties have agreed to and exchanged a list of these addresses.

3

The State Parties were required under the Settlement Agreement to allocate up to $97,000,000 to reimburse the City for excavation, replacement, and restoration activities that it performed. (ECF No. 147-1, PageID.7371–7373, 7376.) All but roughly $1,100,000–$1,200,000 of those funds have been expended. (Ex. 1, 5/7/24 Email from S. Tallman to J. Kuptz.) The State Parties have no obligation under the Settlement Agreement to conduct excavations or restorations in the City. (ECF 147-1, PageID.7365.)

The average unit price for a restoration is $2,500. (Ex. 2, 4/1/24 City of Flint/EGLE DWSRF Project Plan Update, p 3.) With roughly 1,901 properties remaining to be restored, the estimated cost to complete just the remaining restoration work required under the Settlement Agreement is approximately $4,754,500. Project management costs will add to that total.

After discussing the anticipated exhaustion of the monies allocated by the State Parties and the public need to have properties restored on a timely basis, the State of Michigan (State) has agreed to assist the City in completing the required excavations, replacements, and restorations by assuming responsibility for managing the work

4

being conducted, including payment of additional funds required to complete that work. Although the State will seek to have the work completed as quickly as possible, after consulting with the other parties, the parties have agreed that a goal of August 1, 2025 is appropriate to complete the required work. Nothing stated herein should be construed as an agreement by the State Parties to conduct any work not required under the Settlement Agreement.

The responsibility for completing the work under the Settlement Agreement (ECF No. 147-1, PageID.7365), and the February 24, 2023 Order of this Court (ECF No. 258), lies with the City. During the period that the State is managing the work, the State Parties request that this Court stay any work and the City's weekly, monthly, and quarterly reporting obligations under the Settlement Agreement, or the Court's Orders, solely as to restorations. The limited stay does not extend to the City's obligation to submit the notice, written statement, and documentation described in Paragraph 7 of the Court's April 2022 Order, ECF No. 237, PageID.11075.

5

Neither Plaintiffs nor the City opposes the relief requested in this Motion. Plaintiffs' decision not to oppose the relief requested in this Motion is conditioned on the State Parties' agreement (1) to provide bi-monthly reporting on the status of restoration efforts; (2) that the State require its contractor to conduct the visual inspections, photo documentation, and leave door hangers as set forth in the February 24, 2023 Order (ECF No. 258, PageID.11694–11695), and make that information available to the other parties upon request; and (3) that the State inform the parties within 14 days of the time that it believes the required restorations have been completed and provide documentation supporting that belief. The reporting in (1) will include:

    a.    An Excel spreadsheet listing all addresses where contractors have completed restoration, including, for each address: (i) the date(s) of restoration; (ii) whether the completed work was soft-surface and/or hard-surface (i.e., asphalt and/or concrete) restoration; and (iii) whether additional restoration work remains required; and

    b.    the total amount of monies paid by State Parties for work required under the Agreement relating to excavations,

6

       replacements, property restoration, and/or program management. This reporting will also include any reimbursements to the City of Flint described in Paragraph 117.c.iv of ECF No. 147-1.

Additionally, to the extent there is any dispute about whether the State has completed the necessary restorations, the parties will meet and confer in an attempt to resolve any such dispute. The State has agreed to these conditions.

## ARGUMENT

A settlement agreement that is incorporated into "a final judicial order . . . placing the power and prestige of the court behind the compromise struck by the parties" is effectively a consent decree. *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017–1018 (6th Cir. 1994) (*citing Williams v. Vukovih*, 720 F.2d 909, 920 (6th Cir. 1983)). Once approved by the court, "the prospective provisions of the consent decree operate as an injunction." *Id.* (*citing Plummer v. Chemical Bank*, 668 F.2d 654, 659 (2d Cir. 1982)). As this Court has already found, "[a] court's power to enforce a consent decree includes the 'inherent equitable power to modify a consent decree if satisfied that

7

the decree "has been turned through changing circumstances into an instrument of wrong."'" (ECF No., 258, PageID.11680 (*citing Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1146 (6th Cir. 1997).)

Despite the substantial efforts of the City over the last seven years to conduct the required excavations, replacements, and restoration work, additional work still needs to be conducted to ensure full compliance with the terms of the Settlement Agreement. Moreover, additional funding beyond $97 million will be required for the City to complete that work.

After discussing this reality with the City, the State has agreed to assist the City in completing the excavations, replacements, and restorations required under the Settlement Agreement by undertaking responsibility for managing the work being conducted, including payment of additional funds required to complete that work. The parties believe the remaining work can be completed on or before August 1, 2025.

The responsibility for completing the required work under the Settlement Agreement (ECF No. 147-1, PageID.7365), and the February

24, 2023 Order of this Court (ECF No. 258), lies with the City. During the period that the State is managing the work, the State Parties request that this Court stay any work and weekly, monthly, and quarterly reporting obligations that Flint has under the Settlement Agreement (as amended), as well as any orders issued by this Court, solely as to restorations.

The State Parties do not believe that any party will be harmed if the Court grants the requested relief. Not only is the State undertaking the work that was to be performed by the City, but it is agreeing to provide additional funding to ensure that the necessary work is completed. Additionally, although not equal to the reporting currently required of the City, the State has agreed to provide bi-monthly reporting to all parties so they may monitor the progress of the restoration efforts.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, the State Parties ask this Court to stay any obligation that the City has under the Settlement Agreement or orders of this Court to conduct and provide weekly, monthly, and quarterly reports on restoration work.

The State Parties further request that the Court enter a limited stay of those restoration obligations effective until August 1, 2025 and that it additionally order the parties to submit a report to the Court on or before July 1, 2025 apprising it of the status of the State's efforts, and if the required work has not been completed, whether the parties have been able to agree on a plan to complete that work.

Finally, the State Parties request that this Court enter an order declaring that the parties are not required to submit the supplemental briefs seeking to set a new deadline for the completion of restoration work.

Respectfully submitted,

/s/ *Richard S. Kuhl*
Richard S. Kuhl (P42042)
Nathan A. Gambill (P75506)
Environment, Natural
Resources, and Agriculture
Division
Assistant Attorneys General
Attorneys for Defendants Khouri
and RTAB members only
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
kuhlr@michigan.gov
gambilln@michigan.gov

Dated: May 29, 2024

10

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on May 29, 2024, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

Respectfully submitted,

/s/ *Richard S. Kuhl*
Richard S. Kuhl (P42042)
Nathan A. Gambill (P75506)
Environment, Natural
Resources, and Agriculture
Division
Assistant Attorneys General
Attorneys for Defendants Khouri
and RTAB members only
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
kuhlr@michigan.gov
gambilln@michigan.gov

S:\CEPB3\ENRA_FlintWater\USDC-Con Pastors (AG# 2015-0125393-B)\Pleadings\Final (Word Versions)\Brief in Support of Unopposed Motion to Stay 2024-05-29.docx