UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONCERNED PASTORS FOR SOCIAL
ACTION, MELISSA MAYS, AMERICAN
CIVIL LIBERTIES UNION OF MICHIGAN,
and NATURAL RESOURCES DEFENSE
COUNCIL, INC.,

        Plaintiffs,                                Case Number 16-10277

v.                                                  Honorable David M. Lawson

NICK A. KHOURI, FREDERICK HEADEN,
MICHAEL A. TOWNSEND, MICHAEL A.
FINNEY, JOEL FERGUSON, SYLVESTER
JONES, R. STEVEN BRANCH, and
CITY OF FLINT,

        Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND EXPENSES

On March 12, 2024, the Court found the City of Flint in civil contempt of court due to its repeated failures to meet deadlines for various phases of the replacement and restoration operation prescribed by a settlement agreement to rid the City of lead service lines in its water delivery system. Although the Court denied much of the relief requested in the plaintiffs' motion for contempt, it permitted the plaintiffs to recover, as a compensatory sanction, the attorney's fees and expenses associated with litigating the contempt motion. The plaintiffs now seek an award of $62,367.56, representing $51,393.50 in attorney's fees and $10,974.06 in costs and expenses. The request is well-documented and represents an amount substantially below the plaintiffs' actual entitlement. None of the City's arguments for a reduction of the award is persuasive. The Court will grant the motion.

I.

The Court issued an order on March 12, 2024 holding the City of Flint in civil contempt of this Court's orders that established extended deadlines for several aspects of its obligation to complete water service line replacement and restoration work that it promised to carry out when it entered into a Settlement Agreement on March 28, 2017.  The City had failed to finish its outreach obligation by its March 1, 2023 deadline, it failed to ascertain the scope of its remaining restoration work by its May 1, 2023 deadline, and it failed to provide a compliant list of all the properties where it had completed visual restoration inspections.  Each of these tasks was detailed in the Court's February 24, 2023 enforcement order.  The Court, however, declined to hold Flint's elected mayor in contempt.

By the time of the contempt ruling, the City represented that it had completed most of the tasks for which it was called out by the plaintiffs, albeit belatedly.  Some, though, still were left undone.  Nonetheless, the Court determined that coercive sanctions were not useful, although compensatory sanctions were appropriate. *See Elec. Workers Pension Tr. Fund of Loc. Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378-79 (6th Cir. 2003) (stating that a court may impose coercive or compensatory sanctions as a civil contempt remedy) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)); *see also United States v. Work Wear Corp.*, 602 F.2d 110, 115 (6th Cir. 1979) ("Civil contempt is meant to be remedial and to benefit the complainant either by coercing the defendant to comply with the Court's order via a conditional fine or sentence or by compensating the complainant for any injury caused by the defendant's disobedience.").  The Court, therefore, ordered that the plaintiffs could recover as a contempt sanction their attorney's fees, costs, and expenses (including expert witness expenses) incurred in bringing their motion for contempt and the ensuing proceedings. The Court permitted the plaintiffs

to apply for that compensation by filing an appropriate motion with proper documentation of fees, costs, and expenses.

The plaintiffs filed their motion seeking attorney's fees and expenses of $62,367.56: $51,393.50 in fees and $10,974.06 in expenses. Cognizant of the City's financial constraints, they represent that the request excludes more than three quarters of the total time they spent litigating contempt motion. In total, the plaintiffs seek compensation for 178.9 hours of work by three attorneys and a paralegal. The plaintiffs attached to their motion detailed billing entries. *See* ECF No. 282-10, PageID.13296-322. The fee portion of the request breaks down as follows:

|  | Hours Spent | Hours Sought | Rate | Fee |
|---|---|---|---|---|
| Attorney Melanie Calero | 296.4 | 53.7 | $300 | $16,110 |
| Attorney Adeline Rolnick | 211.2 | 48.7 | $325 | $15,827.50 |
| Paralegal Nicole Vandal | 83.5 | 34.4 | $125 | $4,300 |
| Attorney Sarah Tallman | 132.0 | 42.1 | $360 | $15,156 |
| Attorney Michael Wall | 30.6 | 0.0 | $500 | -- |
| TOTAL | 753.7 | 178.9 |  | $51,393.50 |

The plaintiffs state that they reduced their request in four ways. First, they limited the request to the time spent by three attorneys (Calero, Rolnick, and Tallman) and a paralegal (Vandal) — excluding entirely the work of other members of the litigation team, including environmental litigator Michael Wall, the plaintiffs' local counsel, and several additional paralegals. Second, counsel reviewed line-item entries to reduce or eliminate time claimed for 1) internal strategy discussions and meetings, 2) meet-and-confer meetings with more than one attorney present, 3) editing work product and drafting correspondence, 4) consultation with an unnecessary aerial imagery expert, 5) and time spent traveling to the motion hearing. Third, they applied a 40% reduction to Calero and Rolnick's billing entries to account for work that could have been done more quickly by more experienced attorneys. Fourth, they applied an across-the-

board 30% reduction to account for their unsuccessful argument that Flint's Mayor should be held in contempt and in light of the City's financial position.

The plaintiffs also seek $10,974.06 in costs and expenses, which include the fees for expert witness Noah Attal and counsel's travel costs for the contempt hearing. Again, the plaintiffs attached to their motion detailed time entries for their expert, disclosing that he worked for 102.65 hours at a $55 hourly rate. ECF No. 282-10, PageID.13324-25. And again, they limited their expense submissions by excluding costs for food and taxis. ECF No. 282, PageID.13188.

The City argues that the plaintiffs' fee request should be reduced substantially for two reasons. First, it suggests that the plaintiffs did not achieve a high degree of success in the contempt proceedings because the Court did not grant all the relief the plaintiffs sought. Second, it maintains that the Court should not award the plaintiffs' expenses for their travel to Michigan for the contempt hearing because the plaintiffs would not agree to hold the hearing virtually.

II.

Although the fee award in this instance represents a compensatory remedy for civil contempt and does not result from the operation of a fee-shifting statute, the amount of the award nonetheless must be "reasonable." *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). "An award of attorney's fees and expense is among the 'appropriate' equitable remedies for a successful moving party 'in a civil contempt proceeding.'" *Cernelle v. Graminex, L.L.C.*, 539 F. Supp. 3d 728, 738 (E.D. Mich. 2021) (quoting *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983)), *aff'd,* No. 21-1579, 2022 WL 2759867 (6th Cir. July 14, 2022); *see also McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000) ("[A]n award of attorney's fees is appropriate for civil contempt in situations where court orders have been violated.") (citing *Redken Lab., Inc. v. Levin*, 843 F.2d 226 (6th Cir. 1988)).

The reasonableness of a fee award generally is measured by the lodestar method. *Husted*, 831 F.3d at 702. That method calls for multiplying "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Ibid.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Measured against the amount of work necessary to litigate fully the motion for contempt, the plaintiffs' request for fees, if anything, is substantially less than the amount they are entitled to receive. The first step of computing the lodestar is to examine the "the number of hours reasonably expended on the litigation." *Ibid.* The plaintiffs attached to their motion detailed line-item billing entries, describing 753.7 hours of work spanning the period from the entry of the Court's fifth enforcement order in February 2023 to their supplemental submissions on the contempt motion in November. *See* Ex. 3, ECF No. 282-10, PageID.13296-322. Notably, the plaintiffs only seek compensation for 178.9 of those hours and for fewer of the personnel than participated in the contempt proceeding. This figure is reasonable: the plaintiffs undertook substantial efforts to monitor the City's progress, consult with an expert witness to identify the deficiencies in its reporting, and litigate their motion for contempt through a contested hearing and in post-hearing briefing. As one example of the character of this work, the record of proceedings from the plaintiffs' motion for contempt to the present filings is nearly 2,000 pages in length.

The plaintiffs likely would have been entitled to claim additional time because the rationale for some of the reduction in hours overlaps with the so-called *Johnson* factors courts may use to modify a lodestar award, *see Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (noting that courts should consider, among other things, the skill required to perform the legal service and the experience of an attorney), and the Court's determination of the reasonable hourly rate for the attorneys, which accounts — to an extent — for an attorney's level

of experience. Of the hours sought by the plaintiffs, however, the City does not point to any inappropriate billing entries, and the Court did not locate any in its review of the records. The time sought by attorneys Calero (53.7 hours), Rolnick (48.7 hours), Tallman (42.1 hours), and paralegal Vandal (34.4 hours) is appropriate.

Besides the hours requested, the billing rates for each attorney also are well-supported and are in line with the rates charged by local environmental law practitioners. The plaintiffs seek $300 per hour for Calero, an attorney with four years of experience, $325 for Rolnick, an attorney with five years of experience, and $360 for Tallman, an attorney with eleven years of experience. ECF No. 282, PageID.13178. According to the State Bar of Michigan's 2023 Economics of Law Survey Results Summary Report, these rates all are *below* the $413 median rate hourly charged by Michigan attorneys specializing in environmental law. *See 2023 Economics of Law Survey Results*, State Bar of Michigan, 8 (2023), https://www.michbar.org/file/pmrc/pdfs/-2_2023EOL_SurveyResults.pdf. And the rates are between the median and 75th percentile range for all attorneys with similar years of legal experience. *Id.* at 6. The plaintiffs also attached to their motion declarations from two local practitioners who confirm that the requested rates are at or below Detroit-based market rates for environmental litigators with similar skills and experience levels. *See* Decl. of Nathan Dupes, ¶¶ 11, ECF No. 282-3, PageID.13196-97; Decl. of Mark Granzotto, ¶¶ 17-22, ECF No. 282-4, PageID.13201-03. The requested $125 hourly rate for paralegal Nicole Vandal also is in line with Detroit market rates and is reasonable. *See* Dupes decl. ¶ 13; *see also Krueger v. Experian Info. Sols., Inc.*, No. 19-10581, 2024 WL 497105, at *4 (E.D. Mich. Feb. 8, 2024) (awarding $125 per hour for paralegal work); *Aljahmi v. Ability Recovery Servs., LLC*, No. 17-13772, 2022 WL 891416, at *2 (E.D. Mich. Mar. 25, 2022) (noting that courts in this district have awarded between $125 and $160 per hour for paralegal work).

The City argues that the amount of the fee award proposed by the plaintiffs is excessive because the plaintiffs did not achieve a high degree of success in their contempt motion and that the award should be adjusted accordingly. This argument is misplaced. Although a plaintiff's degree of success sometimes matters when a court evaluates a fee request, *see Hensley*, 461 U.S. at 434 (noting that a court, reviewing a lodestar, should ask whether the "plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award"), it is less appropriate in a civil contempt action where the goal of a sanction is to "compensate the complainant for losses sustained," *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 834 (1994) (quoting *Mine Workers*, 330 U.S. at 303-04); *Alter Domus, LLC v. Winget*, No. 08-13845, 2024 WL 1307812, at *1 (E.D. Mich. Mar. 27, 2024) ("[T]he purpose of the attorney's fee allowance here . . . is not based on any fee-shifting provision but rather is for compensation resulting from [the defendant's] contempt.").

All considered, though, the plaintiffs achieved a high degree of success in the contempt motion. Finding a municipality in contempt is unfortunate, but it is no small achievement. Although the Court did not adopt the plaintiffs' requested sanctions, the Court agreed that the City's violations of the Settlement Agreement amounted to contempt of court and opened the door for equitable relief. *Concerned Pastors for Soc. Action v. Khouri*, --- F. Supp. 3d ---, 2024 WL 1076245, at *13 (E.D. Mich. Mar. 12, 2024). The Court therefore assessed attorney's fees "to compensate the plaintiffs for the cost of bringing the instant action." *Ibid.* Moreover, the plaintiffs' fee request already accounts for the City's "lack of success" contention because the plaintiffs reduced their request by 30% across-the-board to adjust for unsuccessful arguments raised in their motion. The City is not entitled to any further reduction on this basis.

The City's second argument is less persuasive than its first.  It contends that it should not be required to pay the plaintiffs' expenses incurred for travel to the contempt hearing because the plaintiffs declined its request to hold the hearing virtually.  However, holding an in-person hearing versus a remote hearing was not the plaintiffs' decision to make.  Even if the plaintiffs consented to conduct the hearing virtually, the Court would have denied the request.  The plaintiffs' travel costs therefore were unavoidable and are properly compensable as part of the contempt sanction.  *See Cernelle*, 539 F. Supp. 3d at 744 ("The Court has discretion to order recovery of meal and travel expenses.").  The City does not point to any inappropriate expenses associated with the plaintiffs' travel to Michigan, and a review of the relevant records suggests that the plaintiffs conducted an economical trip.  *See* Expenses, ECF No. 282-10, PageID.13327.

Finally, the City suggests its resources could be better spent completing service line excavations, replacements, and restorations than paying the plaintiffs' fees, which may be true.  But it is beside the point.  Of course, the City should be directing its resources to its remediation efforts, but the Court found that the City's contempt entitled the plaintiffs to a remedy.  The sanction — although not punitive — serves an important signaling function, forcing the City to uphold its commitment to the plaintiffs as outlined in the Settlement Agreement and to recognize the Court's authority.  The City cannot complain that the Court imposed unrealistic obligations.  The missed deadlines occasioning the finding of contempt were the City's fault.  *Compare* Stipulation, ECF No. 256 *with* Order Granting Fifth Motion to Enforce Settlement Agreement, ECF No. 258.  It never sought leave to adjust these dates and only belatedly complied after the plaintiffs instituted contempt proceedings.  The City is a large enterprise and maintains taxing authority.  It can bear this sanction *and* provide relief to the property-owners who have waited on its compliance for far too long.

More fundamentally, it is inaccurate to frame the sanction so narrowly as a diversion of resources from the City's ongoing remediation efforts. The plaintiffs are owed some credit for spurring the City to fulfill its obligations; they are not merely a drain on its resources. Without their persistent efforts, particularly in the recent contempt proceedings, the remediation still could be languishing. Their work has benefitted Flint residents, and they already have accounted for the City's fiscal realities by submitting a pared back fee request.

### III.

The plaintiffs' attorney's fee and expense request is reasonable and warranted as an appropriate contempt sanction.

Accordingly, it is **ORDERED** that the plaintiffs' motion for attorney's fees, costs, and expenses (ECF No. 282) is **GRANTED**.

It is further **ORDERED** that the City of Flint shall pay to the plaintiffs forthwith the sum of $62,367.56.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   June 27, 2024